UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE,<br><br>Defendant. | Case No.  5:20-cv-00824-EJD<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>**RE: DKT. NO. 38** |

Plaintiff San Francisco Baykeeper ("Baykeeper") initiated this suit against Defendant City of Sunnyvale ("Sunnyvale" or "the City") under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), to address the allegedly unlawful discharge of bacteria pollution by Sunnyvale from the City's municipal separate storm sewer system.  First Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties ("Complaint"), Dkt. No. 19.  Baykeeper alleges that Sunnyvale's repeated and ongoing unlawful discharges have adversely affected the water quality and beneficial uses of local waterways.  *Id.* ¶1.

The City moves to dismiss the Complaint or in the alternative for summary judgment.  Dkt. No. 29.  Although the City's motion is brought in the alternative, the City indicates that its motion need not be converted into a summary judgment motion.  Dkt. No. 29 at 12.  The Court agrees. The motion is accompanied by a request for judicial notice, which is unopposed.  Baykeeper filed an opposition to the City's motion (Dkt. No. 38), and the City filed a reply (Dkt. No. 42).  The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b) and General Order 72-5.  For the reasons stated below, the City's motion to dismiss will be denied.

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

1

United States District Court<br>Northern District of California

I.      **BACKGROUND**[1]

A.      **Parties**

Baykeeper is a non-profit public benefit corporation whose mission is "to protect San Francisco Bay from the biggest threats and hold polluters accountable."  Compl. ¶ 9.  Baykeeper alleges on information and belief that Sunnyvale is the owner and operator of its municipal separate storm sewer system ("Sunnyvale MS4") and sewage collection system ("Collection System").  *Id*. ¶¶ 4, 19-24.

B.      **Notice**

On December 4, 2019, Baykeeper provided notice of its intent to file suit against Sunnyvale for violations of the CWA ("Notice Letter").  *Id*. ¶ 3.  The Notice Letter was sent to the Sunnyvale City Manager and the Director of the Environmental Services Department.  *Id*. Baykeeper also sent the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board") (collectively, "State and Federal agencies"), as required by section 505(b) of the CWA, 33 U.S.C. § 1365(b)(1)(A).  *Id*. ¶ 4.  Baykeeper is informed and believes that neither the EPA nor the State of California "has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letter" and in the Complaint.  *Id*. ¶ 6.

C.      **The Clean Water Act**

Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the CWA.  The term "pollutant" includes "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and

---

[1] The Background is a summary of the allegations in the Complaint.

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

agricultural waste discharged into water." 33 U.S.C. § 1362(6).  Specifically, section 301(a)

prohibits discharges not authorized by, or in violation of, the terms of a National Pollutant

Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the CWA, 33

U.S.C. § 1342.  Section 402(b) of the CWA allows each state to administer its own EPA-approved

NPDES permit program for regulating the discharge of pollutants, including discharges of polluted

stormwater.  33 U.S.C. § 1342(b).

Section 402(p) of the CWA requires an NPDES permit for stormwater discharges from an

MS4 to waters of the United States.  33 U.S.C. § 1342(p).  An MS4 is a public-owned collection

of storm drains, channels, and other infrastructure that conveys stormwater runoff to navigable

waters without treatment.  40 C.F.R. § 122.26(b)(8).  In California, the State Board and its nine

Regional Boards have approval from the EPA to administer its NPDES permit program for the

State.  A violation of any NPDES permit term is a violation of the CWA.  40 C.F.R. § 122.41(a).

### D.    The MS4 Permit

The MS4 Permit relevant to this case is an NPDES permit that was reissued in 2015 by the

Regional Board.  The MS4 Permit regulates discharges to and from municipal storm sewer

systems throughout the San Francisco Bay Area, including the Sunnyvale MS4.  Dkt. No. 30-1.

The MS4 Permit includes the following prohibitions at issue in this suit:

### A.    DISCHARGE PROHIBITIONS

A.1.    The Permittees shall, within their respective jurisdictions, effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses. NPDES-permitted discharges are exempt from this prohibition. Provision C.15 describes a tiered categorization of non-stormwater discharges based on potential for pollutant content that may be discharged upon adequate assurance that the discharge contains no pollutants of concern at concentrations that will impact beneficial uses or cause exceedances of water quality standards.

*    *    *

### B.    RECEIVING WATER LIMITATIONS

B.1.    The discharge shall not cause the following conditions to create a condition of nuisance or to adversely affect beneficial

United States District Court
Northern District of California

uses of waters of the State:

**a.** Floating, suspended, or deposited macroscopic particulate matter, or foam;

**b.** Bottom deposits or aquatic growths;

**c.** Alteration of temperature, turbidity, or apparent color beyond present natural background levels;

**d.** Visible, floating, suspended, or deposited oil or other products of petroleum origin; and

**e.** Substances present in concentrations or quantities that would cause deleterious effects on aquatic biota, wildlife, or waterfowl, or that render any of these unfit for human consumption.

**B.2.** The discharge shall not cause or contribute to a violation of any applicable water quality standard for receiving waters. If applicable water quality objectives are adopted and approved by the State Water Board after the date of the adoption of this Order, the Water Board may revise and modify this Order as appropriate.

*Id*. at 9-10.

**E.    Allegations re Sunnyvale MS4 and Discharges of Bacteria**

The Sunnyvale MS4 consists of the streets, curbs, gutters, drop inlets, underground pipes, concrete channels, and other structures that collect and convey stormwater and non-stormwater in and around the City.  Compl. ¶ 52.  The Sunnyvale MS4 includes approximately 244 miles of storm drain pipes that discharge into waters including, but not limited to, South San Francisco Bay, Stevens Creek, Calabazas Creek, Sunnyvale East Channel, Guadalupe Slough, and other waters that drain to South San Francisco Bay (collectively the "Receiving Waters").  *Id*. ¶¶ 12, 53-54.  Discharges from the Sunnyvale MS4 are not treated prior to entering the Receiving Waters.  *Id*. ¶ 55.

