UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE,<br><br>Defendant.<br><br>SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MOUNTAIN VIEW,<br><br>Defendant. | Lead Case No. 5:20-cv-00824-EJD<br><br>Consolidated with No. 5:20-cv-00826 EJD<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXTENT TESTIMONY OF MARK BERKMAN**<br><br>**RE: DKT. NOS. 98, 99** |

Plaintiff San Francisco Baykeeper ("Plaintiff") initiated these suits against Defendants City of Sunnyvale ("Sunnyvale") and City of Mountain View ("Mountain View") under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), to address the allegedly unlawful discharge of bacteria pollution by these Cities.[1]  Plaintiff has filed a pair of motions to exclude portions of the expert testimony of

---

[1] Sunnyvale and Mountain View are hereinafter collectively referred to as the "Cities" or "Defendants."

CASE NO.: 5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN

1

two of Defendants' retained experts, Brandon Steets and Mark Berkman, pursuant to Federal Rules of Evidence ("FRE") 104(a) and 702. The motions were taken under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, Plaintiff's motion is granted in part as to Brandon Street's testimony, and denied as to Mark Berkman's testimony.

## I. BACKGROUND

Defendants' municipal separate storm sewer systems ("MS4s") collect stormwater from the streets and other surfaces in the Cities and discharge it to local creeks that lead to San Francisco Bay. These stormwater discharges are subject to the requirements of the San Francisco Bay Municipal Regional Stormwater NPDES Permit ("MS4 Permit"), which is issued pursuant to section 402(p) of the CWA.

The MS4 Permit relevant to this case includes the following prohibition cited in the parties' separately pending cross motions for summary judgment:

> **B.    RECEIVING WATER LIMITATIONS**
>
> **B.2.**    The discharge shall not cause or contribute to a violation of any applicable water quality standard for receiving waters. If applicable water quality objectives are adopted and approved by the State Water Board after the date of the adoption of this Order, the Water Board may revise and modify this Order as appropriate.

Dkt. No. 30-1 at 9-10.

Sunnyvale's MS4s discharges directly to Stevens Creek, Calabazas Creek, and the Sunnyvale East Channel, which all subsequently discharge to South San Francisco Bay. The stormwater that enters Sunnyvale's MS4 is not treated prior to discharge.

From November 2017 to February 2019, Plaintiff sampled for bacteria at several of the Cities' MS4 outfalls and within the surface waters into which the outfalls discharge ("Receiving Waters"). Plaintiff's samples show bacteria at concentrations above the applicable bacteria water quality standards ("WQS").

CASE NO.:   5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN

## II. STANDARDS

Federal Rule of Evidence 702 permits opinion testimony by an expert if the proponent demonstrates that the expert is qualified and (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. An expert witness may be qualified by "knowledge, skill, experience, training, or education." *Id*. The proponent of expert testimony has the burden of proving admissibility in accordance with Rule 702. Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Rule 702 "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–90 (1993). Under *Daubert*, the Court exercises a gatekeeping function to ensure an expert's proffered testimony is relevant and reliable. *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020). "[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility. So long as an opinion is premised on reliable scientific principles, it should not be excluded by the trial judge." *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018).

## III. DISCUSSION

### A.   Motion to Exclude Portions of Report and Testimony of Brandon Steets

The Cities designated Mr. Steets as their expert on MS4 compliance issues and to review Plaintiff's evidence related to the alleged violations of the MS4 permit. He is a chemical engineer with over 20 years of experience in stormwater management for municipalities. He specializes in National Pollutant Discharge Elimination System ("NPDES") permits, Total Maximum Daily Load ("TMDL") regulations for impaired waterbodies, pollutant source investigations, and

CASE NO.: 5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN

watershed water quality modelling. Although Plaintiff acknowledges that Mr. Steets is qualified to testify as an expert engineer (Mot. at 3), Plaintiff contends that he is not qualified to testify regarding the economic feasibility of attaining bacteria WQS.

