1

2

3

4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6
SAN JOSE DIVISION

7

8
SAN FRANCISCO BAYKEEPER,

Lead Case No.   5:20-cv-00824-EJD

9
Plaintiff,

Consolidated with No. 5:20-cv-00826 EJD

10
v.

**ORDER RE DEFENDANTS' MOTIONS
IN LIMINE TO EXCLUDE EXPERT
TESTIMONY OF IAN WREN, KEVIN
DRAGANCHUK, AND JONATHAN
SHEFFTZ**

11
CITY OF SUNNYVALE,

12
Defendant.

13

14
SAN FRANCISCO BAYKEEPER,

Re: Dkt. Nos. 112, 113, 114

15
Plaintiff,

16
v.

17
CITY OF MOUNTAIN VIEW,

18
Defendant.

19

20
Plaintiff San Francisco Baykeeper ("Plaintiff") initiated these suits against Defendants City

21
of Sunnyvale ("Sunnyvale") and City of Mountain View ("Mountain View") under the citizen suit

22
enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*

23
("Clean Water Act" or "CWA"), to address the allegedly unlawful discharge of bacteria pollution

24
by these Cities.[1]  Defendants have filed motions *in limine* to exclude portions of the expert

25

26

27
[1] Sunnyvale and Mountain View are hereinafter collectively referred to as the "Cities" or
"Defendants."
**CASE NO.: 5:20-CV-00824-EJD**

28
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT
TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

1

United States District Court
Northern District of California

1   testimony of Plaintiff's retained experts, Ian Wren, Kevin Draganchuk, and Jonathan Shefftz,

2   pursuant to Federal Rules of Evidence ("FRE") 104(a) and 702, and *Daubert v. Merrell Dow*

3   *Pharms, Inc.*, 509 U.S. 579 (1993).  Dkt. Nos. 112-14.  Plaintiff filed oppositions, Dkt. Nos. 115-

4   18, and a request for judicial notice, Dkt. No. 119.  The request for judicial notice of the Penalty

5   And Financial Models From U.S. Environmental Protection Agency Website, the AACE

6   International Recommended Practice, Cost Estimate Classification System, and the Certified

7   Professional In Stormwater Quality From Envirocert International, Inc. Website is granted.[2]

8   Defendants' motions to exclude are granted in part and denied in part.

9   **I.     BACKGROUND**

10          Plaintiff sampled for fecal indicator bacteria from several municipal separate storm sewer

11   system ("MS4") outfalls owned and operated by Defendants, as well as locations within Stevens

12   Creek, Calabazas Creek, and the Sunnyvale East Channel into which the Cities' MS4s discharge

13   ("Receiving Waters").  According to Plaintiff, the data shows that the Cities' stormwater

14   discharges and the Receiving Waters downstream of MS4 outfalls vastly exceed bacteria water

15   quality standards ("WQS").

16   **II.    STANDARDS**

17          Federal Rule of Evidence 402 provides that all relevant evidence is admissible, except as

18   otherwise provided by the Constitution of the United States, by Act of Congress, by the Federal

19   Rules of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory

20   authority.  Fed. R. Evid. 402.  "Relevant evidence" is defined in Federal Rule of Evidence 401 as

21   that which has "(a) any tendency to make a fact more or less probable than it would be without the

22   evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

23          Federal Rule of Evidence 702 permits opinion testimony by an expert if the proponent

24

---

25   [2] Defendants filed objections to Plaintiff's oppositions, which are essentially reply briefs. Dkt.
Nos. 121-23.  Among other things, Defendants object to the length of Plaintiff's opposition briefs
26   because they exceed the page limit established by the Court's Standing Order § IV.D.6.  The
objection is well taken.  All future filings not in compliance with the Court's Standing Order will
27   be stricken.
**CASE NO.: 5:20-CV-00824-EJD**
28   **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT
TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
2

1    demonstrates that the expert is qualified and (a) the expert's scientific, technical, or other

2    specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

3    in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

4    reliable principles and methods; and (d) the expert has reliably applied the principles and methods

5    to the facts of the case.  Fed. R. Evid. 702.  An expert witness may be qualified by "knowledge,

6    skill, experience, training, or education."  *Id.*  The proponent of expert testimony has the burden of

7    proving admissibility in accordance with Rule 702. Fed. R. Evid. 702 advisory committee's note

8    to 2000 amendment.

9         Rule 702 "clearly contemplates some degree of regulation of the subjects and theories

10   about which an expert may testify."  *Daubert*, 509 U.S. at 589–90.  Under *Daubert*, the Court

11   exercises a gatekeeping function to ensure an expert's proffered testimony is relevant and reliable.

12   *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020).  "[K]ey question[s] to be

13   answered in determining whether a theory or technique is scientific knowledge that will assist the

14   trier of fact will be" whether it can be (and has been) tested; whether it was subjected to peer

15   review and publication; the known or potential rate of error; and whether the theory is generally

16   accepted in the scientific community.  *Daubert*, 509 U.S. at 593–94.  "[T]he case law—

17   particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert

18   opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to

19   question the expert's credibility.  So long as an opinion is premised on reliable scientific

20   principles, it should not be excluded by the trial judge."  *In re Roundup Prods. Liab. Litig.*, 390 F.

