1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6                              SAN JOSE DIVISION

7

8     SAN FRANCISCO BAYKEEPER,              Lead Case No.   5:20-cv-00824-EJD

              Plaintiff,                    Consolidated with No. 5:20-cv-00826-EJD
9
                                            **ORDER DENYING MOTION TO**
10        v.                                **DISMISS**

11    CITY OF SUNNYVALE, et al.,

              Defendants.                   Re: ECF No. 143
12

13

14          Plaintiff, San Francisco Baykeeper ("Baykeeper"), initiated this suit against Defendants

15    City of Sunnyvale and City of Mountain View ("Cities") under the citizen suit enforcement

16    provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water

17    Act"), to address the Cities' allegedly unlawful discharge of bacteria pollution from their

18    municipal storm sewer systems.  First Am. Compl. ("FAC"), ECF No. 19.  The Cities now move

19    to dismiss Baykeeper's Second Amended Complaint, arguing that a new permit issued in 2022

20    changes the legal landscape.  Defs.' Mot. Dismiss ("Mot. Dismiss"), ECF No. 143.  For the

21    reasons stated below, the Cities' motion to dismiss is DENIED.

22    I.      BACKGROUND

23            A.      Parties

24            Plaintiff, Baykeeper, is a non-profit public benefit corporation organized under the laws of

25    the State of California with its main office in Oakland, California.  Second Am. Compl. ("SAC") ¶

26    9, ECF Nos. 140, 141.  Defendants City of Sunnyvale and City of Mountain View are

27    municipalities formed under the laws of the State of California.  *Id.* ¶ 19.

28    Case No.: 5:20-cv-00824-EJD
      ORDER DENYING MOTION TO DISMISS
                                         1

United States District Court
Northern District of California

### B.      Factual Background

The Clean Water Act requires municipalities like the Cities to acquire a National Pollution Discharge Elimination System ("NPDES") permit for discharges from municipal separate storm sewer systems ("MS4s"). *See* 33 U.S.C. § 1342(p)(2). Non-compliance with an NPDES permit constitutes a violation of the Clean Water Act. 40 C.F.R. § 122.41.

Baykeeper alleges that the Cities were discharging bacteria-contaminated water into various waterways in violation of two provisions of the 2015 Municipal Regional Stormwater NPDES Permit ("2015 Permit"): (1) Discharge Prohibition A.1. (prohibiting the discharge of non-stormwater into and out of the MS4) and (2) Receiving Water Limitations B.2 (prohibiting discharges that cause or contribute to an exceedance of a water quality standard in receiving waters). SAC. In its Order granting Baykeeper's motion for summary judgment, the Court determined that the Cities violated Receiving Water Limitation B.2., and Baykeeper adequately plead an ongoing violation to establish jurisdiction. Order Granting Summ. J. 28–29 (finding ongoing violation), 23–27 (finding Receiving Water Limitation B.2 violation), ECF No. 139.

During the course of litigation, the San Francisco Regional Water Quality Control Board ("Regional Board") issued a new Municipal Regional Stormwater NPDES Permit, effective July 1, 2022 ("2022 Permit"). Municipal Regional Stormwater Permit Order No. R2-2022-0018 ("2022 Permit"), ECF No. 153-1. The 2022 Permit effectively rescinded the 2015 Permit "except for enforcement purposes." *Id.* at RA 8B. The 2022 Permit's Discharge Prohibition A.1 and Receiving Water Limitation B.2 provisions are identical to those contained in the 2015 Permit. *Compare id.* at RA 8B-9B, *with* Municipal Regional Stormwater Permit Order No. R2-2015-0049 ("2015 Permit") at RA 3A, ECF No. 153-1.

The Cities bring to the Court's attention a new provision in the 2022 Permit they find relevant. The 2022 Permit adds provision C.14.a, which specifically calls out the two Cities and outlines various alternative compliance actions the Cities can take to be deemed in compliance with Receiving Water Limitations, including source control measures and monitoring requirements. 2022 Permit at RA 20B. Provision C.1., referred to by the Cities as a "safe harbor"

United States District Court
Northern District of California

provision or "C.1. Plan," provides: "Compliance with Provision[] . . . C.14 . . . of this Order, which prescribe[s] requirements and schedules for Permittees identified therein to manage their discharges, . . .  shall constitute compliance during the term of this Order with Receiving Water Limitation . . . B.2." 2022 Permit at RA 10B.  In other words, according to the Cities, so long as they adhere to the action items outlined in C.14.a., they are forgiven from actually complying with Receiving Water Limitations during the term of the 2022 Permit.  Baykeeper notes that the plain language in this provision does not change compliance requirements with Discharge Prohibition A.1., but the Cities disagree.  *See supra* Part III. B.  The Cities bring their motion to dismiss on the grounds that the 2022 Permit C.1. Plan provides a safe harbor and protection from liability for any alleged 2015 permit violation so long as the Cities follow the alternative compliance actions outlined in C.14.a.  Mot. Dismiss.

