UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>　　　　　Defendants. | Case No.  5:20-cv-00824-EJD<br><br>**ORDER RE SCOPE OF TRIAL; GRANTING MOTION TO REOPEN DISCOVERY; DENYING MOTION FOR PROTECTIVE ORDER**<br><br>Re: ECF Nos. 211, 215, 216, 253, 256 |

In this case, Plaintiff San Francisco Baykeeper has sued the Cities of Sunnyvale and Mountain View for violations of the Clean Water Act. The issues here are mostly ready for trial, which is scheduled to begin on June 10, 2025. However, there are still some disputes pending between the parties that must be resolved ahead of trial. The Court addresses them here.[1]

**I.      SCOPE OF TRIAL**

The Court begins by clarifying the scope of trial. Earlier in these proceedings, the Court granted partial summary judgment in favor of Baykeeper. MSJ Order, ECF No. 139. Ahead of their pretrial conference, though, the parties expressed disagreement over the scope of that summary judgment order and its effect on the scope of trial. Joint Pretrial Conference Statement, ECF No. 211. The parties also identified a dispute over the time period that this lawsuit covers. *Id.* Following discussion at the pretrial conference, the Court requested further briefing on the scope of trial, Minute Entry, ECF No. 213, which the parties provided. Notices re Issues to Be Tried, ECF Nos. 215, 216.

---

[1] The pending motions to reopen discovery (ECF No. 256) and for protective order (ECF No. 253) are suitable for decision without oral argument. *See* Civil L.R. 7-1(b).

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
1

**A.     Effect of Summary Judgment**

In its summary judgment order, the Court addressed several issues. First, the Court found that Baykeeper had standing to assert its Clean Water Act claims except to the extent those claims were based on violations in Guadalupe Slough.[2] MSJ Order 17. Second, the Court found that the bodies of water at issue—the South San Francisco Bay, Guadalupe Slough, Stevens Creek, Calabazas Creek, and the Sunnyvale East Channel—are "Waters of the United States" (WOTUS) covered by the Clean Water Act. *Id.* at 20–22; *see also* Reconsideration Order, ECF No. 199 (reaffirming WOTUS findings on reconsideration). Third and finally, the Court found that the Cities had violated Receiving Water Limitation B.2, a provision of the permit governing the Cities' stormwater discharges, on January 17, 2019, February 4, 2019, and February 13, 2019 (the Sampling Days). MSJ Order 35. Because there was no dispute of material fact as to any of those three issues, the Court granted summary judgment in favor of Baykeeper on those points.

As the Court granted summary judgment on these three issues, they "shall be deemed established for the trial of the case." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (citing Fed. R. Civ. P. 56). Therefore, these three issues fall outside the scope of trial and the parties may not present evidence solely relevant to any of these issues. To the extent that the Cities appeal to the Court's "inherent procedural power to reconsider, rescind, or modify an interlocutory order" such as an order on summary judgment, they miss the point. *City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis removed) (citation omitted). The Cities can, of course, seek reconsideration of the Court's summary judgment order. If the Court grants reconsideration and vacates summary judgment on any of the three issues

---

[2] The Court found that Baykeeper had not demonstrated standing to assert claims based on violations in Guadalupe Slough because nothing in the record showed that any Baykeeper member had engaged in recreation in or near the Slough. MSJ Order 17. The Court did not specifically address the Sunnyvale East Channel at that point. However, "federal courts have a duty to raise, sua sponte, questions of standing." *Iten v. Cnty. of L.A.*, 81 F.4th 979, 984 (9th Cir. 2023) (citation omitted). Reviewing the three declarations that Baykeeper submitted in support of standing, the Court finds that none of those declarations establishes that any Baykeeper member had engaged in recreation at or near the Sunnyvale East Channel. *See* Reedy Decl., ECF No. 81-3; Leong Decl., ECF No. 81-4; TeBrake Decl., ECF No. 81-5. Therefore, Baykeeper has also failed to show standing to assert claims based on violations in the Sunnyvale East Channel.

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
2

above, then that issue becomes a matter for trial. But absent reconsideration, the Court's summary judgment order firmly establishes that standing, designation as WOTUS, and certain violations of Limitation B.2 are not matters for trial.

The Cities also point to purported ambiguities in the Court's summary judgment order finding that there were Limitation B.2 violations on the Sampling Days. According to the Cities, the Order does not specify which City committed violations in which receiving water on which of the Sampling Days. But those supposed ambiguities are answered by Tables 2 and 3 in the summary judgment order. As the Court explained, Table 2 demonstrated that "all samples at Sunnyvale's outfalls show bacteria in concentrations orders of magnitude greater than bacteria [water quality standards]," MSJ Order 26 & tbl.2, and Table 3 demonstrated the same for Mountain View. *Id.* at 26–27 & tbl.3. The Tables also identify the who, when, and where that the Cities say is ambiguous: Sunnyvale violated Limitation B.2 at the CC-1 outfall for Calabazas Creek on each of the Sampling Days. Sunnyvale also violated Limitation B.2 at the SC-9 outfall for Stevens Creek on each of the Sampling Days. And Mountain View violated Limitation B.2 at the SC-4 and SC-7 outfalls for Stevens Creek on each of the Sampling Days. *Id.* tbls.2 & 3.