Each time it rains, polluted stormwater from sidewalks, parking lots, and other urban infrastructure in Sunnyvale discharges directly to the Receiving Waters via the Sunnyvale MS4.  Comp. ¶ 57.  "Sunnyvale discharges bacteria from the MS4 every time precipitation causes runoff in the Sunnyvale MS4."  *Id*. ¶ 60.

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

**F.      Allegations re Sunnyvale's Collection System and Discharges of Raw Sewage**

Sunnyvale's Collection System is comprised of 600 miles of pipe and related infrastructure that convey wastewater to the Donald M. Sommers Water Pollution Control Plant ("Plant").  *Id*. ¶¶ 61-62.  The sewer system is significantly aged and approximately 96% of the sewer pipes are made of vitrified clay.  *Id*. ¶ 63.  Collected wastewater is conveyed to the Plant, where it is treated and subsequently discharged into Moffett Channel, a tributary to South San Francisco Bay, via Guadalupe Slough.  *Id*. ¶ 61.

Raw sewage discharges, or exfiltrates, from Sunnyvale's Collection System underground via structural defects, such as cracks, displaced joints, holes, and other leakage points, in the Collection System.  *Id*. ¶ 65.  Raw sewage that exfiltrates from the Collection System in areas where the System is near the Sunnyvale MS4 "has the potential" to enter the MS4 via compromised sewer pipes.  *Id*.  Raw sewage discharges from the sewer to the MS4 via sanitary sewer overflows ("SSOs") caused by, for example, blockages in pipes, as well as structural damage to pipes such as off-set joints and broken pipes.  *Id*. ¶ 66.  SSOs discharge from manholes, clean outs, or other surface structures of the Collection System or private laterals.  *Id*.

**G.      Impacts to the Receiving Waters**

The storm drain pipes and other conveyances within the Sunnyvale MS4 discharge to the Receiving Waters.  *Id*. ¶¶ 67-74.  These waterbodies have many "beneficial uses" including freshwater replenishment, groundwater recharge, cold freshwater habitat, fish migration, preservation of rare and endangered species, fish spawning, warm freshwater habitat, wildlife habitat, water contact recreation, and noncontact water recreation.  *Id*. ¶¶ 77-81. The Receiving Waters are listed on the State of California's 2014-2016 CWA Section 303(d) list of impaired waterbodies, which means they exceed water quality standards ("WQS") and that they do not support the designated beneficial uses for the waterbodies.  *Id*. ¶¶ 82-87.

Pollutants from the Sunnyvale MS4, as well as raw sewage and associated pollutants from the Collection System and/or from privately-owned lateral sewer lines that enter the Sunnyvale MS4 via exfiltration or other means, are discharged to the Receiving Waters.  *Id*. ¶ 91.  The

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

5

discharge of urban stormwater, dry-weather discharges, and raw and/or inadequately treated sewage via Sunnyvale's MS4 adversely affects the beneficial uses of the Receiving Waters and poses a serious risk to fisheries, wildlife habitat, and human health. *Id*. ¶¶ 92-98. The discharges allegedly violate the CWA and contribute to the continuing impairment of the Receiving Waters. *Id*. ¶ 99.

### H.    The Alleged Violations of the MS4 Permit

The Complaint alleges two types of violations of the MS4 Permit. First, Baykeeper alleges that Sunnyvale fails to effectively prohibit discharges of non-stormwater to and from the Sunnyvale MS4. *Id*. ¶¶ 100-108. Information available to Baykeeper indicates that raw sewage exfiltrates from the Collection System and enters the Sunnyvale MS4 every day. *Id*. ¶ 104. Raw sewage that enters the storm drain pipe via exfiltration is a "non-stormwater discharge" and Sunnyvale is not effectively prohibiting these non-stormwater discharges from entering the Sunnyvale MS4. *Id*. ¶¶ 105-06. Raw sewage that reaches the Sunnyvale MS4 through exfiltration flows untreated to the Receiving Waters. *Id*. ¶ 107.

Second, Baykeeper alleges that Sunnyvale illegally discharges bacteria from the Sunnyvale MS4. *Id*. ¶¶ 109-112. Data available to Baykeeper indicates that discharges from the Sunnyvale MS4 contain elevated concentrations of E. Coli, enterococci, fecal coliform, and total coliform (collectively, "Bacteria") at levels exceeding applicable WQS. *Id*. ¶ 109. Data available to Baykeeper also "demonstrates that dry-weather non-stormwater discharges from the Sunnyvale MS4 contain elevated concentrations of pollutants such as E. Coli and enterococci at levels exceeding applicable WQS by orders of magnitude." *Id*. ¶ 110. Sunnyvale's discharges with elevated levels of Bacteria and other pollutants adversely affect the beneficial uses of the Receiving Waters and constitute a violation of an applicable WQS. *Id*. ¶¶ 111-12.

Based on the foregoing, Baykeeper asserts two claims: (1) illegal discharges of non-stormwater in daily, continuous and ongoing violations of Discharge Prohibition A.1. of the MS4 Permit and CWA (*id. ¶¶* 113-123); and (2) illegal discharges of polluted stormwater in violation of Receiving Water Limitations B.1. and B.2. of the MS4 Permit and the CWA (*id*. ¶¶ 124-138).

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

Baykeeper seeks a declaration that Sunnyvale has violated the MS4 Permit and the CWA; an injunction prohibiting Sunnyvale from violating these laws; civil monetary penalties; and attorney fees and other costs. *Id*. ¶ VIII.

Sunnyvale moves pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Baykeeper's Complaint on essentially four grounds: (1) the court lacks subject matter jurisdiction because Baykeeper's statutorily mandated notice to Sunnyvale was deficient; (2) the City is in compliance with the MS4 Permit, and therefore the case is moot; (3) court intervention is unnecessary because the MS4 Permit includes prospective injunctive relief; and (4) the claims are being addressed by the Regional Board and the case should be dismissed under the primary jurisdiction doctrine.