At the outset, the Court notes that Plaintiff raises a very narrow challenge to Mr. Steets' Expert Report and anticipated testimony at trial. Specifically, Plaintiff argues that only Section 7.4, Opinion 4 of his Report pertaining to "economic impracticability," and any associated testimony, should be excluded as violative of the standards set forth in Rule 702. In Opinion 4 of his Expert Report, Mr. Steets asserts the following:

- "[s]trict attainment of recreational WQS in all MS4 discharges and urban receiving waters . . . during wet weather is not feasible due to . . . economic impracticability." Steets Report. at 28.
- the Cities' ability to "meet bacteria standards in wet weather all the time" is "not feasible due to . . . affordability for the Cities." *Id*. at 30, 32.
- "Overall, structural implementation and other control measures have not been shown to consistently reduce bacteria below WQS for wet weather at a watershed scale in urban receiving waters . . . . Therefore, it is not feasible due to . . . affordability for the Cities to meet bacteria standards in wet weather all the time." *Id*. at 30.

Plaintiff argues that Mr. Steets' opinions regarding economic impracticality and unfeasibility should be excluded because: (1) he is not an economist; (2) he did not conduct an economic feasibility analysis; and (3) he fails to cite to any facts regarding the Cities' past, present, or future projected economic position to support his conclusion that the Cities could not afford the remedy proposed by Plaintiff.

As to the first argument, the Court agrees with the Cities that Mr. Steets' proffered opinion regarding economic feasibility should not be excluded just because he is not an economist. *See In re Macbook Keyboard Litigation*, No. 5:18-cv-02813-EJD, 2021 WL 1250378, at *6 (N.D. Cal. Apr. 5, 2021) (citing *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879 (C.D. Cal. 2004) ("A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified. A lack of specialization affects the weight of the expert's testimony, not the

CASE NO.: 5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN
4

admissibility.")). Mr. Steets' opinion on economic impracticability appears to be based on his training and experience in stormwater management. Thus, his opinion does not necessarily exceed "the reasonable confines of his subject area," and therefore is not subject to exclusion just because he is not a trained economist. *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011). Moreover, Mr. Steets' lack of training and experience as an economist bears more on the weight of his opinion than its admissibility. *See Abaxis, Inc. v. Cepheid*, No. 10–CV–02840–LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ("Rule 702 imposes no requirement that experts have personal experience in an area to offer admissible testimony relating to that area."). At trial, Plaintiff may cross-examine Mr. Steets regarding his training and experience, as was done during his deposition. Mr. Steets acknowledged during his deposition that "it's on th[e] economists to determine whether those estimated costs are affordable or not." ECF No 98-1 at 63 (Deposition Transcript of Brandon Steets, August 16, 2021 ["Steets Depo. Tr."] at 151:13-24).

Nevertheless, the Court finds that his opinion regarding economic should be excluded for other reasons. An expert must have a basis for the opinions being proffered. Where an expert cites no facts in support of an opinion, such opinion is "entirely speculative." *BladeRoom Group Limited v. Facebook, Inc.*, 2018 WL 1611835, at *5 (N.D. Cal. Apr. 3, 2018) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988)). Here, Mr. Steets' Report fails to cite to any objectively verifiable facts or data regarding the Cities' past, present, or future projected economic position to support his conclusion that it is not economically feasible for the Cities to attain bacteria WQS. Instead, Mr. Steets bases his opinion on the following: "Strict attainment of water quality standards for bacteria in wet weather on a watershed-wide scale has yet to be demonstrated in any urbanized area in California that I am aware of, even with huge financial investments being implemented in some areas." Steets Report at 3. Similarly, Mr. Steets states elsewhere in his Report that he is "not aware of a single urban watershed in California where actions have been taken that have resulted in consistently achieving recreational WQS compliance for all MS4 discharges and receiving waters in wet weather, even after significant capital

improvement projects and cost investment." *Id*. at 28-29. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). However, just because Mr. Steets is unaware of a municipality successfully achieving WQS compliance after financial investments does not mean that it is economically unfeasible for the Cities to do so. There is "simply too great an analytical gap" between Mr. Steets' observations regarding other urban areas and his opinion in this case.