21   Supp. 3d 1102, 1109 (N.D. Cal. 2018).

22   **III.    DISCUSSION**

23        **A.    Mr. Draganchuk**

24        Plaintiff engaged Mr. Draganchuk, an engineer, (1) to evaluate the potential that sanitary

25   sewage ("sewage") is exfiltrating from Defendants' respective sanitary sewer systems ("SSS") and

26   infiltrating into their respective MS4s for subsequent discharge from the MS4s' outfalls to

27   CASE NO.: 5:20-CV-00824-EJD
28   **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT
     TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

United States District Court
Northern District of California

1    receiving surface waters, and (2) to recommend remedies to minimize the potential for exfiltrated

2    sewage, if needed.  Expert Report of Kevin Draganchuk ("Draganchuk Report"), Dkt. No. 113-1,

3    at 4.  Mr. Draganchuk holds a Bachelor of Science in chemical engineering from Rensselaer

4    Polytechnic Institute of Troy, New York.  *Id.*  He is a registered professional engineer in New

5    York, New Jersey, and Florida and has 14 years of experience in environmental engineering.  *Id.*

6    He is also board certified by the American Academy of Environmental Engineers and Scientists,

7    with a specialty in water supply and wastewater.  *Id.*  He is certified by the National Association of

8    Sewer Service Companies ("NASSCO") in its Pipeline, Manhole, and Lateral Assessment

9    Certification Program ("PACP").  *Id.*  He is also a member of the Water Environment Federation's

10   Collection System Committee ("CSC") and a member of the CSC Technical Practice Group.  *Id.*

11   Mr. Draganchuk is currently President of CEA Engineers, P.C. ("CEAPC") of Bloomingburg, NY,

12   an environmental engineering firm.  *Id.*

13          Mr. Draganchuk's experience includes "designing stormwater treatment and management

14   systems; stormwater permitting; analyzing the operation, maintenance, asset management, and

15   design of sanitary and combined sewer systems; designing and cost estimating for site

16   remediation; and reviewing Wastewater Treatment Plant ("WWTP") design, operations and

17   performance and National Pollutant Discharge Elimination System ("NPDES") permits."  *Id.*  He

18   "analyzes facilities, causes, remedies, and costs for litigation support on sanitary sewer overflows

19   ('SSOs') and combined sewer overflows ('CSOs'), WWTP and industrial discharge violations,

20   stormwater management, flooding, and industrial chemical discharge litigations."  *Id.*  He also

21   "develops stormwater pollution prevention plans (SWPPPs) and obtain[s] stormwater and surface

22   water discharge New York State Pollutant Discharge Elimination System (SPDES) permits for

23   construction and industrial activities."  *Id.*  He is the Professional Engineer of record for a

24   "brownfield site," for which he oversees the operation, maintenance, and testing of its remediation

25   systems, analyzes monitoring results, and performs construction and environmental oversight

26   during site remediation activities.  *Id.*  He also has experience providing technical engineering

27

28   CASE NO.: 5:20-CV-00824-EJD
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
                                      4

United States District Court
Northern District of California

1   support for settlement and litigation in cases related to SSOs and/or CSOs, wastewater collection

2   and conveyance systems, and wastewater treatment for environmental advocacy groups in a

3   number of states, including California.  *Id*. at 5.

4           There are fourteen opinions in Mr. Draganchuk's report.  First, Mr. Draganchuk concludes

5   that:

6               The existence of potential sources of FIB, including human-specific
            bacteria loads, to receiving surface waters other than Exfiltration in
            Sunnyvale and the fact that Sunnyvale is actively working to prevent
7               bacteria loads from sources of FIB other than Exfiltration from
            contributing to bacteria loads, including human-specific bacteria
8               loads, to receiving surface waters in Sunnyvale does not preclude
            Exfiltration, for which Sunnyvale has not investigated, as a bacteria
9               loading source to receiving surface waters in Sunnyvale.

10  *Id*. at 29 (Opinion No. 1).  Opinion 2 is directed to Mountain View and is otherwise identical to

11  Opinion 1.  Mr. Draganchuk next opines that it is "highly probable" that exfiltration from the

12  Sunnyvale sanitary sewer system ("SSS") is discharging from the Sunnyvale MS4 to Stevens

13  Creek, Sunnyvale East Channel, and Calabazas Creek and other receiving surface waters, and

14  subsequently to their downstream receiving waters, including South San Francisco Bay, and that

15  the discharges are contributing to *E.coli* and enterococci water quality objectives ("WQOs")

16  exceedances, human-specific molecular markers loads, and overall pollutant loads that increase

17  risks to human health and the environment.  *Id*. at 34-37, 40 (Opinion Nos. 3, 5).  He renders

18  similar opinions regarding Mountain View's SSS and MS4.  *Id*. at 38-40, 41 (Opinion Nos. 4, 6).