### C.    Procedural Background

On February 4, 2020, Baykeeper filed its initial Complaint against the Cities alleging violations of the Clean Water Act.  Compl., ECF No. 1; 20-cv-00826 Compl., ECF No. 1 (pre-consolidation).  The Cities moved for dismissal, or alternatively a motion for summary judgment, which the Court denied.  Order Den. Mot. Dismiss, ECF 57; 20-cv-00826 Order Den. Mot. Dismiss, ECF No. 46 (pre-consolidation).  Following the Cities' answer and discovery, Baykeeper filed a motion for partial summary judgment on August 26, 2021, and the Cities responded with a cross-motion for summary judgment.  Pl.'s Mot. Summ. J., ECF No. 81; Defs.' Opp'n, ECF Nos. 91, 92.  On September 2, 2021, Baykeeper moved the Court for leave to file a Second Amended Complaint, which the Court granted.  Order Granting Mot. Leave, ECF No. 133.  Meanwhile, while the motions for summary judgment were pending, the Regional Board issued the new 2022 Permit.  Pl.'s Opp'n ("Opp'n"), ECF No. 153.

On September 12, 2022, the Court granted Baykeeper's motion for partial summary judgment and denied the Cities' cross-motion for summary judgment, finding that the Cities had violated Receiving Water Limitation B.2 and Baykeeper had sufficiently plead ongoing violations, among other findings.  Order Granting Summ. J.  Shortly after, on September 16, 2022, Baykeeper

Case No.: 5:20-cv-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

filed its Second Amended Complaint.  SAC.  The Second Amended Complaint did not discuss the new 2022 Permit, but it dismissed the cause of action for violations of Receiving Water Limitation B.1. and added factual allegations identified during discovery to its cause of action for violations of Discharge Prohibition A.1.  *See* SAC; Opp'n 11.  In light of the new 2022 Permit, the Cities filed their motion to dismiss the Second Amended Complaint.  *See* Mot. Dismiss.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit.  Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction.  *Chandler v. State Farm Fut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.   Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  When deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must construe the alleged facts in the light most favorable to the nonmoving party.  *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.").  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient

United States District Court
Northern District of California

facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### III.     DISCUSSION

The Cities argue that the new 2022 Permit divests this Court of jurisdiction, moots Baykeeper's claims based on the 2015 permit, and invokes the primary jurisdiction doctrine.  Mot. Dismiss.

#### A.     Jurisdiction

The Clean Water Act authorizes private citizens to commence a civil action for injunctive relief and/or the imposition of civil penalties against any person "alleged to be in violation of" specified provisions of the Act.  33 U.S.C. §1365(a).  The Clean Water Act confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).  "[A] citizen plaintiff may prove ongoing violations either (1) by proving violations that continue on or after the date the complaint is filed or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir. 1988) (internal quotations omitted).  Non-compliance with an NPDES permit constitutes a violation of the Clean Water Act. 40 C.F.R. § 122.41.

Here, the Cities claim that the conduct allegedly in violation of Discharge Prohibition A.1. and Receiving Water Limitation B.2. under the 2015 Permit is now permitted under the 2022 Permit's alternative compliance safe harbor provision.  Mot. Dismiss 11–13.  Because they claim there are no longer ongoing alleged violations, the Cities argue that the Court no longer has jurisdiction. *Id.*

Even assuming the Cities are correct in their notion that violations of Discharge Prohibition A.1. and Receiving Water Limitation B.2. are impossible under the 2022 Permit's safe harbor provision, this would not divest the Court of its jurisdiction.  There is ample case law that states once jurisdiction is established, post-filing developments do not divest a court of

Case No.: 5:20-cv-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    jurisdiction.  *See, e.g., Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004)

2    ("[T]he jurisdiction of the court depends upon the state of things at the time of the action

3    brought."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) (noting the "longstanding

4    rule that jurisdiction is to be assessed under the facts existing when the complaint is filed");

5    *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal

6    jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *United*

7    *Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-*

8    *CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010) ("[P]ost-filing developments

9    do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing."); *Skaff v.*

10   *Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of

11   standing turns on the facts as they existed at the time the plaintiff filed the complaint.").  In its

12   Order granting Baykeeper's motion for summary judgment, the Court found it had jurisdiction

13   over Baykeepers' claims.  Order Granting Summ. J. 27–29.   Specifically relevant here, the Court

14   found that Baykeeper had plead sufficient facts to show an ongoing violation at the time of filing.