Accordingly, the following issues remain for trial:

- Whether the Cities violated Discharge Prohibition A.1;
- Whether the Cities violated Limitation B.2 other than the violations found at summary judgment;
- Affirmative defenses other than standing[3];
- Remedy-related issues, such as the penalty factors or requirements for injunctive relief.[4]

---

[3] The Court doubts that Article III standing is properly characterized as an affirmative defense even though the Cities pled it as an affirmative defense. Regardless, standing will not be an issue at trial.

[4] This includes any argument that the Cities are now in compliance with relevant permits so that there is nothing to enjoin, which the Court understands the Cities to be referencing when they raise mootness issues.

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
3

### B.     Time Period

When Baykeeper first filed suit, the National Pollutant Discharge Elimination System (NPDES) permit issued in 2015 (the 2015 Permit) governed the Cities' stormwater discharges. While this case was pending, though, the relevant water quality control board issued a new NPDES permit, effective July 1, 2022 (the 2022 Permit). *See* MTD Order 2, ECF No. 194. Although the relevant provisions of the 2022 Permit are identical to those in the 2015 Permit, *id.*, the operative complaints refer only to the 2015 Permit. Sunnyvale Compl., ECF No. 140; Mountain View Compl., ECF No. 141. Based on the complaints' silence as to the 2022 Permit, the Cities argue that violations of the 2022 Permit are not at issue, meaning that evidence about the Cities' conduct post-July 1, 2022 is not a proper subject for trial. Baykeeper adopts the opposite view. Based on the fact that the relevant provisions did not change from the 2015 Permit to the 2022 Permit, Baykeeper contends that conduct after July 1, 2022 is properly raised at trial. The Court finds that the parties may appropriately raise evidence about post-July 1, 2022 conduct at trial.

At core, a complaint serves two overarching purposes. The first is to provide "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Echlin v. PeaceHealth*, 887 F.3d 967, 977 (9th Cir. 2018) (quoting *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)); *see also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (similar) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a)(2). The second is to give notice of "the relief sought," allowing the defendant to anticipate the range of possible remedies at issue. Fed. R. Civ. P. 8(a)(3). In other words, the complaint sets the scope of an action both as to the conduct being challenged and the relief available. *See Echlin*, 887 F.3d at 978 (precluding a plaintiff from raising claims during summary judgment that were not fairly encompassed by her complaint); Fed. R. Civ. P. 15(b) (noting that evidence "not within the issues raised in the pleadings" should not be admitted at trial unless the pleadings are amended to include such evidence).

That is not to say complaints should be read strictly to ensure that the issues are narrow and well-defined. While that type of thinking animated the law on pleadings in the past, the Federal Rules of Civil Procedure have since moved away from that approach, recognizing that narrowing of issues is more effectively achieved through discovery and summary judgment. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1182 (4th ed. 2024); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (the Rules created "a simplified pleading system . . . to focus litigation on the merits of a claim"). Instead, complaints must be construed liberally enough "to do justice," Fed. R. Civ. P. 8(e), because doing so "facilitate[s] a decision on the merits." *In re Lopez*, 274 B.R. 854, 862 (B.A.P. 9th Cir. 2002) (citation omitted), *aff'd*, 345 F.3d 701 (9th Cir. 2003). Thus, courts construe complaints "by the quality of [their] substance rather than according to [their] form or label." Wright & Miller, *supra*, § 1286.

In line with the preference for decisions on the merits, courts are reluctant to find that a party's first complaint or other pleading irrevocably sets the scope of an action. *See ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1005 (9th Cir. 2014) (citation omitted). This manifests primarily in a policy favoring "liberal amendment of pleadings before trial," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 575 (9th Cir. 2020) (quoting Fed. R. Civ. P. 15(a)(2)), which allows parties to update their pleadings to add claims or theories revealed in discovery or developments that post-date the operative complaint. *But see Kamal v. Eden Creamery*, LLC, 88 F.4th 1268, 1278–79 (9th Cir. 2023) ("[E]ven under Rule 15's liberal standard, 'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.'") (quoting *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)). Likewise, courts also liberally apply the relation back doctrine to allow parties to raise certain new claims during the course of litigation without running afoul of any statute of limitations. *ASARCO*, 765 F.3d at 1005.