## II.    STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. *Chandler v. State Farm Fut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A Rule 12(b)(1) motion may be brought as a facial or factual challenge to the court's subject matter jurisdiction. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004)). In contrast, in a factual attack, the challenger disputes the truth of allegations in the complaint. *Id*. "A proper speaking motion allows the court to consider evidence outside the complaint without converting the motion into a summary judgment motion." *Id*. (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

### B.    Motion to Dismiss Under Rule 12(b)(6)

When deciding whether to grant a motion to dismiss under Federal Rule of Civil Procedure

United States District Court
Northern District of California

12(b)(6), the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## III.   DISCUSSION

### A.   Evidentiary Objections

Sunnyvale's motion relies on the declaration of Melody Tovar ("Tovar"), the Regulatory Programs Division Manager within the City's Environmental Services Department. Baykeeper objects to paragraphs six through ten and twelve through fifteen of the Tovar declaration on several grounds. Paragraphs seven, thirteen and fourteen refer to Sunnyvale's certified Annual Report for the 2018-2019 fiscal year, the Regional Board's April 29, 2020 letter to the City, and the City's Final C.1. Report, respectively. These materials are the proper subject of judicial notice under Federal Rule of Evidence 201. Paragraphs seven, thirteen and fourteen also include Sunnyvale's stated opinion that it is in compliance with the MS4 Permit. The Court will disregard the City's opinion because it lacks foundation and amounts to an impermissible legal conclusion.

The remaining paragraphs at issue draw the Court's attention to the City's "Illicit Discharge Detection and Elimination" program (¶ 6); the City's goal to reduce pollutants (¶ 8); the City's membership in the Santa Clara Valley Urban Runoff Pollution Prevention Program (¶ 9); the City's request to Baykeeper for lab reports for water samples (¶ 10); the City's interaction with the Regional Board in response to Baykeeper's data (¶ 12); and the City's opinion that it has a limited ability to control bacterial due to natural sources or homelessness (¶ 15). Objections to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    these paragraphs in the Tovar declaration are overruled.

2        Baykeeper's opposition relies on the declarations of Daniel Cooper ("Cooper") and Ian

3    Wren ("Wren").  Sunnyvale objects to the Cooper declaration and attachments as irrelevant.  The

4    objections to the Cooper declaration are overruled.  The first two paragraphs of the Cooper

5    declaration simply establish that Mr. Cooper is an attorney of record in the action, and the second

6    two paragraphs introduce a state court decision and a federal court decision addressing issues

7    presented in this case.  These court decisions discuss issues relevant to this case and are the proper

8    subject of judicial notice under Federal Rule of Evidence 201.

9        The Wren Declaration and Exhibits consist primarily of the results of Baykeeper's water

10    sample testing.  Sunnyvale objects to the Wren Declaration and attachments, asserting that

11    evidence outside of the Complaint should not be considered in the context of a Rule 12(b)(6)

12    motion.  Dkt. No. 43.  Sunnyvale also argues that Baykeeper is using the Declaration to gain

13    additional pages of argument in violation of the Local Rule page limits; that Baykeeper must have

14    trespassed because the water samples described in the Declaration were taken from private

15    property; that the water samples are not representative because they were taken in a relatively

16    small window of time; and that the exhibits contain irrelevant, inaccurate and unreliable

17    information.  *Id.*

18        The Court agrees with Sunnyvale that evidence outside of the Complaint should not be

19    considered in the context of a Rule 12(b)(6) motion.  Therefore, the Court will disregard the Wren

20    Declaration, except for the results of Baykeeper's water sampling.  Baykeeper included these

21    results in its Notice Letter to the City and the Court may consider this evidence in ruling on the

22    City's Rule 12(b)(1) motion.

23        **B.    Notice**

24        The CWA authorizes private parties to step into the government's shoes and enforce the

25    CWA in "citizen suits."  33 U.S.C. § 1365.  Before commencing suit, the plaintiff must give the

26    alleged violator a 60-day notice of the claimed violations.  *Id*. § 1365(b).  Absent that notice, the

27    action is prohibited.  *Id*.  The purpose of the notice is (1) to allow the responsible governmental

28    CASE NO.: 5:20-CV-00824-EJD
      ORDER DENYING MOTION TO DISMISS

1   agencies to take enforcement action and (2) to give the alleged violator an opportunity to bring

2   itself into compliance with the CWA.  *See Ctr. for Biological Diversity v. Marina Point Dev. Co.*,

3   566 F.3d 794, 800 (9th Cir. 2009) (as amended).  The 60-day notice requirement is a jurisdictional

4   necessity.  *Id*. at 800.  "When a party does not fulfill that threshold requirement, 'the district court

5   must dismiss the action as barred by the terms of the statute.'"  *Id*. (quoting *Hallstrom v.*

6   *Tillamook Cty.*, 493 U.S. 20, 33 (1989)); *see also Nat. Res. Def. Council v. Southwest Marine,*

7   *Inc.*, 236 F.3d 985, 998 (9th Cir. 2000) (stating that noncompliance with CWA's notice

8   requirement requires dismissal for lack of subject matter jurisdiction).

9        A notice of an alleged violation "shall include sufficient information to permit the recipient

10   to identify the specific standard, limitation, or order alleged to have been violated, the activity

11   alleged to constitute a violation, the person or persons responsible for the alleged violation, the

12   location of the alleged violation, the date or dates of such violation, and the full name, address,

13   and telephone number of the person giving notice."  *Id*. at 801 (quoting 40 C.F.R. § 135.3).