Mr. Steets' Report also includes information regarding the City of San Jose's experience reducing bacteria concentrations in discharges from its MS4 to receiving waters:

> As a nearby example, the City of San Jose has recently invested considerable budget into a Comprehensive Load Reduction Plan (CLRP), collection system improvement program, and other measures to address wet weather bacteria discharges from their MS4 to receiving waters, as required through a Consent Decree entered into with Baykeeper (Civil Case No.: 15-CV-00642-BLF). However, recent monitoring data (City of San Jose, 2020) suggests that bacteria concentrations in wet weather MS4 discharges have not improved during this time, with many of the highest concentrations to date quantified during the 2019/2020 wet season.

Steets Report at 29. This single anecdotal account, however, does not add any factual support for Mr. Steets' opinion regarding economic feasibility. The reference to the City of San Jose's "considerable budget" is vague. There are also no facts from which to infer how the City of San Jose's "considerable budget" compares to the Cities' budgets.

Because Mr. Steets' opinion regarding the Cities' financial ability to meet bacteria water quality standards lacks a sufficient factual predicate, the Court grants Plaintiff's motion to exclude Section 7.4, Opinion 4 of Mr. Steets' Report pertaining to "economic impracticability," and any associated testimony.

**B.  Motion to Exclude Portions of Report and Testimony of Mark Berkman**

The Cities designated Mr. Berkman, Ph.D, an applied economist, to review and rebut Plaintiff's expert Johnathan Shefftz's conclusions. Mr. Shefftz renders opinions regarding (1) the

Cities' compliance costs if they were required to modify their wastewater and stormwater infrastructure, and (2) penalties he thinks the Cities should pay for delaying modifications to their infrastructure. Dr. Berkman has two degrees in economics, one in planning analysis and another in administration. Dr. Berkman reviewed Mr. Shefftz's estimated compliance costs and penalties and ultimately concluded that they are unreasonable. Plaintiff moves to exclude (1) Section V.B., entitled "Compliance Costs," paragraphs 33–36, and (2) Section V.F., entitled "Mr. Shefftz Ignores Important Factors," paragraphs 51-55, of his Expert Report and related testimony.

### i. Compliance Costs

Plaintiff's expert, Mr. Shefftz, estimates that the compliance cost is $485.5 million for Sunnyvale and $261.4 million for Mountain View. Mr. Shefftz arrives at this figure based on a project undertaken in the Los Angeles metropolitan area called the Enhances Watershed Management Program ("EWMP") for the Ballona Creek Watershed. This $2.7 billion project covered 128 square miles. Mr. Shefftz prorates the $2.7 billion to Sunnyvale and Mountain View "by applying the ratio of city square miles x the square miles of the project." Berkman Report ¶ 33.

In Dr. Berkman's opinion, Mr. Shefftz substantially overstates likely compliance costs. *Id.* Dr. Berkman's opinion is that the EWMP is an unreasonable comparison point for the Cities' potential compliance costs because the EWMP is a major undertaking designed to address not only a bacteria impairment confirmed by a Total Maximum Daily Load ("TMDL"), but also to address potential exceedances related to metals and other pollutants in the Los Angeles metropolitan area that are not relevant in this case against the Cities. *Id.* ¶¶ 33-34. Dr. Berkman also notes that there are no TMDLs for Stevens Creek or the other waterways on which Plaintiff collected bacteria samples. *Id.* ¶ 34. Further, Dr. Berkman asserts that the EWMP is an unreasonable comparison point because a large percentage of the $2.7 billion is earmarked for costs that "are unlikely to mirror the costs faced by Sunnyvale and Mountain View." *Id.* ¶ 34. Dr. Berkman also opines that the EWMP is an unreasonable comparison because it was designed to

CASE NO.: 5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN

7

achieve objectives regarding climate change resiliency and aesthetic enhancements that are not relevant to this case. *Id.* ¶ 34. When the compliance cost based on the EWMP is eliminated, Dr. Berkman estimates that the compliance cost for Sunnyvale is $2.2 million or less, and the compliance cost for Mountain View would be $0.3 million or less. Report ¶ 36.