19  Mr. Draganchuk opines that Defendants need to perform an investigation to identify sources of

20  exfiltration ("Exfiltration Investigation") and that this Exfiltration Investigation needs to include a

21  desktop and Geographic Information System ("GIS") analysis to identify SSS pipes that are

22  capable of exfiltration based on their location relative to MS4 pipes.  *Id*. at 41-43 (Opinion Nos. 7-

23  8).  Next, Defendants need to: inspect the pipes capable of exfiltration; grade the pipes using the

24  NASSCO PACP standard; investigate the pipes with PACP 5 and PACP 4 structural defects

25  through dye testing and/or human-specific molecular markers analysis to identify if exfiltration is

26  occurring; and "rehabilitate" the pipes that are exfiltrating.  *Id*.  Mr. Draganchuk opines that

27

United States District Court
Northern District of California

1   Sunnyvale and Mountain View need to create a "Complete GIS database." *Id*. at 43-44 (Opinion

2   Nos. 9, 10).  He also opines that Sunnyvale and Mountain View avoided costs by not performing

3   an Exfiltration Investigation and by not maintaining a Complete GIS database.  *Id*. at 44 (Opinion

4   Nos. 11 and 12).  According to Mr. Draganchuk, the "order of magnitude estimate of the costs

5   avoided by" not performing an Exfiltration Investigation and by not maintaining a Complete GIS

6   database is $1,950,000 for Sunnyvale, and $1,000,000 for Mountain View.  *Id*., Table 9.  Lastly,

7   Mr. Draganchuk opines that Sunnyvale and Mountain View "potentially avoided costs by not

8   performing SSS main pipes rehabilitation to eliminate Exfiltration sources identified during an

9   Exfiltration Investigation."  *Id*. at 45 (Opinion Nos. 13-14).  Mr. Draganchuk estimates that the

10   order of magnitude estimate of the potential range of costs avoided by not performing the SSS

11   main pipes rehabilitation is $0 - $59,136,000 for Sunnyvale, and  $0 - $7,392,000 for Mountain

12   View.  *Id*., Table 10.

13       Defendants seek exclusion of Mr. Draganchuk's opinions set forth in Section 3.3 of his

14   Expert Report and Opinion Nos. 9 through 14.  *See* Defs.' Proposed Order, Dkt. No. 113-2.

15           **1.       Mr. Draganchuk's Opinions re Cost Estimates**

16       Defendants first contend that Mr. Draganchuk is not qualified to give the cost estimates in

17   Opinion Nos. 11-14 and Tables 9 and 10 because he is not an economist.  Mr. Draganchuk's

18   resumé supports finding that he has sufficient knowledge, skill, and experience to provide Opinion

19   Nos. 11-14.  He has over thirteen years of experience working as an environmental engineer.  This

20   experience includes wastewater collection design, operations and maintenance, and condition

21   assessment; stormwater evaluation, design, and permitting; and pollutant discharge quantification

22   and environmental impacts.  Engineers are often tasked with providing cost estimates.  *See e.g.*,

23   *United States v. 14.3 Acres of Land*, No. 07-886 W(NLS), 2008 WL 4079272, at \*7 (S.D. Cal.

24   Aug. 29, 2008) (civil engineer developed costs of road project).  Moreover, the lack of

25   specialization in a particular field goes to the weight of the expert's opinion, not admissibility.

26   *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011).

27

United States District Court
Northern District of California

1    Although Mr. Draganchuk has sufficient knowledge, skill, and experience to provide cost

2    estimates, Table 9 must be excluded because it is not supported by sufficient facts. *United States*

3    *v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[A]n expert must back up

4    his [or her] opinion with specific facts."). Mr. Draganchuk acknowledged during his deposition

5    that he "did not have actual direct cost data to rely on" for Table 9. *See* Decl. of Melissa A.

6    Thorme in Support of Mot. to Exclude the Expert Test. of Kevin Draganchuk, Ex. B, Dkt. No.

7    113-1, at 136:6-12. He testified that the numbers in Table 9 were "partially based on deposition

8    testimony" for the cost of an exfiltration study, and on the relative sizes of Defendants' sanitary

9    systems. *Id.* at 136:9-12. But Plaintiff fails to identify the deponent, the substance of the

10   deponent's testimony, and the exfiltration study upon which Mr. Draganchuk relied. Lacking this

11   support, Table 9 is excluded.

12   In contrast to Table 9, there is a factual basis for the cost estimates in Table 10. Mr.

13   Draganchuk testified that the cost estimates in Table 10 were "based on unit prices for removal

14   and replacement of eight-inch HDPE sewer main pipes and eight-inch PCV sewer via open trench

15   from the City of Mountain View Villa Street –Water and Sewer Main Replacement Project" from

16   June of 2018. *Id.* at 135:23-136:5. Mr. Draganchuk used Mountain View data for Sunnyvale

17   because "Sunnyvale is right next door likely using the same or similar contractors, same and

18   similar soil types, same or similar pipe types, so the costs would be very comparable." *Id.* at

19   137:23-138:1. Defendants fault Mr. Draganchuk for failing to take into consideration potential

20   cost differentials, such as the differences between in-house and outside contractors. *Id.* at 137:21-

21   138:7. Defendants also make much of Mr. Draganchuk's admission that his cost estimates were

22   AACE Level 5 cost estimates, which have the highest levels of uncertainty and are the least

23   reliable. *Id.* at 139:5-139:20. These purported deficiencies, however, go to the weight, not the

24   admissibility of Table 10. The court should screen for "unreliable nonsense opinions, but not

25   exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget*

26   *Grp., Inc.*, 738 F.3d 960, 696-70 (9th Cir. 2013).