15   *Id.* at 28–29 ("[T]he Court rejects Defendants' argument that Plaintiff lacks evidence of ongoing

16   violations.).  The issuance of a new permit is a post-filing development that does not divest the

17   Court's jurisdiction.

18       The Cities also urge the Court to consider the date Baykeeper filed its Second Amended

19   Complaint, which was after the 2022 permit was issued, as the time of filing for purposes of this

20   jurisdiction analysis.  Mot. Dismiss 13–21.  Because the Second Amended Complaint still alleges

21   ongoing violations of the 2015 Permit, the Cities argue that Baykeeper failed to show ongoing

22   violations of the applicable 2022 Permit at the time of filing.  *Id.*

23       The Cities' argument fails under the relation back doctrine.  The Federal Rule of Civil

24   Procedure 12(c) relation back doctrine provides: "Whenever the claim or defense asserted in the

25   amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be

26   set forth in the original pleading, the amendment relates back to the date of the original pleading."

27   Fed. R. Civ. Pro. 15(c).  An amended complaint relates back to the date of the original complaint

when "allegations of a new theory in an amended complaint . . . involve[] the same transaction, occurrence, or core of operative facts involved in the original claim," *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227 (1983), and the court finds the new claims will likely be proven by "the same kind of evidence" offered in support of the original complaint. *Rural Fire Protection Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966).

Here, it is clear upon the Court's review of Baykeeper's Second Amended Complaint that it has not introduced any new claims or theories. Rather, the Second Amended Complaint actually removes a cause of action for violations of Receiving Water Limitation B.1. SAC ¶¶ 130–38. The only additions of substance are new factual allegations identified during discovery, which largely provide more information on additional sources of fecal indicator bacteria. *Id.* ¶¶ 54, 55, 65, 66–74, 106, 115, 121. These factual allegations do not create new claims or legal theories and will very likely be proven by the same kind of evidence offered in support of its original complaint. Therefore, the Court finds that the Second Amended Complaint properly relates back to the date of the original pleading, when Baykeeper had established ongoing violations of the 2015 Permit, and the Court maintains its jurisdiction.

### B.    Mootness

"Defendants claiming mootness must satisfy a 'heavy burden of persuasion.'" *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "To establish mootness, a defendant must show that the court cannot order any effective relief." *Id.* (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000); *American Rivers v. National Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). There is ample case law, including cases alleging Clean Water Act violations, stating an action is not moot if the plaintiff is seeking attorneys' fees or civil penalties just because a defendant has come into compliance after the commencement of litigation. *Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000) (holding "[t]he appellate court erred in concluding that a citizen suitor's claim for civil penalties [under the CWA]

Case No.: 5:20-cv-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  must be dismissed as moot when the defendant, albeit after commencement of the litigation, has

2  come into compliance"); *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141 (9th

3  Cir. 2000) ("Even if the plaintiffs' claims for injunctive or declaratory relief for violations of the

4  earlier [permit] became moot when the [new permit] went into effect . . . the plaintiffs' claims for

5  civil penalties and attorneys' fees would remain viable."); *Northwest Environmental Advocates v.*

6  *City of Portland*, 56 F.3d 979, 990 (9th Cir. 1995) (holding that changes to defendant's permit did

7  not moot claims for attorney's fees based on alleged violations of old permit); *Northwest*

8  *Environmental Advocates v. City of Portland,* 56 F.3d 979 (9th Cir. 1995) ("Because NWEA

9  claims entitlement to attorney's fees based on the alleged violations of the old permit, and seeks to

10 enforce the water quality standards independently of the effluent limitations, a live and genuine

11 controversy remains, so the case is not moot.").  And in those instances where a plaintiff seeks

12 civil penalties, the defendant must make "*absolutely clear* that the allegedly wrongful behavior

13 could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

14 *(TOC), Inc.*, 528 U.S. 167, 170 (2000) (emphasis added).