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
5

1   Here, Baykeeper has not sought to leverage the liberal policy in favor of amendment to add the 2022 Permit to their complaints.[5]  So, the question that the Court must decide is whether, even absent any reference to the 2022 Permit, the operative complaints in this action fairly encompass conduct that occurred after the 2022 Permit was issued.  At least as to Baykeeper's request for injunctive relief, the answer is yes.  The operative complaints make clear that Baykeeper seeks to enjoin the Cities from acting in ways that would violate Prohibition A.1 and Limitation B.2 in the 2015 Permit.  Sunnyvale Compl. ¶¶ 129, 138, b; Mountain View Compl. ¶¶ 119, 128, b.  Since Prohibition A.1 and Limitation B.2 are identical in the 2015 Permit and 2022 Permit, an injunction against violating those provisions in the 2015 Permit is no different in substance from an injunction against violating those provisions in the 2022 Permit.  Thus, the admonition to construe complaints based on their substance rather than labels leads the Court to interpret the operative complaints here as encompassing evidence of conduct that occurred even after the 2022 Permit became effective.  Moreover, evidence about the Cities' conduct after the 2022 Permit came into effect is necessary for the Court to evaluate any assertion that Baykeeper's request for injunctive relief is moot.  Mootness turns on whether the Court can issue an injunction that provides any "effective relief." *Nat. Res. Def. Council v. Cnty. of L.A.*, 840 F.3d 1098, 1103 (9th Cir. 2016).  What the Cities are currently doing is plainly relevant to the availability of effective relief.

Therefore, the Court finds that the parties may introduce at trial evidence of the Cities' relevant conduct up to the present.

## II.   MOTION TO REOPEN DISCOVERY[6]

Baykeeper moves to reopen discovery for two limited purposes: (1) to add the Cities' annual water quality reports and updated geographic and pipe system data to the record; and (2) to allow the parties' experts to submit supplemental reports based on this additional information.

---

[5] The Court expresses no opinion on whether such amendment would be appropriate at this stage of litigation.

[6] The Court SUSTAINS the Cities' objection to Baykeeper's reply evidence (ECF No. 269) and does not consider that evidence in this Order.

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
6

Mot. to Reopen Discovery, ECF No. 256.

When evaluating whether to reopen discovery under Rule 16, courts consider six factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted).

Here, the balance of those factors favors reopening discovery.

*First*, there are slightly over four months left before trial is scheduled to begin on June 10, 2025. Four months should be ample time to conduct and digest the additional proposed discovery, especially given the limited nature of the discovery sought. *See Perkins v. Contra Costa Cnty. Sheriff's Dep't J-Team*, No. 07cv-02013, 2010 WL 539260 (N.D. Cal. Feb. 9, 2010) (reopening discovery approximately four months before the scheduled trial). *Second and third*, while the Cities oppose this request, they will not be particularly prejudiced by reopening discovery. Because the discovery sought is so limited, it is unlikely that reopening discovery will delay trial, and it is unlikely that the Cities will be forced to incur much more in litigation costs. Also, for the reasons discussed in the previous section, the Cities have been sufficiently put on notice that this post-2022 discovery is relevant and important to this case. *Fourth*, while Baykeeper could have moved to reopen discovery earlier, the manageability of its proposed discovery even at this later stage of litigation, coupled with the lack of prejudice to the Cities, supports assigning lower weight to this factor. *Fifth*, although fact discovery closed in 2021, ECF No. 63, there have been numerous unexpected delays and continuances since, including the issuance of the 2022 Permit itself. Thus, the need for this discovery could not have been anticipated before discovery closed and there is greater reason to reopen discovery now. *Finally*, for the reasons discussed in the previous section, this discovery is likely to be relevant.

As such, the Court **GRANTS** the motion to reopen discovery for the limited purposes identified above.

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
7

## III. MOTION FOR PROTECTIVE ORDER

The Cities move for a protective order for essentially the same reasons they opposed Baykeeper's motion to reopen discovery above. And they seek essentially the same relief that denying the reopening of discovery would have resulted in—prohibiting Baykeeper from updating the record with more recent documents. Since the Court granted Baykeeper's motion, it **DENIES** the Cities' motion.

## IV. CONCLUSION

The issues remaining for trial are as identified in Section I of this Order. The Court **GRANTS** the motion to reopen discovery and **DENIES** the motion for protective order. The hearing on those two motions is converted to a status conference and continued to **10:00 am on February 13, 2025**. The parties shall submit a joint status report by **February 7, 2025**, in which they address proposed deadlines for the reopened discovery, their availability for trial at an earlier date should the Court's schedule allow, and any other issues relevant to trial preparation that they would like to discuss.

**IT IS SO ORDERED.**

Dated: February 3, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-00824-EJD
ORDER RE SCOPE OF TRIAL, REOPENING DISCOVERY & PROTECTIVE ORDER
8