14        Although Sunnyvale acknowledges receipt of Baykeeper's notice, the City challenges the

15   sufficiency of the notice insofar as it fails to specify where and when discharges allegedly caused

16   or contributed to the exceedance of water quality standards for bacteria.  Sunnyvale asserts that

17   "[n]one of the local waterways are impaired or on the CWA Section 3030(d) list of impaired

18   waters for bacteria, and bacteria is not a prioritized pollutant for the Santa Clara County

19   permittees."  Dkt. No. 29 at 14.  Further, Sunnyvale criticizes some of Baykeeper's samples

20   insofar as they "are from channels that are not waters of the United States and have no beneficial

21   uses assigned."  *Id*.

22        Similar arguments were considered and rejected in *San Francisco Baykeeper, Inc. v. Tosco*

23   *Corp.*, 309 F.3d 1153, 1155 (9th Cir. 2002).  In *Tosco*, Baykeeper notified Tosco that it intended

24   to sue for two types of discharges:  (1) petroleum coke spilled on each day on which ship loading

25   operations took place and (2) each day when the wind was sufficiently strong to blow coke into

26   the water from uncovered piles.  *Id*. at 1158.  The Ninth Circuit held that the notice was

27   sufficiently specific to fulfill the notice obligation.  *Id*.  A notice letter "does not need to describe

28   CASE NO.:   5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

1    every detail of every violation; it need only provide enough information that the defendant can

2    identify and correct the problem." *Id.* at 1155.

3         Here, the Court finds Baykeeper has fulfilled the notice requirement. Baykeeper notified

4    the City that the B.1. and B.2. violations occur "every time Sunnyvale's MS4 discharges" and that

5    the violations "are ongoing and will continue." *Id.* Dkt. No. 19-1 at 11. Baykeeper also notified

6    the City that discharges of non-stormwater to and from the Sunnyvale MS4 in violation of A.1.

7    "are ongoing and continuous." *Id.* at 12. More specifically, Baykeeper notified the City that:

8         Sunnyvale has therefore been in daily and continuous violation of
          Discharge Prohibition A.1 of the MS4 Permit every day since at least
9         December 4, 2014. Each day and/or occasion that Sunnyvale has
          discharged and continues to discharge non-stormwater into or from
10        the Sunnyvale MS4 in violation of the MS4 Permit's Discharge
          Prohibition A.1 is a separate and distinct violation of the Clean Water
11        Act. Sunnyvale's violations will continue each day and/or occasion
          that Sunnyvale fails to effectively prohibit the discharge of raw
12        sewage into or from the Sunnyvale MS4 in violation of the
          requirements of the MS4 Permit and the Clean Water Act.
13

14   *Id.* at 13. Baykeeper also attached its sampling data to the Notice Letter, showing discharges from

15   MS4 outfalls that allegedly exceeded bacteria WQS on six dates. *Id.* at 16-25. As in *Tosco*,

16   Baykeeper's notice to the City provides sufficient information for the City to identify and correct

17   the problem. *Tosco*, 309 F.3d at 1158; *see also Comty. Ass'n for Restoration of the Env't v. Henry*

18   *Bosma Dairy*, 305 F.3d 943, 952 (9th Cir. 2002) (notice with a range of dates was sufficient);

19   *Waterkeepers N. Cal. v. AG Indus. Mfg. Inc.*, 375 F.3d 913, 917-18 (2004) (holding that plaintiff's

20   notice stating that the defendant discharged contaminated storm water during "every rain event

21   over 0.1 inches" was sufficiently specific to put defendant on notice of the violations plaintiff

22   intended to allege in its complaint). Baykeeper's notice describes problems that are systemic (*e.g.*,

23   miles of pipes), widespread (*e.g.*, structural defects), and chronic. As such, it is unreasonable to

24   require Baykeeper to identify a particular calendar day and location when the problems occurred.

25   Baykeeper's notice is sufficient.

26        The City's legal authority does not dictate a different result. In *Ctr. for Biological*

27   *Diversity v. Marina Point Dev.*, 566 F.3d 794 (9th Cir. 2009), defendant acquired shoreline

28   CASE NO.: 5:20-CV-00824-EJD
     ORDER DENYING MOTION TO DISMISS
                                        11

United States District Court
Northern District of California

1    property to develop a condominium project and was granted various permits.  *Id*.  at 798.  The

2    Ninth Circuit held that all four of plaintiffs' notices lacked sufficient detail.  Among other things,

3    the notices referred only generally to "activities" that began on a certain date that were placing

4    "enormous amounts of fill" into the lake and were accompanied by grading below the ordinary

5    high water mark.  *Id*. at 802.  The notices were also deficient insofar as they did not make mention

6    at all of any claims under one section of the CWA and did not give any details whatsoever

7    regarding which "wetlands" were being affected or how.  *Id*. at 802-03.  The deficiencies in the

8    notices were also problematic because defendant had ceased all activity at the lake and the United

9    States Army Corps of Engineers had begun corrective measures long before the suit was filed.  *Id*.

10   at 803.

11        In contrast, Baykeeper's notice includes far more factual detail than the notices in *Ctr. for*

12   *Biological Diversity*.  Baykeeper describes the City's storm sewer system and sewage collection

13   system, explains exfiltration and runoff, and specifies the sections of the MS4 Permit that are

14   being violated.  Baykeeper's notice identifies the pollutants and the applicable WQS.  Baykeeper

15   also identifies the Receiving Waters that are being impacted and how, and states that the violations

16   are ongoing and continuous.