Plaintiff argues that Dr. Berkman should be precluded from expressing his opinion on compliance costs because he is not an engineer. The argument is unpersuasive because Dr. Berkman is providing an economic analysis. As Defendants point out, Dr. Berkman's analysis is based on "the obvious differences between the enormous costs associated with the EWMP, which includes different alleged pollutants (metals) and a much different area (the Los Angeles metropolitan area) and the present situation." Opp'n at 6. He does not purport to offer any opinions about the engineering aspects of the EWMP. As such, the analysis he undertakes does not exceed "the reasonable confines of his [expertise as an applied economist]" and, therefore, is not subject to exclusion just because Dr. Berkman is not an engineer. *Avila*, 633 F.3d at 839. To the extent Plaintiff may be arguing that Dr. Berkman's economic analysis should have, but failed to, consider the engineering aspects of the EWMP or the Cities' systems, that argument goes to the weight, not the admissibility of his analysis. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to . . . faults in [the expert's] use of a particular methodology . . . go to the weight, not the admissibility, of his testimony." (citation, quotation marks, and alterations omitted)); *see also Ralston v. Mortgage Investors Group, Inc.*, No. 2011 WL 6002640, at *9 (N.D. Cal. Nov. 30, 2011) (argument that expert report is "offers "nothing more than a simplistic" spreadsheet of damages calculation goes to the weight, not admissibility of such evidence).

### ii. Penalty Assessment

Plaintiff also challenges Dr. Berkman's critique of Mr. Shefftz's penalty assessment. The United States Environmental Protection Agency ("USEPA") uses a Model to Calculate the Economic Benefit of Noncompliance (the "BEN Model") when considering whether a penalty should be imposed. There are two categories of factors: Gravity Component and Adjustment

factors. The former includes actual or possible environmental harm, importance to the regulatory scheme, size of the violation, and severity of the violation. The latter includes degree of willfulness and/or negligence, degree of cooperation, history of compliance, ability to pay, and other factors. Dr. Berkman faults Mr. Shefftz for ignoring factors under the USEPA's BEN Model. Specifically, Dr. Berkman opines that (1) there is "no evidence that substantial environmental harm has occurred as a result of the Cities wastewater and stormwater management efforts"; and (2) the Cities have shown a high degree of cooperation. Dr. Berkman proffers several reasons why there is no evidence of substantial environmental harm:

- the bacterial levels measured by Plaintiff have not been associated with fish kills or other environmental losses;
- Stevens Creek has elevated bacteria levels upstream;
- South San Francisco Bay has contamination from other acutely toxic pollutants, which would restrict uses of the waters even if bacteria was eliminated;
- the Cities continually monitor and expend substantial sums on their wastewater systems and stormwater management programs;
- Stevens Creek and South San Francisco are not water contact recreation hubs;
- there is no evidence of current and existing water contact beneficial uses of the creek segments running through the Cities;
- fishing is already restricted in Stevens Creek Reservoir and the San Francisco Bay for reasons other than bacteria;
- there is almost no access for boating or swimming in Stevens Creek Reservoir and the San Francisco Bay;
- Plaintiff has produced no evidence of bacterial impairments or other harm in the Bay itself.

Berkman Report ¶¶ 51-53. Dr. Berkman also opines that Plaintiff's requested penalty in excess of $0.5 billion is inappropriate because there is no evidence of environmental harm. *Id*. ¶ 54.