United States District Court
Northern District of California

27

28   **CASE NO.: 5:20-CV-00824-EJD**
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

United States District Court
Northern District of California

1

### 2.     Mr. Draganchuk's Engineering Evaluations

2        Defendants next contend that Mr. Draganchuk's engineering evaluations must be excluded

3   because he is not qualified to provide engineering opinions in California, even though he is a

4   registered engineer in New York, New Jersey, and Florida.  The argument is unpersuasive as "an

5   expert need not have official credentials in the relevant subject matter to meet Rule 702's

6   requirements."  *See United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993); *see also Tarrant*

7   *v. Leatt Corp.*, No. 13-1230 DMG, 2014 WL 12558297, at *4 n.1 (C.D. Cal. Dec. 9, 2014)

8   (finding that the restricted nature of expert's California license did not preclude him from

9   proffering expert testimony).  Defendants have not presented a persuasive policy reason why an

10  out-of-state expert retained to render opinions in this court must be registered or licensed under

11  California law as a per se condition precedent to testifying as an expert, and regardless of the

12  expert's other qualifications.  "If there is any relevance to being a local licenciate, that fact or the

13  absence of it may be adduced to the trier of fact."  *Geophysical Sys. Corp. v. Seismograph Serv.*

14  *Corp.*, 738 F. Supp. 348, 350 (C.D. Cal. 1990).

15
### 3.     Mr. Draganchuk's Opinions Regarding Defendants' "High Risk" Sewer Lines
16

17       Defendants contend that Mr. Draganchuk's other opinions regarding Defendants' "high

18  risk" sewer lines are not supported by the underlying facts and data and/or are not reliable or

19  relevant under *Daubert* and its progeny.  Defendants' argument rests on Mr. Draganchuk's

20  acknowledgment that there are a number of "gaps and limitations" with the underlying data he

21  used to conduct his analysis.  *See* Draganchuk Report at 25-28.  Again, Defendants' argument fails

22  to persuade.

23       Although Mr. Draganchuk noted gaps in the Cities' data, he was still able to use the

24  available data to identify the main pipes that have a high risk for exfiltration ("High Risk Pipes").

25  He used the following criteria to identify High Risk Pipes in Sunnyvale:

26            1.   constructed of VCP

27
**CASE NO.: 5:20-CV-00824-EJD**
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
28  **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

8

2. installed prior to 1960 (e.g. at least 60 years old)

3. SSS main pipe located at an elevation higher than the adjacent MS4 pipe

4. the adjacent MS4 pipe is located no more than one meter radially from the SSS main pipe

5. structural condition assessment severity based on NASSCO PACP grades of four or five based on the PACP Quick Rating.

6. 

Draganchuk Report at 25.  For Mountain View, he used the first and fifth criteria above and one additional criterion: "the adjacent MS4 is located no more than one meter horizontally from the SSS main pipe." *Id*. at 27.  Based on the criteria above, he identified 13 High Risk Pipes in the Sunnyvale SSS and 142 potential High Risk Pipes in the Mountain View SSS.  *Id*. at 26, 28.  He then extrapolated his analyses to portions of Defendants' SSSs where there is no condition assessment data available, and estimated that there are "potentially 81 High Risk Pipes" in the Sunnyvale SSS and "500 potential High Risk Pipes" in the Mountain View SSS.  *Id*. at 27-28.  Hence, contrary to Defendants' assertion, Mr. Draganchuk's opinions are based on sufficient facts and reflect "more than subjective belief or unsupported speculation."  *Daubert*, 509 U.S. at 590.  It is unfortunate that Defendants do not maintain comprehensive data regarding the installation dates, location and condition of their pipes.  But gaps in Defendants' data is not a reason to exclude Mr. Draganchuk's opinions.  The factual basis of Mr. Draganchuk's opinion "goes to the credibility of [his] testimony, not the admissibility."  *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)).

Defendants next contend that Mr. Draganchuk's analyses and opinions regarding High Risk Pipes lack reliability based on the opinions of their rebuttal experts.  Defendants' expert, Mansour Nasser, investigated some of the High Risk Pipes identified by Mr. Draganchuk, and concluded that most of the pipes identified for Sunnyvale did not meet the definition of High Risk Pipe, and the others had no indication of exfiltration.  Rebuttal Expert Report of Mansour Nasser

CASE NO.: 5:20-CV-00824-EJD
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

9

United States District Court
Northern District of California

1    ("Nasser Rebuttal Report"), Dkt. No. 93-1, at 6-9. Another rebuttal expert, Mike Vasquez,

2    reached similar conclusions regarding Mountain View's pipes. Rebuttal Expert Report of Mike

3    Vasquez, Dkt. No. 94-1. Nasser also disagreed with Mr. Draganchuk's opinions regarding the

4    necessity of a complete GIS database. Nasser Rebuttal Report at 15.

5         Although the results of Defendants' investigation into High Risk Pipes identified by Mr.

6    Draganchuk are significant, they do not establish that Mr. Draganchuk's opinions are so

7    fundamentally unreliable as to warrant exclusion. The investigation into Sunnyvale's pipes was

8    limited to twelve locations. The investigation into Mountain View's pipes was limited to forty

9    pipelines. Furthermore, "[t]he relative weakness or strength of the factual underpinnings of the

10   expert's opinion goes to weight and credibility, rather than admissibility." *See*, *e.g.*, *Bergen v. F/V*

11   *St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987), *opinion modified on reh'g*, 866 F.2d 318 (9th

12   Cir. 1989); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices and Prods. Liab.*

13   *Litig.*, No. MDL 10–02172, 2012 WL 4904412, at *3 (C.D. Cal. Sept. 20, 2012) (finding whether

14   an expert's reasonable assumptions are true and whether his opinions should be accepted are

15   issues going to the weight of his testimony and report and not to their admissibility).