15     The Cities argue that the 2022 Permit moots Baykeeper's claims because civil penalties

16 would no longer serve the purpose of deterrence—in other words, there is no likelihood of

17 reoccurring violations the Court could possibly deter because the conduct allegedly prohibited

18 under the 2015 Permit is now permitted under the new 2022 Permit under the safe harbor

19 provision.  Mot. Dismiss 21–22.  But at this stage, the Cities have failed to show it is not

20 *absolutely clear* that there is no likelihood of recurrence.

21     First, assuming the 2022 Permit's C.1. Plan contains a safe harbor provision, the Cities

22 have failed to establish that the C.1. Plan applies to the Discharge Prohibitions A.1.  Baykeeper

23 argues that the plain language of provision C.1. specifically omits the Discharge Prohibitions A.1.,

24 instead stating that compliance with C.14.a. "shall constitute compliance during the term of this

25 Order with *Receiving Water Limitations B.1 and B.2* for the pollutants and the receiving waters

26 identified in the provision[]."  2022 Permit RA 10B (emphasis added); Opp'n. 20.  The Cities

27 argue that Discharge Prohibition A.1. is inextricably connected to Receiving Water Limitation

28 Case No.: 5:20-cv-00824-EJD

B.2. because the actions required to comply with both are the same, thus the safe harbor protection inherently extends to Discharge Prohibition A.1.  Mot. Dismiss 5.  The 2015 Permit's C.1. Plan contained the same language as the 2022 Permit's C.1. plan.  *Compare* 2015 Permit at RA 4A, *with* 2022 Permit at RA 10B.  The Court has already considered and rejected the Cities argument as to the 2015 Permit, *see* Order Den. Mot. Dismiss 17–20, and the Cities have failed to provide any new arguments to change the Court's analysis here.  Thus, the Cities' argument is insufficient to carry its heavy burden to show it is *absolutely clear* that compliance with C.14.a. constitutes compliance with Discharge Prohibition A.1.

Second, again assuming the 2022 Permit contains a safe harbor provision, the 2022 Permit still requires affirmative actions by the Cities to remain in compliance.  2022 Permit at RA 10B ("Compliance with Provision[] . . . C.14 . . . of this Order, which prescribe[s] requirements and schedules for Permittees identified therein to manage their discharges, . . . shall constitute compliance during the term of this Order with Receiving Water Limitations B.1 and B.2.").  Should the Cities fail to adhere to the plans mandated in C.14.a., they will fall out of compliance with Receiving Water Limitations B.2.  Thus, there is a possibility the violations will recur.  On this point, the Cities misrepresent the burden of proof, claiming: "Baykeeper has no evidence or valid allegation that the Cities will not [implement the C.1. Plan,] as the Cities have been implementing the previous C.1. Plan submitted under the previous 2015 Permit in good faith even before the plan's requirements were incorporated as enforceable permit provisions."  Mot. Dismiss. 11.  But Baykeeper is not required to show that the Cities will *not* comply with the 2022 Permit—it is the Cities here who must satisfy the heavy burden of persuading the Court that it is *absolutely clear* the alleged behavior could not reasonably be expected to recur.  The Cities have failed to satisfy that burden.

Finally, the Court has already twice found that the 2015 C.1. Plan does not provide safe harbor from liability for violations of water quality standards.  Order Den. Mot. Dismiss 17–20; Order Granting Mot. Summ. J. 34–35.  The Cities have failed to show how the analysis here differs. As stated in the 2022 Permit's Fact Sheet:

Case No.: 5:20-cv-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

9

State Water Board Orders WQ 98-01 and 99-05 are precedential orders that require municipal stormwater permits to not cause or contribute to exceedances of water quality standards in the receiving water. State Water Board Order WQ 99-05 specifically requires that Provision C.1 include language that Permittees shall comply with discharge prohibitions and receiving water limitations through timely implementation of control measures and other actions to reduce pollutants in the discharges and adopted an iterative approach to complying with the limitations where there are exceedances. Courts have held that *compliance with the iterative process does not excuse liability for violations of water quality standards*.