17        Sunnyvale also relies on *California Sportfishing Prot. All. ("CSPA") v. City of W.*

18   *Sacramento*, 905 F. Supp. 792 (E.D. Cal. 1995), which is factually more similar to the present

19   action than *Ctr. for Biological Diversity*.  The subject of the *CSPA* suit was a wastewater treatment

20   plant operated by the defendant under a permit used by the State Regional Water Quality Control

21   Board for the Central Valley Region.  *Id*. at 795.  CSPA brought suit, alleging that the plant had

22   been operated in violation of the permit and that violations were continuing.  *Id*.  One portion of

23   CSPA's notice to defendant stated:  "For the previous five years on hundreds of occasions you

24   have violated your NPDES permit.  Further, you have consistently misrepresented and/or failed to

25   report the results of your testings."  *Id*. at 796.  The *CSPA* court held that this portion failed to

26   comply with the notice requirement because it was vague as to which portions of the permit had

27   been violated, which test results were not reported or were misreported, and when the alleged

28   CASE NO.: 5:20-CV-00824-EJD
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

violations had occurred. *Id.* at 800. The CSPA notice, however, is distinguishable from Baykeeper's notice. Unlike in *CSPA*, Baykeeper specifies in its Notice Letter that Sunnyvale is allegedly violating A.1., B.1. and B.2. of the MS4 Permit. Baykeeper's water sampling results are attached to the Notice Letter, and Baykeeper explains how, in its view, the sampling demonstrates the alleged violations. Further, as already discussed above, the Notice Letter explains that the violations are ongoing and continuous. In sum, Baykeeper's notice to the City provides sufficient information for the City to identify and correct the problem.

Accordingly, the Court denies Sunnyvale's motion to dismiss for lack of subject matter jurisdiction.

### C.     Discharge Prohibition A.1.

The first cause of action is for violation of the MS4 Permit, Discharge Prohibition A.1., which requires the City to "effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses." Dkt. No. 30-1 at 9. Sunnyvale first argues that because it has adopted an ordinance prohibiting third parties from putting non-stormwater into the MS4, it has met its duty under Discharge Prohibition A.1. *See* Dkt. No. 29 at 17. More specifically, Sunnyvale has implemented an Illicit Connection and Illicit Discharge Program ("IC/ID Program"). Sunnyvale reasons that it has "rules on the books prohibiting people from pouring bad things in the storm drain"; the City exercises enforcement when necessary; and therefore, there is nothing to penalize or enjoin. *Id.* As Baykeeper points out, however, Sunnyvale has not cited to any legal authority to support its contention that adopting and enforcing its IC/ID Program, as a matter of law, meets its obligations under Discharge Prohibition A.1. Therefore, the Court rejects Sunnyvale's first argument.

Second, Sunnyvale argues in the alternative that the effectiveness of the IC/ID Program "is proven" by the City's certified annual reports for FY 2018/2019 that show for that year, Sunnyvale tracked 48 spill and discharge complaints and all were resolved in a timely manner. Dkt. No. 42 at 9. Baykeeper's sampling data, however, suggests that the IC/ID Program is not "effectively prohibiting" the alleged unlawful discharges. Sunnyvale counters that Baykeeper has

United States District Court
Northern District of California

1    presented only sparse and questionable data.  But this challenge to the sufficiency of Baykeeper's

2    data raises a factual dispute beyond the scope of a motion to dismiss and the City has indicated

3    that its motion need not be converted into a summary judgment motion.  Dkt. No. 29 at 12.

4        Sunnyvale's motion to dismiss the first cause of action for violation of Discharge

5    Prohibition A.1. is denied.

6        **D.      Discharge Prohibition B.1.**

7        In the second cause of action, Baykeeper alleges non-compliance with the MS4 Permit,

8    Receiving Water Limitation B.1.  Compl. ¶ 126.  Baykeeper alleges on information and belief that

9    Sunnyvale's discharges of stormwater containing levels of pollutants that adversely impact human

10   health and/or the environment violate Receiving Water Limitation B.1.  *Id.*

11       Sunnyvale contends that this cause of action should be dismissed because Baykeeper has

12   not alleged that discharges have caused any of the five specific conditions listed in section B.1.,

13   namely (a) floating, suspended, or deposited macroscopic particulate matter, or foam; (b) bottom

14   deposits or aquatic growths; (c) alteration of temperature, turbidity, or apparent color beyond

15   present natural background levels; (d) visible, floating, suspended, or deposited oil or other

16   products of petroleum origin; and (e) substances present in concentrations or quantities that would

17   cause deleterious effects on aquatic biota, wildlife, or waterfowl, or that render any of these unfit

18   for human consumption.  Dkt. No. 30-1 at 9.  Sunnyvale asserts that broad allegations of

19   discharges containing pollutants are not specific enough to demonstrate a violation of any one of

20   the five conditions listed above.

21       In response, Baykeeper clarifies that it is alleging a "deleterious effects" violation.  Dkt.

22   No. 38 at 22.  Baykeeper reasons that Sunnyvale's discharges greatly exceed bacteria water quality

23   standards, which in turn cause the Receiving Waters to suffer such that they exceed acceptable

24   water quality standards, and that by definition, discharges that cause or contribute to water quality

25   exceedance in Receiving Waters adversely affect their beneficial uses in violation of B.1.  *Id.*

26       The Complaint includes allegations that Sunnyvale's MS4 discharges greatly exceed

27   bacteria water quality standards, that these discharges adversely affect beneficial uses of the

28   CASE NO.: 5:20-CV-00824-EJD
     ORDER DENYING MOTION TO DISMISS
     14

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Receiving Waters, and that the discharges specifically pose a serious risk to fisheries, wildlife

2  habitat and human health.  Compl. ¶¶ 92, 96-97.  The Complaint also identifies several species

3  with habitats in or near the Receiving Waters, including Central California Coast Steelhead, the

4  California clapper rail, salt marsh harvest mouse, western burrowing owl and western snowy

5  plover, and alleges that Sunnyvale's discharges harm those species and/or people who may

6  consume them.  *Id.* ¶¶ 69, 73, 92- 93, 96-97.  These allegations are sufficient to support a claim for

7  a B.1. violation.