Plaintiff first contends that Dr. Berkman is unqualified to render the opinions. The argument is unpersuasive. Dr. Berkman has over thirty years of experience as an applied economist. He has testified in federal and state courts on topics ranging from environmental

CASE NO.: 5:20-CV-00824-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF BRANDON STEETS; DENYING PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF MARK BERKMAN

9

1  damages, natural resource valuation, regulatory impacts, and benefit-cost studies regarding
2  proposed environmental rules and regulations.  He also has prior experience providing an opinion
3  regarding penalty calculations on behalf of a municipality in a Clean Water Act suit.  He has
4  conducted several studies involving a BEN Model.  He also has experience in providing penalty
5  calculations on behalf of at least one municipality in a Clean Water Act lawsuit.  Dr. Berkman is
6  not required to have any education or training as an engineer to render an opinion regarding
7  economic issues.  The Court finds that Dr. Berkman has the relevant knowledge, skill, experience,
8  training, and education to qualify him as an expert to testify specifically regarding penalties.

9  Second, Plaintiff argues that Dr. Berkman is unqualified because he testified during
10 deposition that he was unfamiliar with certain terms such as "environmental losses," "outfall" and
11 "REC-1 standard."  Mot. at 6 (citing Berkman Dep. Tr. at 56:7-11; 57:10-13; 63:12-64:2; 68:9-13;
12 70:1-72:4; 73:21-74:1).  However, the deposition excerpts cited by Plaintiff do not demonstrate
13 such a fundamental lack of understanding of these and other terms as to render Dr. Berkman's
14 opinion inadmissible.  Dr. Berkman's understanding or lack thereof of certain terms goes to the
15 weight, not the admissibility of his opinions.  At trial, Dr. Berkman's opinions may "be attacked
16 by cross examination, contrary evidence, and attention to the burden of proof."  *Primiano v. Cook*,
17 598 F.3d 558, 564 (9th Cir. 2010).

18 Third, Plaintiff contends that Dr. Berkman's deposition testimony shows that he failed to
19 conduct any analysis, apply any methodology, or utilize sufficient facts or data in reaching the
20 conclusions regarding penalties, and instead "relied primarily on his experience as a casual observer
21 and the documents filed in this action."  Mot. at 8.  The Court disagrees with Plaintiff's
22 characterization of Dr. Berkman's deposition testimony.  Dr. Berkman's Report and deposition
23 testimony demonstrate that he reviewed various documents and relied on his years of experience in
24 arriving at his opinions.  For example, Dr. Berkman's opinion that there is no evidence of substantial
25 environmental harm is based on his review of Plaintiff's complaint and Mr. Wren's initial report.
26 Thus, Dr Berkman has an objectively verifiable factual basis to support his opinion.  As another

United States District Court
Northern District of California

example, Dr. Berkman's opinion that Stevens Creek has elevated bacteria levels at portions upstream of urban area is based on a study from 2001-2003. Again, the study is an objectively verifiable factual basis for Dr. Berkman's opinion. Plaintiff also takes issue with Dr. Berkman's opinions regarding recreational and beneficial uses because, among other things, they are based his review of maps and personal observations. Once again, the maps and Dr. Berkman's observations of the San Francisco Bay Area provide objectively verifiable factual bases for his opinions. That Plaintiff disagrees with the conclusions to be drawn from the documents Dr. Berkman reviewed and the observations he made is not a justification for excluding his opinions. At trial, Plaintiff will have an opportunity to cross-examine Dr. Berkman and offer rebuttal evidence.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion to exclude portions of the expert testimony of Brandon Steets is GRANTED IN PART, and Plaintiff's motion to exclude portions of the expert testimony of Mark Berkman is DENIED.

**IT IS SO ORDERED.**

Dated: February 1, 2022

EDWARD J. DAVILA
United States District Judge