16        In sum, Defendants' motion to exclude the opinions of Mr. Draganchuk is granted as to

17   Table 9, and denied in all other respects.

18        **B.    Mr. Wren**

19        Plaintiff designated Mr. Wren to offer expert opinions related to: (1) Defendants' alleged

20   contribution to exceedances of bacteria WQOs; (2) whether certain water bodies are waters of the

21   United States ("WOTUS") under the CWA; and (3) the proposed remediation methods and costs

22   related to alleged violations of bacteria objectives. Mr. Wren holds a Bachelor of Arts in

23   Integrative Biology from the University of California, Berkeley and a Master in Hydrology from

24   the Imperial College of Science Technology and Medicine in the United Kingdom. Expert Report

25   of Ian Wren ("Wren Report"), Dkt. No. 92-10, at 2. Mr. Wren is a Certified Professional in

26   Stormwater Quality (CPSWQ), a California Construction General Permit Qualified Stormwater

United States District Court
Northern District of California

27

28   CASE NO.: 5:20-CV-00824-EJD
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
     10

1    Pollution Prevention Plan (SWPPP) Developer and Qualified SWPPP Practitioner (QSD/QSP),

2    and a California Industrial General Permit Qualified Industrial Storm Water Practitioner (QISP).

3    *Id.* Since 2010, Mr. Wren has been the Staff Scientist at Baykeeper. *Id.* at 4. Mr. Wren is also an

4    independent consultant for several non-profit environmental organizations and public sector

5    clients. *Id.*

6    First, Mr. Wren opines that he performed stormwater sampling efforts on behalf of

7    Plaintiff in accordance with a Quality Assurance Program Plan ("QAPP") and associated Standard

8    Operating Procedures prepared by him. *Id.* at 3. The samples he collected were analyzed by a

9    state-certified laboratory for fecal coliforms ("FC"), total coliforms ("TC"), *E.coli*, and

10   Enterococci (collectively referred to as fecal indicator bacteria, or "FIB"). *Id.* at 6. Second, he

11   opines that discharges from Defendants' MS4s contribute to exceedances of applicable WQOs.

12   *Id.* at 8-15. Third, he concludes (a) that Stevens Creek and Calabazas Creek meet the definition of

13   a WOTUS under the CWA; and (b) that Sunnyvale East Channel serves as a point source of

14   pollution to San Francisco Bay. *Id.* at 15-19. Fourth, Mr. Wren concludes that the alternative

15   compliance programs developed under the Los Angeles County MS4 Permit represent an

16   applicable model for Defendants to come into compliance with FIB standards for their MS4

17   systems. *Id.* at 19-22. The process developed under this Los Angeles County MS4 Permit has

18   four steps: (1) initial planning, such as conducting a "water quality characterization" based on

19   available data, identifying highest priority pollutants, performing source identification for the

20   pollutants, and establishing a set of compliance milestones; (2) identifying control measures such

21   as stormwater infiltration; (3) conducting a reasonable assurance analysis ("RAA") to demonstrate

22   that the control measures will ensure compliance with applicable WQS; and (4) implementing the

23   control measures over a reasonable period of time. *Id.*

24   Mr. Wren's report also includes an approach for estimating the cost of compliance with

25   WQOs. *Id.* at 22. He relies on the cost of the Los Angeles County MS4 Permit, Ballona Creek

26   Enhanced Watershed Program ("EWMP"). *Id.* According to Mr. Wren, the cost to Defendants to

27

28   **CASE NO.: 5:20-CV-00824-EJD**
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
**TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

11

United States District Court
Northern District of California

1    comply with WQOs would be similar to the cost of the Ballona Creek EWMP, scaled to the

2    smaller size of the Cities.  *Id*.  In other words, the $2.72 billion cost of the Ballona Creek EWMP

3    should be scaled to account for the fact that Sunnyvale is 17.8% and Mountain View is 9.6% of

4    the size of the Ballona Creek watershed.

5          Defendants seek exclusion of Mr. Wren's second, third and fourth opinions.  Defendants

6    argue that these opinions should be excluded because Mr. Wren is not qualified to provide these

7    opinions; he applied the wrong standards and lacked sufficient data to form his opinions; and he

8    used unreliable methodology to form his opinion on remediation.

9                      **1.      Mr. Wren's Opinions on Whether a Water is a WOTUS**

10         Defendants argue that (1) Mr. Wren does not have any qualifications that make him an

11   expert on WOTUS, and (2) whether a water body is a WOTUS is a legal conclusion.  Defendants

12   are correct that an expert may not give testimony regarding a legal conclusion.  Whether a water is

13   a WOTUS is ultimately a question for the Court.  *Nationwide Transp. v. Cass Info. Sys., Inc.*, 523

14   F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal*

15   *conclusion*, i.e., an opinion on an ultimate issue of law.").  Thus, the Court grants Defendants'

16   motion to the extent they seek exclusion of  Mr. Wren's opinions that Stevens Creek and

17   Calabazas Creek are WOTUS, and that Sunnyvale East Channel is a point source.

18         Although the Court is precluding Mr. Wren from rendering legal conclusions, the facts

19   underpinning those conclusions are not necessarily subject to exclusion.  *See Zeiger v. WellPet*

20   *LLC*, 526 F. Supp. 3d 652, 680 (N.D. Cal. 2021) ("District courts may, accordingly, preclude

21   witnesses from relating legal conclusions, but not the facts underpinning those conclusions (so

22   long as they are otherwise admissible).").  Accordingly, Defendants' motion is denied to the extent

23   they seek exclusion of Mr. Wren's factual assessment of the waters at issue, including for

24   example, the hydrological characteristics of the waters at issue.  Mr. Wren's education and

25   experience as a hydrologist qualify him to opine on the hydrological characteristics of a

26   waterbody.