2022 Permit at RA 54B (emphasis added) (citing *Bldg. Indus. Assn. of San Diego Cnty. v. State Water Res. Control Bd.*, 22 Cal.Rptr.3d 128 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Jan. 4, 2005); *City of Rancho Cucamonga v. Reg'l Water Quality Control Bd.*, 38 Cal. Rptr. 3d 450 (Cal. Ct. App. 2006), *as modified* (Feb. 27, 2006); *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 673 F.3d 880 (9th Cir. 2011), *rev'd on other grounds sub nom. Los Angeles Cnty. Flood Control Dist. v. Nat. Res. Def. Council, Inc.*, 568 U.S. 78 (2013)).  This same language appeared in the 2015 Permit, and the Cities raised the same arguments before the Court—namely, that the Court should ignore this paragraph and its cited line of case law because the Regional Board set forth the exact requirements to comply with Discharge Prohibitions and Receiving Water Limitations, rather than relying on future developments to set those limitations, thus provision C.1. is not an iterative approach.  Mot. Dismiss 10–11; *see also* Def.'s Mot. Dismiss 17–20, ECF 57.  As it did in its former Orders, the Court again finds that the permit's process for correcting violations constitutes an iterative process, and there was no textual support for the proposition that compliance with certain provisions shall protect the Cities from liability for non-compliance for others.  *See* Order Den. Mot. Dismiss 20; Order Granting Mot. Summ. J. at 33–34.

### C.      Primary Jurisdiction Doctrine

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

Case No.: 5:20-cv-00824-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    The doctrine is a "prudential" one that "permits courts to determine 'that an otherwise cognizable

2    claim implicates technical and policy questions that should be addressed in the first instance by the

3    agency with regulatory authority over the relevant industry rather than by the judicial branch.'"

4    *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark*, 523 F.3d at

5    1114).  The doctrine applies in limited circumstances.  *Clark*, 523 F.3d at 1114.  "Primary

6    jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution

7    of an issue of first impression, or of a particularly complicated issue that Congress has committed

8    to a regulatory agency."  *Brown v. MCI WorldCom Network Services, Inc.*, 277 F.3d 1166, 1172

9    (9th Cir. 2002).

10          This is the third time the Cities have urged the Court to dismiss the case under the primary

11   jurisdiction doctrine.  *See* Order Den. Mot. Dismiss; Order Granting Summ. J.  The Court rejected

12   the Cities' two prior attempts.  *Id.*  However, in recognizing that circumstances may change

13   should the Regional Board take action beyond what it had done in the past, the Court noted the

14   Cities may renew their request to dismiss pursuant to the primary jurisdiction doctrine if there is a

15   change in circumstances such that this suit significantly threatens to "supplant" rather than

16   "supplement," *Gwaltney*, 484 U.S. at 60, the Regional Board's action.  Order Den. Mot. Dismiss

17   22.

18          Here, the Cities contend that the circumstances have changed significantly because the

19   Regional Board has taken action on the 2015 Permit by drafting and adopting a new permit.  The

20   Cities argue that any alleged violation of the 2015 Permit has been administratively resolved in the

21   2022 Permit, "thereby rendering any judicial decision on whether [the] Cities are in violation of

22   2015 Permit provisions unnecessary and superfluous."  Mot. Dismiss 24.

23          The Court is not convinced the Regional Board's action constitutes a change of

24   circumstances whereby this suit significantly threatens to supplant the regulatory agency.  As

25   Baykeeper highlights, the 2022 Permit ordered the 2015 Permit "rescinded upon the effective date

26   of this Order *except for enforcement purposes*."  2022 Permit at p. 6, RA 8B (emphasis added).

27   This case still does not appear to present an issue of first impression.  Nor does the case appear to

28   Case No.: 5:20-cv-00824-EJD
     ORDER DENYING MOTION TO DISMISS

present any particularly complicated issue that Congress has committed to a regulatory agency. And as established in the Court's prior Orders, it is well within the Court's purview to determine compliance with a Clean Water Act permit.  *See* Order Den. Mot. Dismiss; Order Granting Mot. Summ. J.; *see also Nat. Res. Def. Council v. McCarthy*, No. 16-cv-02184-JST, 2017 WL 3215346, at *3 (N.D. Cal. July 26, 2017) ("The citizen suit provision in the Clean Water Act was specifically designed to allow courts to ensure direct compliance with the Act's requirements.") (quoting *Hawai'i Wildlife Fund v. Cty. of Maui*, 24 F. Supp. 3d 980, 990 (D. Haw. 2014)); *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1012 (9th Cir. 2012) ("The Clean Water Act explicitly allows private citizens to bring enforcement actions against any person alleged to be in violation of federal pollution control requirements.") (citing 33 U.S.C. § 1365(a)(1)) (citations omitted).  The Regional Board's action of issuing a new permit— which does not rescind the 2015 Permit for enforcement purposes, does not change the language of Receiving Water Limitations B.2. or Discharge Prohibition A.1., does not revoke the Court's jurisdiction, and does not moot the claims at issue—does not trigger the limited set of circumstances where primary jurisdiction is invoked.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES the Cities' motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 14, 2023

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California