8        **E.      Discharge Prohibition B.2.**

9        In the second cause of action,  Baykeeper also alleges that Sunnyvale's discharges of

10  stormwater containing levels of pollutants that cause or contribute to exceedances of applicable

11  WQS violate the MS4 Permit, Receiving Water Limitation B.2.  Compl. ¶ 129.  Baykeeper alleges

12  that the applicable WQS include, but are not are not limited to, those set out in (1) the Regional

13  Board's Basin Plan, Chapter 3; (2) Part 3 of the State Board's Water Quality Control Plan for

14  Inland Surface Waters, Enclosed Bays and Estuaries of California: Bacteria Provisions and a

15  Water Quality Standards Variance Policy ("State Board Bacteria Provisions"); and (3) EPA's

16  Criteria for Priority Toxic Pollutants for the State of California ("California Toxics Rule"), 40

17  C.F.R. § 131.38.  *Id.* ¶ 50.  These discharges allegedly occur during and/or after every significant

18  rain event and whenever non-stormwater in the form of exfiltrating raw sewage or dry-weather

19  non-stormwater discharges from the MS4 since at least December 4, 2014.  *Id.* ¶ 130.

20        Citing to the CWA, Sunnyvale contends that it is not required to comply strictly with

21  promulgated water quality standards, and therefore an exceedance of any promulgated water

22  quality standard is not a violation of B.2. Dkt. No. 29 at 19.  In particular, Sunnyvale relies on

23  section 1342(p)(3)(B)(iii) of the CWA, which provides that NPDES permits for municipalities

24  "shall require controls to reduce the discharge of pollutants to the maximum extent practicable"

25  (hereinafter "MEP standard").  33 U.S.C. § 1342(p)(3)(B)(iii).  Sunnyvale interprets this CWA

26  section as requiring its MS4 discharges to comply only with the MEP standard and not water

27  quality standards.

28  CASE NO.: 5:20-CV-00824-EJD
    ORDER DENYING MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sunnyvale's argument is unpersuasive.  The Regional Board could have, but chose not, to adopt the MEP standard.  Instead, the plain language of Receiving Water Limitation B.2. prohibits discharges causing or contributing to a violation of any applicable water quality standard for receiving waters.  In *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1166 (9th Cir. 1999), the Ninth Circuit made clear that permitting agencies need not require municipal discharges to comply strictly with water quality standards, but permitting agencies retain discretion to do so.  *See also Bldg. Indus. Assn. of San Diego Cty. v. State Water Res. Control Bd.*, 124 Cal. App. 4th 866, 885 (2004) (stating that Congress intended section 1342(p)(3)(B)(iii) to provide the regulatory agency with authority to impose standards stricter than the MEP standard).  Indeed, Sunnyvale acknowledges that "requiring strict compliance with water quality standards is at the discretion of the permitting agency."  Dkt. No. 27 at 8.  Here, the Regional Board apparently exercised its discretion to require strict compliance with water quality standards instead of adopting the MEP standard.

Sunnyvale next asserts that "arguably no current applicable water quality standards for bacteria apply under Section B.2."  Dkt. No. 29 at 20.  Sunnyvale acknowledges that prior to 2018, the applicable water quality standards for bacteria were those contained in the Basin Plan.  Sunnyvale contends, however, that those standards have been superseded by the State Board Bacteria Provisions and the Regional Board has not "taken any action" to incorporate the new Bacteria Provisions into the MS4 Permit.  *Id.*  In response, Baykeeper argues the Basin Plan Standards applied before 2019 and that State Board Bacteria Provisions apply thereafter.  Dkt. No. 38 at 21-22.

The MS4 Permit must be interpreted like any other contract.  *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).  If the language of the permit is plain and capable of legal construction, "the language alone must determine the permit's meaning."  *Id.* (quoting *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 270 (4th Cir. 2001)).  Here, the text of B.2. is clear:  "The discharge shall not cause or contribute to a violation of any applicable water quality standard for receiving waters.  If applicable water quality

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1   objectives are adopted and approved by the State Water Board after the date of the adoption of this

2   Order, the Water Board may revise and modify this Order as appropriate."  Dkt. No. 30-1.

3        It is undisputed that at the time MS4 Permit was issued in 2015, the Basin Plan supplied

4   the applicable water quality standards for purposes of B.2.  Under the plain language of B.2., the

5   Basin Plan standards remain the "applicable" water quality standard because the Water Board has

6   not revised or modified the MS4 Permit to incorporate the State Board Bacteria Provisions into the

7   MS4 Permit.  *See Nat. Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 503 n.8

8   (3d Cir. 1993) ("While a polluter awaits changes in [NPDES] permit conditions, it is strictly

9   bound by the terms of its effective permit."); *see also Citizens for a Better Env't-California v.*

10  *Union Oil Co. of California*, 861 F. Supp. 889, 899 n.2 (N.D. Cal. 1994) (noting that unless and

11  until modified, "the permit as originally issued remains in effect, and violations of the permit may

12  be subject to a citizen enforcement suit.").  Further, the Court rejects Sunnyvale's position that

13  B.2. currently lacks any enforceable standards because such an interpretation of B.2. would render

14  the entirety of B.2. a nullity—an unreasonable result.  *Natural Res. Def. Council*, 725 F.3d at 1206

15  (rejecting County defendants' interpretation of permit because it would create an unreasonable

16  result).

## VI.   Alternative Compliance Requirements of C.1.

18       Sunnyvale contends that even if Baykeeper could show that the City has violated A.1., B.1.

19  or B.2., the City has fulfilled the alternative compliance requirement set forth in C.1. of the

20  Regional MS4 Permit, thereby rendering the lawsuit moot and divesting the court of jurisdiction.

21  Dkt. No. 29 at 20.

22       The court has jurisdiction over a CWA citizen suit as long as the plaintiff makes a good

23  faith allegation of continuous or intermittent violations.  *Gwaltney of Smithfield, Ltd. v.*

24  *Chesapeake Bay Found.*, Inc., 484 U.S. 49, 64 (1987).  "The statute does not require that a

25  defendant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that

26  a defendant be '*alleged* to be in violation.'"  *Id*.  A private suit becomes moot only when the

27  defendant demonstrates that it is "'absolutely clear that the allegedly wrongful behavior could not

28  CASE NO.:  5:20-CV-00824-EJD
    ORDER DENYING MOTION TO DISMISS

17

1    reasonably be expected to recur.'" *Id*. at 66.