27

28   CASE NO.: 5:20-CV-00824-EJD
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
     12

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### 2.      Mr. Wren's Opinions Related to Defendants' Alleged Contribution to Exceedances of Bacteria Objectives

2

3

4

5

6

Defendants contend that Mr. Wren's opinions as to their alleged contribution to exceedances of bacteria objects are based on flawed data and methodology.  The Court rejects Defendants' arguments for the reasons stated in the Order Granting Plaintiff's Motion For Partial Summary Judgment; Denying Defendants' Cross-Motion For Summary Judgment; And Denying Motion For Leave To File Supplemental Brief.

7

### 3.      Mr. Wren's Opinions on Remedial Plan and Associated Costs

8

9

10

11

12

Section 6 of Mr. Wren's Report is entitled "Process for Establishing a Remedy for Exceedances of Water Quality Objectives."  Wren Report at 19.  Section 6, subsection (a) sets forth Mr. Wren's recommended process for developing a Watershed Management Program to address exceedances of bacteriological WQOs, and subsection (b) sets forth his approach for estimating cost compliance with WQOs.

13

14

15

Defendants argue that Mr. Wren used an unreliable methodology to form his opinions on remedial actions.  Defendants also contend that Mr. Wren is not qualified to offer opinions as to the costs and benefits of remediation, and that his cost evaluation is fundamentally flawed.

16

### a.      Methodology For Forming Opinions on Remedial Actions (Section 6(a))

17

18

19

20

21

22

23

24

25

26

Defendants take issue with Mr. Wren relying on the Los Angeles County MS4 Permit, Ballona Creek EWMP as a compliance model.  Defendants point out that the Ballona Creek EWMP is in a different part of the state, with different rainfall and different expectations for bacteria, and furthermore, the program has yet to be fully implemented.  Defendants also point out that the regulatory landscape in Los Angeles is different than for the Cities, and that the Ballona Creek watershed is much larger and has a much more expansive level of urbanization in it than in the vicinity of the Cities.  Defendants also contend that Mr. Wren assumes, without any basis, that implementing a program such as the Ballona Creek EWMP will enable the Cities to meet bacteria water quality objectives.

27

These purported shortcomings in Mr. Wren's analysis are not a basis to exclude the

28

CASE NO.: 5:20-CV-00824-EJD
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

13

1    entirety of Mr. Wren's opinions in Section 6, subsection (a).  Mr. Wren is qualified to render those

2    opinions.  He "has performed technical and litigation support on over fifty matters related to

3    municipal and industrial stormwater, involving sampling and sample design, review of SWPPPs,

4    and identification of best management practices."  Wren Report at 2.  Locally, Mr. Wren was

5    involved in developing a remedial program for the City of San Jose.  Rebuttal Expert Report of

6    Ian Wren, Dkt. No. 92-11, at 12.  When deciding whether to admit expert testimony, the Court is

7    "concerned not with the correctness of the expert's conclusions but the soundness of his

8    methodology."  *Estate of Barabin*, 740 F.3d 4 at 463.  Here, Mr. Wren offers a reasonably sound

9    basis for his methodology for establishing a remedy for exceedances of WQS:  He relies on the

10   programs developed under the 2012 Los Angeles County MS4 Permit.  Wren Report at 19-22.

11   There may be strong, and perhaps persuasive, reasons why the programs developed for Los

12   Angeles County cannot or should not be implemented by the Cities.  Nevertheless, Mr. Wren's

13   methodology is not so unsound as to warrant total exclusion of Section 6, subsection (a).

14   Defendants' critiques as to Mr. Wren's methodology may be raised at trial.  *See Daubert*, 509 U.S.

15   at  596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction

16   on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

17   evidence.").

18                              **b.      Cost of Remediation (Section 6(b))**

19          Defendants next contend that Mr. Wren is not an economist, and therefore not qualified to

20   offer an opinion on the cost of remediation.  As stated previously, however, an expert witness may

21   be qualified by "knowledge, skill, experience, training, *or* education."  Fed. R. Evid. 702

22   (emphasis added).  Mr. Wren has experience, but arguably minimal experience, estimating costs

23   for remediation.  Mr. Wren testified that he has "scoped out costs for treatments systems."  Decl.

24   of Melissa A. Thorme in Support of Mot. to Exclude Expert Test. of Ian Wren ("Thorme Decl.

25   ISO Wren MIL"), Exh. A, Dkt. No. 114-1, at 10:18-25.  The sufficiency of Mr. Wren's training

26   and experience in estimating the cost of remediation bears more on the weight of his opinion than

27

28   CASE NO.: 5:20-CV-00824-EJD
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
     14

United States District Court
Northern District of California

1    its admissibility. *See Abaxis, Inc. v. Cepheid*, No. 10-02840 LHK, 2012 WL 2979019 (N.D. Cal.