2          Here, Sunnyvale argues that its compliance with the reporting requirement of C.1. renders

3    the case moot.  Thus, the issue is whether Sunnyvale has complied with C.1. and if so, whether its

4    compliance makes it absolutely clear that the alleged A.1., B.1. and B.2. violations could not

5    reasonably be expected to recur.

6          The reporting requirement of C.1. is set forth below:

7        **C.1.   Compliance with Discharge Prohibitions and Receiving**
               **Waters Limitations**

8

9    The Permittees shall comply with Discharge Prohibitions A.1 and A.2
     and Receiving Water Limitations B.1 and B.2 through the timely
10   implementation of control measures and other actions as specified in
     Provisions C.2 through C.16.5. Compliance with Provisions C.9
11   through C.12, C.14, and C.16.5 of this Order, which prescribe
     requirements and schedules for Permittees identified therein to
12   manage their discharges that may cause or contribute to violations of
     water quality standards (WQS) for pesticides, trash, mercury,
13   polychlorinated biphenyls (PCBs), bacteria, diazinon and
     chlorpyrifos, and methylmercury shall constitute compliance during
14   the term of this Order with Receiving Water Limitations B.1 and B.2
     for the pollutants and the receiving waters identified in the provisions.
15   Compliance with Provisions C.10 and C.16.5, which prescribe
     requirements and schedules for Permittees to manage their discharges
16   of trash, shall also constitute compliance with Discharge Prohibitions
     A.1 and A.2 during the term of this Order for discharges of trash. If
17   exceedance(s) of WQS, except for exceedances of WQS for
     pesticides, trash, mercury, PCBs, bacteria, diazinon and chlorpyrifos,
18   and methylmercury that are managed pursuant to Provisions C.9
     through C.12, C.14, and C.16.5, persist in receiving waters
19   notwithstanding the implementation of the required controls and
     actions, the Permittees shall comply with the following procedure:

20   a. Upon a determination by either the Permittee(s) or the Water Board
     that discharges are causing or contributing to an exceedance of an
21   applicable (WQS), the Permittee(s) shall notify, within no more than
     30 days, and thereafter submit a report to the Water Board that
22   describes controls or best management practices (BMPs) that are
     currently being implemented, and the current level of
23   implementation, and additional controls or BMPs that will be
     implemented, and/or an increased level of implementation, to prevent
24   or reduce the discharge of pollutants that are causing or contributing
     to the exceedance of water quality standards. The report may be
25   submitted in conjunction with the Annual Report, unless the Water
     Board directs an earlier submittal, and shall constitute a request to the
26   Water Board for amendment of this NPDES Permit. The report and
     application for amendment shall include an implementation schedule.
27   The Water Board may require modifications to the report and

28   CASE NO.: 5:20-CV-00824-EJD
     ORDER DENYING MOTION TO DISMISS

    United States District Court
    Northern District of California

18

1

application for amendment;

2

and

3

b. Submit any modifications to the report required by the Water Board within 30 days of notification.

4

5

As long as Permittees have complied with the procedures set forth above, they do not have to repeat the same procedure for continuing or recurring exceedances of the same receiving water limitations unless directed by the Water Board to develop additional control measures and BMPs and reinitiate the Permit amendment process.

6

7

Dkt. No. 30-1 at 10. After being contacted by Baykeeper, Sunnyvale submitted a "Report of

8

Potential Exceedances of Water Quality Standards Associated with Fecal Indicator Bacteria"

9

("Report") in outline form. Tovar Decl., Ex. G, Dkt. No. 30-7. On April 29, 2020, the Regional

10

Board responded, stating in pertinent part, "we find each City's determination and commitment to

11

submit a Report complies with Provision C.1. of your permit. . . ." *Id.*, Ex. H. Thereafter,

12

Sunnyvale completed and submitted its Report on June 12, 2020. *Id.*, Ex. I. Sunnyvale contends

13

the April 29, 2020 Regional Board response is conclusive evidence that any alleged discharge in

14

violation of the CWA or the Regional MS4 Permit, if any, is a past violation or moot, and

15

therefore not actionable.

16

Baykeeper counters that C.1. does not apply to discharges into Receiving Waters, and

17

furthermore merely complying with C.1.'s reporting requirements does not excuse violations of

18

bacteria water quality standards. The Court agrees. As to Baykeeper's first argument, C.1.

19

provides in pertinent part that compliance with C.9. through C.12., C.14., and C.16.5. shall

20

constitute compliance with B.1. and B.2. for the pollutants and the receiving waters identified in

21

those provisions. Only C.14., however, concerns discharges of bacteria; the other provisions

22

apply to pollutants not at issue in this case. Provision C.9., for example, is directed at pesticide-

23

related toxicity. Dkt. No. 30-1 at 95-100. And although C.14. applies to discharges of bacteria,

24

that provision only applies to San Pedro Creek and Pacific State Beach, not to all of the Receiving

25

Waters. *Id.* at 9-10, 129-36.