2    July 19, 2012) ("Rule 702 imposes no requirement that experts have personal experience in an

3    area to offer admissible testimony relating to that area.").

4          Lastly, Defendants challenge Mr. Wren's methodology for estimating the cost of

5    remediation. His methodology is simple. He opines that the costs for remediation in this case

6    should be "downscaled, based on area, from estimates for members of the Ballona Creek

7    Watershed Management Group." Wren Report at 22. He then compares the 128 square miles in

8    the Ballona Creek watershed and the 22.8 and 12.3 square miles in Sunnyvale and Mountain

9    View, respectively. *Id*. Mr. Wren does not provide a numerical estimate in his Report, but

10   testified that a downscaled estimate for Sunnyvale would be approximately 17.8 percent of $2.7

11   billion. Thorme Decl. ISO Wren MIL, Exh. A, at 99:2-5. A downscaled estimate for Mountain

12   View would be approximately 9.6 percent of $2.7 billion.

13         Defendants raise several reasons why Mr. Wren's methodology is unreliable. For

14   example, Defendants contend that Mr. Wren did not make any adjustments to his cost estimate

15   based on the fact that the Ballona Creek EWMP included remediation for more pollutants than

16   bacteria. However, even if the Ballona Creek EWMP is an imperfect comparator, and Mr. Wren

17   should have used more or different data to calculate a more accurate remediation cost estimate,

18   Mr. Wren's methodology is not "junk science" under *Daubert*. Accordingly, the Court denies

19   Defendants' motion to exclude Mr. Wren's opinions on a remedial plan and associated costs.

20         In sum, Defendants' motion to exclude the opinions of Mr. Wren is granted as to WOTUS,

21   but denied in all other respects.

22         **C.    Mr. Schefftz**

23         Plaintiff designated Mr. Shefftz as its expert to offer opinions related to: (1) the Cities'

24   economic burdens and compliance costs if they were required to modify their wastewater and

25   stormwater infrastructure, and (2) the penalties the Cities should pay for delaying modifications to

26   their infrastructure, if any. Mr. Shefftz holds a Bachelor of Arts in Economical and Political

27   CASE NO.: 5:20-CV-00824-EJD

28   ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT
TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Economy from Amherst College.  Expert Op. of Jonathan S. Shefftz ("Shefftz Report"), Ex. A.,

2   Dkt. No. 112-1, at A-1.  He also holds a Master of Public Policy with concentrations in

3   Government & Business and Energy & Environmental Policy.  *Id.*  He has been qualified as an

4   expert witness on numerous economic matters in federal court and other contexts and has

5   extensive experience analyzing the economic benefit received through delayed compliance with

6   regulatory requirements and a defendant's ability-to-pay penalties.  *Id.* at 60-62.  Report at 3.  Mr.

7   Shefftz provides four opinions:

8       • Based on my analysis of compliance measures and associated cost estimates
          that Plaintiff's counsel provided to me from their experts – Kevin

9         Draganchuk, P.E. and Ian Wren – in response to my requests, the City's
          economic benefit from failing to implement these measures at an earlier

10        point in time is in the millions of dollars, with the exact figure dependent
          upon the ultimately chosen measure.

11
        • My economic benefit results are present value figures calculated as of July

12        2, 2021 (i.e., the date of this report). Therefore the economic benefit will
          continue to grow after this date until the City effectively pays back its

13        economic benefit in the form of a civil penalty. I provide details in my
          report for the monthly increase in my economic benefit results for each

14        month of delay in paying any penalty past my present value date.

15      • For the economic impact of a penalty payment and injunctive relief costs,
          the U.S. Environmental Protection Agency's sewer overflow financial

16        capability assessment places the City only in the "low burden" category
          even with future projected rate increases to pay for the injunctive relief

17        costs and the imposition of a large civil penalty.

18      • For civil penalties to achieve financial deterrence, their value must exceed
          the economic benefit that defendants realize by delaying and/or avoiding

19        adequate pollution control. Because not all violations are detected,
          prosecuted, and ultimately penalized, to achieve adequate deterrence, a civil

20        penalty should also be adjusted by probability of detection, prosecution, and
          ultimate payment, as explained in further detail in my report. This is

21        necessary to achieve a goal to deter further violations.

22   Shefftz Report at 1-2.

23        Defendants seek to exclude Mr. Shefftz's opinions for two reasons:  (1) they are based on

24   Mr. Wren's and Mr. Draganchuk's purportedly unreliable Reports; and (2) they are unreliable.

25                    **1.      Reliance on Mr. Wren and Draganchuk's Data**

26        In general, an expert whose proffered testimony relies on another expert's theories that

27   **CASE NO.: 5:20-CV-00824-EJD**

28   **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
     **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

1    have been or may be excluded as unreliable should also be excluded.  *Sims v. Kia Motors of*

2    *America, Inc.*, 839 F.3d 393, 404–406. (5th Cir. 2016) (excluding engineer's theory about fuel

3    tank straps, because engineer relied on another expert's inadmissible downward displacement

4    theory); *see also In re Chathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 JST, 2017 WL

5    10434367, at *2 (N.D. Cal. Jan. 23, 2017) ("Where an expert bases her opinion on – or simply

6    repeats – the unreliable opinion of another expert, a district court may properly exclude the first

7    expert's testimony.").  Here, the Court excluded Draganchuk Report, Table 9.  Therefore, Mr.