26

As to Sunnyvale's second argument, C.1.a. requires submission of a report when

27

discharges are causing or contributing to an exceedance of an applicable WQS (except for

28

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

19

United States District Court
Northern District of California

1  exceedances of WQS managed pursuant to C.9. through C.12., C.14. and C.16.5.).  Dkt. No. 30-1

2  at 10.  Nowhere does C.1. provide that submission and implementation of C.1.a. report excuses

3  liability for violations of water quality standards.  To the contrary, the MS4 Permit expressly states

4  that "[c]ourts have held that compliance with the iterative process does not excuse liability for

5  violations of water quality standards." *Id*. at 186 (citing state and federal case law).  One of the

6  cases cited in the MS4 Permit is *Nat. Res. Def. Council, Inc. v. Cnty. of L.A.*, 673 F.3d 880, (9th

7  Cir. 2011) ("*L.A. County I*"), *rev'd on other grounds sub nom. L.A. Cnty. Flood Control Dist. v.

8  Nat. Res. Def. Council, Inc.*, 568 U.S. 78 (2013), mod. by *Nat. Res. Def. Council v. Cty. of Los

9  Angeles* (9th Cir. 2013) 725 F.3d 1194 (9th Cir. 2013).  In that case, permittees argued that a

10  similar process defined in their MS4 Permit, which required permittees to develop a plan to

11  respond to exceedances of water quality standards, protected them against enforcement of a

12  provision requiring compliance with water quality standards.  The court disagreed, holding that the

13  plain language of the permit did not insulate the permittees against enforcement for violations of

14  water quality standards. *Id*. at 897–98.  Rather, "[a]s opposed to absolving noncompliance or

15  exclusively adopting the MEP standard, the iterative process ensures that if water quality

16  exceedances 'persist,' despite prior abatement efforts, a process will commence whereby a

17  responsible Permittee amends its [plan]." *Id*. at 897.  Like the provision in the Los Angeles

18  County permit, Section C.1. of the MS4 Permit in this case provides a process for correcting

19  violations and there is "no textual support for the proposition that compliance with certain

20  provisions shall forgive non-compliance with the discharge prohibitions." *Id*.

21      Sunnyvale's compliance with the reporting requirement of C.1. does not render

22  Baykeeper's claims moot.  Accordingly, Sunnyvale's motion to dismiss on mootness grounds is

23  denied.

24      **G.      Request for Injunctive Relief**

25      One of the forms of relief sought by Baykeeper is an order enjoining Sunnyvale from

26  violating the MS4 Permit and Sections 301(a) and 402 of the CWA.  Citing *Env't Texas Citizen

27  Lobby, Inc. v. ExxonMobil Corp.*, 2017 WL 2331679 (S.D. Tex. 2017), Sunnyvale contends that

28  CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

the case should be dismissed because court intervention for injunctive relief is unnecessary. Sunnyvale reasons that Provision C.1. of the Regional MS4 Permit already specifies detailed corrective actions that must be taken, that these corrective actions equate to prospective injunctive relief, and no further court ordered injunctive relief is warranted.

The Court rejects Sunnyvale's argument.  In *Env't Texas Citizen Lobby*, the court declined to grant injunctive relief only after years of litigation and issuance of findings of fact and conclusions of law.  *Id*. at \*31-32.  Whether and to what extent Baykeeper is entitled to injunctive relief cannot be assessed until the evidentiary record has been more fully developed.  *Id*.

### H.    Primary Jurisdiction Doctrine

Finally, Sunnyvale argues that the suit should be barred by the doctrine of primary jurisdiction because any alleged violations, if they existed, are being addressed by the Regional Board.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  The doctrine is a "prudential" one that "permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark*, 523 F.3d at 1114).  The doctrine applies in a limited set of circumstances.  *Clark*, 523 F.3d at 1114.  "Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."  *Brown v. MCI WorldCom Network Services, Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

This Court declines to apply the primary jurisdiction doctrine in this case.  "The citizen suit provision in the Clean Water Act was specifically designed to allow courts to ensure direct compliance with the Act's requirements."  *Nat. Res. Def. Council v. McCarthy*, 2017 WL

CASE NO.: 5:20-CV-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

3215346, at *3 (N.D. Cal. July 26, 2017) (quoting *Hawai'i Wildlife Fund v. Cty. of Maui*, 24 F. Supp. 3d 980, 990 (D. Haw. 2014)).  This case does not appear to present an issue of first impression.  Nor does the case appear to present any particularly complicated issue that Congress has committed to a regulatory agency.  *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998) ("[Q]uestions posed by RCRA and the CWA are not so esoteric or complex as to foreclose their consideration by the judiciary.").  Moreover, at least three circuit courts have declined to apply the primary jurisdiction doctrine in CWA cases.  *See Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3rd Cir. 2011) (holding that doctrine of primary jurisdiction did not require court to abstain from exercising jurisdiction over suit brought pursuant to CWA and the Resource Conservation and Recovery Act); *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1277 (10th Cir. 2018) (holding that district court acted within its discretion in declining to invoke primary jurisdiction doctrine in CWA case); *U.S. Pub. Interest Research Grp. v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 34 (1st Cir. 2003) (opining that district court's refusal to apply primary jurisdiction doctrine in CWA action was neither a mistake of law nor an abuse of discretion); *but see Montgomery Envtl. Coal. Citizens Coordinating Comm. on Friendship Heights v. Washington Suburban Sanitary Comm'n*, 607 F.2d 378, 379 ( D.C. 1979) (dismissing action with complicated procedural history under the primary jurisdiction doctrine because the case might be mooted upon resolution of the pending administrative proceeding).

The Court recognizes that circumstances may change significantly if and when the Regional Board takes action beyond what it has done to date.  If there is a change in circumstances such that this suit significantly threatens to "supplant" rather than "supplement" (*Gwaltney*, 484 U.S. at 60) the Regional Board's action, Sunnyvale may renew its request to dismiss pursuant to the primary jurisdiction doctrine.

//

//

//

1

**IV.    CONCLUSION**

2          For the reasons discussed above, the City's motion to dismiss is DENIED.

3          **IT IS SO ORDERED.**

4

5     Dated:    December 28, 2020

6

7                                                   EDWARD J. DAVILA
                                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     CASE NO.: 5:20-CV-00824-EJD
       ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California