8    Shefftz's opinions are excluded to the extent they are based on Table 9.

9                    **2.      Reliability**

10           Defendants raise two reliability issues regarding Mr. Shefftz's opinions.  First, Defendants

11    argue that he impermissibly relies on the Wren and Draganchuk Reports in forming his opinions.

12    Second, Defendants assert that his opinions regarding Defendants' economic benefit from failing

13    to implement remedial measures contains significant analytical gaps.

14                    **a.      Relying on Other Experts' Information**

15           Defendants cite several cases in support of their assertion that Mr. Shefftz cannot rely on

16    the costs estimates stated in Wren and Draganchuk Reports, but none of the cases are analogous.

17    For example, in *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D.

18    Cal. 2003), the court rejected an expert opinion because it relied on excerpts from an opinion by

19    another expert generated for the purposes of another litigation.  Unlike in *In re Imperial Credit*

20    *Indus.*, Mr. Wren and Draganchuk prepared the cost estimates for this litigation, not for another

21    litigation.  Defendants' reliance on *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580

22    (11th Cir. 1985), is also misplaced.  In *American Key Corp.*, the Ninth Circuit found that the

23    district court properly gave little weight to an expert's affidavit because it relied on inadmissible

24    lay opinion testimony regarding relevant geographic market and monopoly power.  Unlike in

25    *American Key Corp.*, Mr. Shefftz is relying on admissible expert opinions, which is permissible.

26    *See Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 781–82 (3rd Cir. 1996) (overturning order

27

28    CASE NO.: 5:20-CV-00824-EJD
      **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
      **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**
                                    17

United States District Court
Northern District of California

1    excluding a doctor's testimony because it was routine for doctors to rely on reports prepared by

2    other doctors); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-20905 RMW, 2008 WL 73689,

3    at *11 (N.D. Cal., Jan. 5, 2008) (expert on market power may properly rely on manufacturers'

4    engineering experts); *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070,

5    1088-89 (N.D. Cal. 2006) (admitting expert testimony that relied on another expert's tests because

6    "an expert is not required to testify only upon data the expert has personally gathered or tested").

7    Notably, Mr. Shefftz is not merely copying Mr. Wren's and Mr. Draganchuk's opinions and

8    offering them as his own, which distinguishes this case from other cases Defendants rely on.  *See*

9    *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) ("it is insufficient for an

10   expert to simply rely on or parrot another expert's report"); *Crescenta Valley Water Dist. v. Exxon*

11   *Mobile Corp.*, No. 07-2630 JST, 2013 WL 12120533, *2 n. 4 (C.D. Cal. Mar. 14, 2013) (same).

12   Furthermore, that Mr. Wren's and Mr. Draganchuk's opinions were prepared for litigation does

13   not mean Mr. Shefftz cannot rely on them.  *See United States v. Marine Shale Processors*, 81 F.3d

14   1361, 1370, (5th Cir. 1996) ("That a research protocol or method was conducted in anticipation of

15   litigation does not mean that it cannot be the type of study an expert would rely upon in expressing

16   his opinion.").

17                              **b.      Purported Analytical Gaps**

18          Defendants next contend that Mr. Shefftz's opinions are unreliable because there are

19   significant analytical gaps.  Specifically, Defendants fault Mr. Shefftz for using the highest

20   possible compliance costs when there are more reasonable approaches available.  Mr. Shefftz

21   explained during his deposition, however, that he was trying to assess the highest possible figure

22   because he was being conservative.  Dkt. No. 112-1 at 29-30.  In other words, "[i]n using the

23   maximum potential costs for this evaluation, Shefftz determined that the Cities can readily afford

24   to stop polluted discharges to area creeks and the Bay even under the worst possible costs

25   scenario."  Pl.'s Opp'n at 10.  Mr. Shefftz explained his approach at his deposition:

26                      So I come up with a number that's almost certainly too high, but I'm
                        trying to be conservative in the sense of being especially cautious in

27   **CASE NO.: 5:20-CV-00824-EJD**
     **ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT**
28   **TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

United States District Court
Northern District of California

assessing the economic impact by coming up with numbers that if anything are unrealistically high, and therefore resulting in the very high upper end for the impact on household sewer bills.

Dkt. No. 112-1 at 30.  Mr. Shefftz's conservative approach is not an analytical gap.  Therefore, the Court rejects Defendants' argument.

## IV.    CONCLUSION

For the reasons discussed above, the Court orders as follows:

- Defendants' motion to exclude the expert testimony of Mr. Draganchuk is GRANTED as to Table 9.  The motion is DENIED in all other respects.

- Defendants' motion to exclude portions of the expert testimony of Mr. Wren is GRANTED only as his ultimate opinions that Stevens Creek and Calabazas Creek are WOTUS and that Sunnyvale East Channel serves as a point source.  The motion is DENIED in all other respects.

- Defendants' motion to exclude the expert opinions of Mr. Shefftz is GRANTED to the extent his opinions are based on Table 9.  The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated:  September 12, 2022

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:20-CV-00824-EJD
**ORDER RE DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF IAN WREN, KEVIN DRAGANCHUK, AND JONATHAN SHEFFTZ**

United States District Court
Northern District of California

19