# EXHIBIT A

1  ROB BONTA
   Attorney General of California
2  RUSSELL B. HILDRETH
   Supervising Deputy Attorney General
3  MARC N. MELNICK (SBN 168187)
   BRYANT B. CANNON (SBN 284496)
4  Deputy Attorneys General
    1515 Clay Street, 20th Floor
5   P.O. Box 70550
    Oakland, CA  94612-0550
6   Telephone:  (510) 879-1982
    Fax:  (510) 622-2270
7   E-mail:  Bryant.Cannon@doj.ca.gov
   *Attorneys for Amici Curiae California*
8  *State Water Resources Control Board and*
   *California Regional Water Quality Control*
9  *Board, San Francisco Bay Region*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **SAN FRANCISCO BAYKEEPER,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF SUNNYVALE, ET AL.**<br><br>Defendants. | 5:20-cv-00824-EJD<br><br>**CALIFORNIA STATE WATER RESOURCES CONTROL BOARD AND CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, SAN FRANCISCO BAY REGION *AMICUS* BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR RECONSIDERATION**<br><br>Date:        May 22, 2025<br>Time:       2:00 p.m.<br>Dept:        4<br>Judge:      Hon. Edward J. Davila<br>Trial Date: June 10, 2025 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1
ARGUMENT..........................................................................................................................2
    I.    The Cities' Motion Is an Impermissible Collateral Attack on the Permit ..................................................................................................................2
        A.    The Clean Water Act and State Law Explicitly Prohibit the Cities from Challenging the Permit in This Court................2
        B.    *CCSF v. U.S. EPA* Does Not Resuscitate the Dead-Letter Cases Relied upon by the Cities ....................................................6
        C.    Permit Invalidation When the Permitting Agency Is Not a Party to the Lawsuit Is Improper ..................................................8
            1.    The Clean Water Act Is Undermined If Permit Challenges Are Allowed During Enforcement Actions.............................................................................................8
            2.    The Cities' Misapplication of *CCSF v. U.S. EPA* Illustrates the Risks of Error If Collateral Attack of Permits Were Allowed in Enforcement Proceedings.....10
CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arkansas v. Oklahoma*
    503 U.S. 91 (1992) .................................................................................................. 10

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*
    728 F.3d 868 (9th Cir. 2013) ................................................................................. 6, 9

*Central Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*
    30 F.4th 929 (9th Cir. 2022) ..................................................................................... 4

*City and County of San Francisco, California v. Environmental Protection Agency*
    145 S. Ct. 704 (2025) ......................................................................................*passim*

*City of Burbank v. State Water Res. Control Bd.*
    35 Cal.4th 613 (2005) ............................................................................................... 3

*Defenders of Wildlife v. Browner*
    191 F.3d 1159 (9th Cir. 1999) ............................................................................. 8, 11

*Ecological Rights Found. v. Pacific Lumber Co.*
    230 F.3d 1141 (9th Cir. 2000) ................................................................................... 8

*Env't Prot. Agency v. California ex rel. State Water Res. Control Bd.*
    426 U.S. 200 (1976) ............................................................................................. 8, 10

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*
    551 U.S. 644 (2007) ................................................................................................... 3

*Natural Res. Defense Council, Inc. v. County of Los Angeles*
    725 F.3d 1194 (9th Cir. 2013) ................................................................................... 4

*Northwest Env't Advocates v. City of Portland*
    11 F.3d 900, 909 (9th Cir. 1993) ........................................................................... 6, 7

*Northwest Env't Advocates v. City of Portland*
    56 F.3d 979 (9th Cir. 1995) .................................................................................. 6, 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Save Our Bays and Beaches v. City and County of Honolulu*
  904 F. Supp. 1098 (D. Hawaii 1994) ............................................................... 6, 7

*Sierra Club v. Union Oil Co.*
  813 F.2d 1480 (9th Cir. 1987) ............................................................................. 3

*Southern California Alliance of Publicly Owned Treatment Works v.*
  *U.S. Environmental Protection Agency*
  8 F.4th 831 (9th Cir. 2021) ............................................................................. 2, 3

*Southern California Alliance of Publicly Owned Treatment Works v.*
  *U.S. Environmental Protection Agency*
  853 F.3d 1076, 1086 (9th Cir. 2017) .................................................................. 3

**STATUTES**

United States Code, Chapter 5 § 704 ....................................................................... 3

United States Code, Chapter 33
  § 1251 et seq. ...................................................................................................... 1
  § 1311(b)(1)(C) ............................................................................................. 8, 11
  § 1319(g)(6)(A)(i)-(iii) ....................................................................................... 9
  § 1324(p)(3)(B) ................................................................................................... 8
  § 1342(b) ............................................................................................................. 3
  § 1342(b) ............................................................................................................. 4
  § 1365 .................................................................................................................. 9
  § 1365(b)(1)(B) ................................................................................................... 9
  § 1369(b)(1)(F) ................................................................................................... 3
  § 1369(b)(2) ........................................................................................................ 3

Cal. Code Civ. Proc.,
  § 1094.5 ........................................................................................................... 4, 7

Cal. Govt. Code
  § 11125 ................................................................................................................ 9
  § 11125.9 ............................................................................................................. 9
  § 11509 ................................................................................................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

Cal. Water Code
   § 13167.5 ............................................................................................................ 9
   § 13200 ............................................................................................................... 1
   § 13201 ............................................................................................................... 1
   § 13225 ............................................................................................................... 1
   § 13263 ............................................................................................................... 9
   § 13263(e) .......................................................................................................... 5
   § 13320 ........................................................................................................... 2, 4
   § 13320(a) .......................................................................................................... 9
   § 13321 ....................................................................................................... 2, 3, 5
   § 13330 ....................................................................................................... *passim*
   § 13330(a) (1996) ............................................................................................. 4
   § 13330(f) ................................................................................................... 5, 8, 9
   § 13361 ........................................................................................................... 3, 5
   § 13377 ............................................................................................................... 8

**OTHER AUTHORITIES**

Cal. Assembly Bill
   2446 (2016) ....................................................................................................... 5
   3036 (1996) ....................................................................................................... 4

Cal. Code Regs., Title 23
   § 648-648.8 ...................................................................................................... 9

Code of Federal Regulations, Chapter 40
   §§ 25.1 to 25.14 ............................................................................................... 9
   § 123.1(d) .......................................................................................................... 3
   § 123.30 ......................................................................................................... 2, 3
   § 124.19(a)(1) ................................................................................................... 3
   § 124.19(a)(3) ................................................................................................... 3
   § 124.19(l)(1) .................................................................................................... 3

# INTRODUCTION

The State Water Resources Control Board (State Water Board) and the Regional Water Quality Control Board, San Francisco Bay Region (SF Bay Water Board) (together, Water Boards) respectfully submit this *amicus* brief in support of the Plaintiff's opposition to Defendant Cities' Motion for Reconsideration. ECF No. 278 (Motion). In California, the State Water Board and nine regional water quality control boards implement the Clean Water Act. The SF Bay Water Board[1] issued the National Pollution Discharge Elimination System (NPDES) Permit[2] relevant to this matter. Furthermore, in conjunction with the U.S. Environmental Protection Agency, the SF Bay Water Board also issued the NPDES permit challenged in the U.S. Supreme Court's recent Clean Water Act decision in *City and County of San Francisco, California v. Environmental Protection Agency,* 145 S. Ct. 704 (2025) (*CCSF v. U.S. EPA*). The State of California filed an *amicus* brief in support of the U.S. EPA in that matter. In light of its longstanding and continuing interest in the application of the U.S. Supreme Court's recent Clean Water Act decision in *CCSF v. U.S. EPA,* and the application of that decision to this Permit, the Water Boards file this *amicus* brief in opposition to the Motion.

The Cities now argue that the Supreme Court's decision in *CCSF v. U.S. EPA* holding that U.S. EPA may not issue NPDES permits that contain end-result requirements should invalidate two of the Permit terms. But this Court should deny the Motion and reject the Cities' effort to bypass the mandatory state review process through their improper collateral attack on the Permit. In fact, the Cities engaged in the mandatory state review process through their petitions for State

---

[1] The SF Bay Water Board is the government agency primarily responsible for water quality in the San Francisco Bay region. Cal. Water Code §§ 13200, 13201, 13225. It has, for decades, issued similar permits for discharges related to the systems discharging stormwater under the federal Clean Water Act, 33 U.S.C. § 1251 et seq.

[2] The SF Bay Water Board issued *Municipal Regional Stormwater NPDES Permit*, NPDES Permit No. CAS612008, Order No. R2-2015-0049 and reissued it in 2022 as NPDES Permit No. CAS612008, Order No. R2-2022-0018.

Water Board review of both the 2015 and 2022 Permit. To assist the Court in its review, the Water Boards as *amici curiae* focus on the issue of the Cities' improper collateral attack on the Permit—an issue on which *amici* are in a position to offer a fuller picture of the case law and relevant statutes and regulations. The Water Boards do not address in full the additional arguments raised by SF Baykeeper and the Cities, and they express no opinion on the factual issues surrounding the violations. The Water Boards urge the Court to deny the Cities' Motion as procedurally barred without reaching the additional issues.

## ARGUMENT

### I. THE CITIES' MOTION IS AN IMPERMISSIBLE COLLATERAL ATTACK ON THE PERMIT

#### A. The Clean Water Act and State Law Explicitly Prohibit the Cities from Challenging the Permit in This Court

Conditions in NPDES permits are final when adopted, and challenges to permit conditions may only be made through the administrative appeal process. Claims against state-issued permits are not properly lodged in federal district court. *Southern California Alliance of Publicly Owned Treatment Works v. U.S. Environmental Protection Agency*, 8 F.4th 831, 839 (9th Cir. 2021) (*SCAP v. U.S. EPA*) ("the statute 'does not contemplate federal court review of state-issued permits'"), citing *SCAP v. U.S. EPA*, 853 F.3d 1076, 1086 (9th Cir. 2017) ("The [NPDES] permits issued by the state are subject to administrative and judicial review in accordance with state law."). Instead, such challenges must be brought in the state courts. 40 C.F.R. § 123.30 (judicial review of permits issued by the state is limited to state court); Cal. Water Code §§ 13320, 13321, 13330 (review and petition for stay by state board, and review in superior court). In fact, challenges to NPDES permits, whether issued by the states or the U.S. EPA, are never reviewable in the district courts. *SCAP v. U.S. EPA*, 8 F.4th at 839.[3]

---

[3] U.S. EPA-issued permits must initially be challenged before the Environmental Appeals Board and then in the appropriate United States circuit
(continued…)

The exclusive nature of state jurisdiction over permit challenges is consistent with the Clean Water Act's requirement that transfer of permitting authority to the state is non-discretionary once the statutory requirements for transfer are satisfied. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 650-51 (2007) (discussing 33 U.S.C. 1342(b)). In fact, "[u]pon approval of a State program, the Administrator shall suspend the issuance of Federal permits for those activities subject to the approved State program." 40 C.F.R. § 123.1(d). Thereafter, the state NPDES program operates in lieu of the EPA's permitting authority and federal law requires only that permits be subject to "judicial review in State Court of the final approval or denial of permits by the State." 40 C.F.R. § 123.30. State law does not permit the challenge that the Cities attempt here. *Cf.* Cal. Water Code §§ 13321, 13330, and 13361. And the Clean Water Act affirms the state prerogative to structure judicial review so long as it satisfies federal requirements. 40 C.F.R. § 123.30 ("A State will meet this standard if State law allows an opportunity for judicial review that is the same as that available to obtain judicial review in federal court of a federally-issued NPDES permit"); *see* 33 U.S.C. § 1369(b)(2) (validity of NPDES permit "shall not be subject to judicial review in any civil or criminal proceeding for enforcement"); *Sierra Club v. Union Oil Co.*, 813 F.2d 1480, 1487-8 (9th Cir. 1987), *vacated,* 485 U.S. 931 (1988), *reinstated with minor amend.*, 853 F.2d 667, 672 (9th Cir. 1988). The Ninth Circuit has further observed that "state courts can interpret federal law, and thus can review and enjoin state authorities from issuing permits that violate the requirements of the Clean Water Act." *SCAP v. U.S. EPA*, 8 F.4th at 839, citing *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1434 (9th Cir. 1991). Indeed, California courts have often interpreted the Act. *See, e.g.*, *City of Burbank v. State Water Res. Control Bd.*, 35 Cal.4th 613 (2005).

---

court of appeals. 33 U.S.C. § 1369(b)(1)(F); 40 C.F.R. §§ 124.19(a)(1), 124.19(a)(3), 124.19(l)(1) ("A petition to the Environmental Appeals Board...is, under 5 U.S.C. § 704, a prerequisite to seeking judicial review of the final agency action."); *SCAP v. U.S. EPA*, 853 F.3d at 1081, 1083 n.4.

Consistent with these requirements, the Water Boards are authorized to administer the NPDES program in California, and the SF Bay Water Board issued the Permit pursuant to this authorization. 33 U.S.C. § 1342(b). The Porter-Cologne Act is "the principal law governing water quality regulation in California." *Central Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 933 (9th Cir. 2022), citing *Monterey Coastkeeper v. Cent. Coast Reg'l Water Quality Control Bd.*, 76 Cal.App.5th 1 (2022). "Pursuant to the Porter-Cologne Water Quality Control Act, California state law designates the State Water Resources Control Board and nine regional boards as the principal state agencies charged with enforcing federal and state water pollution laws and issuing NPDES permits." *Natural Res. Defense Council, Inc. v. County of Los Angeles,* 725 F.3d 1194, 1198-99 (9th Cir. 2013), citing Cal. Water Code § 13000 *et seq.*

The Porter-Cologne Act requires that decisions and orders of a regional water quality control board, including the issuance and renewal of NPDES permits, are only reviewable by petition to the State Water Board, and then by petition for administrative mandamus in the superior court. Cal. Code Civ. Proc., § 1094.5; Cal. Water Code §§ 13320, 13330. The propriety of permit conditions cannot be collaterally attacked in an enforcement action such as this one. In fact, the California Legislature has twice amended the judicial review provisions of the Porter-Cologne Act to reinforce the finality of permit decisions. In 1996, the Legislature removed a provision from the Porter-Cologne Act that allowed additional opportunity for challenge: "[f]ailure to file [a challenge to a permit] shall not preclude a party from challenging the reasonableness and validity of a decision or order of a regional board or the state board in any judicial proceedings brought to enforce such decision or order or for other civil remedies." Cal. Water Code § 13330(a) (1996); Cal. Assembly Bill 3036 (1996). The effect of that amendment was to bar the specific type of challenge raised by the motion for reconsideration; namely, that during an enforcement action a challenger could attack the

reasonableness or validity of a permit provision. The California Legislature more recently revised the Porter-Cologne Act to ensure finality of the Water Boards' permits to squarely resolve any concerns that permit conditions could be challenged in enforcement actions. Cal. Assembly Bill 2446 (2016) (amending Cal. Water Code §§ 13321, 13330, and 13361). Moreover, the concerns are even more acute here, where neither the State Water Board nor the SF Bay Water Board are parties to the enforcement action construing a state-issued NPDES permit.

At this time, the Porter-Cologne Act leaves no doubt that permit challenges outside of the prescribed process—like that raised by the Cities' Motion—are explicitly barred:

> Except as provided in this section and Section 13321, no legal or equitable process shall issue in any proceeding in any court against the state board, a regional board, or any officer or employee of the state board or a regional board to review, prevent, or enjoin a decision or order by the state board, a regional board, or any officer or employee of the state board or a regional board before a decision or order is issued and the procedures for administrative review of that decision or order have been exhausted.

Cal. Water Code § 13330(f).

This is a bar to challenge of state-issued permits in federal courts. This Court's role in rejecting the Cities' collateral attack on the permit is simple and the Motion must be denied.

But the Cities had an available avenue to raise their concerns regarding the Permit. First, they did file petitions for review of the 2015[4] and 2022 Permit to the State Water Board. ECF No. 220-1. In fact, the Cities have repeatedly sought abeyance of their petition for the 2022 Permit, requesting and receiving an additional two-year extension of that abeyance in mid-2024. Furthermore, pursuant to Provision C.23 of their Permit, they may petition the SF Bay Water Board to

---

[4] The petition of the 2015 Permit was filed by the Santa Clara Valley Urban Runoff Pollution Prevention Program (SCVURPPP) and the San Mateo Countywide Water Pollution Prevention Program (SMCWPPP) on behalf of themselves and their members. The Cities are members of SCVURPPP.

reopen and revise the Permit. Cal. Water Code § 13263(e) ("Upon application by any affected person, or on its own motion, the regional board may review and revise requirements. All requirements shall be reviewed periodically.") To the extent the Cities believe their claims have merit, they have a clear route to raise them pursuant to state processes. The availability of those processes only underscores why the Cities' attempted collateral attack is improper.

### B. *CCSF v. U.S. EPA* Does Not Resuscitate the Dead-Letter Cases Relied upon by the Cities

The Cities rely solely on a Hawaii District Court opinion to claim that the Cities may freely pursue a collateral attack of the Permit. Motion at 13-14, citing *Save Our Bays and Beaches v. City and County of Honolulu,* 904 F. Supp. 1098 (D. Hawaii 1994) (*Save Our Bays v. CCH*). But that reliance is misplaced. In *Save Our Bays v. CCH*, the relevant part of the district court's opinion relied on a Ninth Circuit opinion that was later withdrawn after rehearing. *Save Our Bays v. CCH,* 904 F. Supp. at 1108-15, *Northwest Env't Advocates v. City of Portland*, 11 F.3d 900, 909 (9th Cir. 1993) (*NWEA I*), *opinion withdrawn and superseded on reh'g* 56 F.3d 979 (9th Cir. 1995) (*NWEA II*). *Save Our Bays v. CCH* was explicit that its holding was compelled by the later-overruled *NWEA I* Ninth Circuit decision regarding the scope of the citizen suit provision. *Save Our Bays v. CCH,* 904 F. Supp. at 1114-15 (finding that "the holding of *NWEA* [*I*], and the holding of this case" is that "the condition is simply not susceptible to enforcement by private citizens."). And even *Save Our Bays v. CCH* confirmed that "only state courts can review the validity of a state-issued NPDES permit." *Id*. at 1114. In contrast, here the Cities are claiming that Permit conditions in a state permit are unlawful. That is not an issue of standing or of the Court's jurisdiction to hear the claims, but an attack on the very terms of the Permit itself.

Additionally, *NWEA I*—prior to being withdrawn after rehearing—held that *all* NPDES permit limitations must qualify as effluent limitations, whereas this is

6

*precisely* the finding that was rejected by the Supreme Court. *Compare NWEA I*, 11 F.3d at 907 (citing cases) *with CCSF v. U.S. EPA*, 145 S. Ct. 704, 713 ("The statutory text dooms this broad argument.") The Cities' efforts to resurrect dead law that has been unequivocally disregarded by the Supreme Court must be rejected.

Fundamentally, the district court's opinion in *Save Our Bays v. CCH* and the Supreme Court's opinion in *CCSF v. U.S. EPA* are about two different things. *Save Our Bays v. CCH* addressed the scope of the citizen suit provision under briefly controlling Ninth Circuit precedent. *See NWEA II*, 56 F.3d at 986 (allowing citizen suits regardless of whether permit conditions are "greater in scope" than federal law requires). In contrast, *CCSF v. U.S. EPA* held that the Clean Water Act does not authorize "end-result" provisions. It says nothing about the scope of standing for a citizen suit lawsuit under the Clean Water Act and does nothing to cast doubt on the settled rule that permit terms cannot be collaterally attacked in an enforcement action. In fact, in *CCSF v. U.S. EPA*, the challenge to EPA's permitting authority under the Clean Water Act was initiated in the proper venue—the Environmental Appeals Board.[5] *CCSF v. U.S. EPA*, 145 S. Ct. at 713.

If nothing else, the practical effect of *CCSF v. U.S. EPA* will be the increased use of the statutorily authorized methods of determining permit validity—challenge to the Environmental Appeals Board for federal permits and petition to the state-issuing authority for state permits. The determination of whether a permit term is an improper end-result provision can be a fact specific effort that requires focused examination in the forum authorized to decide the permit challenge. Pursuant to *CCSF v. U.S. EPA*, the judicial review of a permit limitation, other than an effluent limitation, must, at minimum, evaluate whether the permit limitation directs the permittee to "do certain specific things," whether the permit limitation is

---

[5] In addition to its challenge to U.S. EPA's federal permitting authority, CCSF also litigated the SF Bay Water Board's authority through a related challenge in state court utilizing the designated process for such challenges under Cal. Code of Civil Procedure section 1094.5. That state court challenge is still pending.

7

implemented through "concrete measures," whether the permit limitation "sets out actions that must be taken to achieve the objective," and—in the case of a state-issued permit such as the one in this action—whether state law authorizes the permit condition. *CCSF v. U.S. EPA*, 145 S. Ct. at 715-16; *see, e.g.*, Cal. Water Code § 13377 (authorizing waste discharge requirements issued as NPDES permits to include "any more stringent effluent standards or limitations necessary to implement water quality control plans, or for the protection of beneficial uses, or to prevent nuisance"). Any judicial review must also recognize that *CCSF v. U.S. EPA* was limited to the Clean Water Act's provisions governing EPA's combined sewer system permits in the Supreme Court's interpretation of 33 U.S.C. § 1311(b)(1)(C), and did not extend to municipal stormwater systems under 33 U.S.C. § 1324(p)(3)(B). *CCSF v. U.S. EPA*, 145 S. Ct. at 720 ("§ 1311(b)(1)(C) does not authorize the EPA"); *but see Defenders of Wildlife v. Browner,* 191 F.3d 1159, 1166-67 (9th Cir. 1999) (finding that 33 U.S.C. § 1311(b)(1)(C) does not regulate stormwater discharges under 33 U.S.C. § 1324(p)(3)(B)). And, as courts grapple with implementing *CCSF v. U.S. EPA*, only those venues with jurisdiction to make the determination of whether a permit term complies with the Supreme Court's decision may make that finding. This Court lacks such jurisdiction and the Cities' request for this Court to invalidate two provisions of the Permit through the guise of an "interpretation" is a fiction that is plainly inconsistent with California Water Code section 13330(f).

### C. Permit Invalidation When the Permitting Agency Is Not a Party to the Lawsuit Is Improper

#### 1. The Clean Water Act Is Undermined If Permit Challenges Are Allowed During Enforcement Actions

The NPDES permit program is the "linchpin" of the Clean Water Act's regulatory scheme. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000). The principal means of enforcing the Clean Water Act's pollution control and abatement provisions is through enforcing permit

compliance. *Env't Prot. Agency v. California ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 223 (1976). As a supplement to enforcement by these regulating agencies, the Clean Water Act authorizes citizens to bring their own lawsuits. 33 U.S.C. § 1365. And SF Baykeeper brought this lawsuit on that basis. In fact, SF Baykeeper's citizen suit would be barred if the state was pursuing enforcement actions with respect to the same alleged violations. 33 U.S.C. §§ 1319(g)(6)(A)(i)-(iii), 1365(b)(1)(B).

The Water Boards rely on citizen suits to fill in enforcement gaps and are generally not parties to those suits. *See generally California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 872-78 (9th Cir. 2013). Therefore, the Cities' effort to utilize a motion for reconsideration to invalidate permit terms threatens to undermine the Clean Water Act's enforcement scheme and require that the permitting authority be a party to any such citizen suits. This runs contrary to the structure of the Act and would impose a serious burden on the Water Boards, which lack the resources to be a party to every possible enforcement action.

Additionally, allowing a collateral permit challenge during an enforcement action would undermine the vital role the public plays in reviewing and commenting on a proposed NPDES permit. 40 C.F.R. §§ 25.1 to 25.14 (specifying minimum requirements for authorized state programs). The public is integral to ensuring permit finality prior to taking effect. *See* Cal. Code Regs., tit. 23, § 648-648.8; Cal. Wat. Code §§ 13167.5, 13263, Cal. Govt. Code, §§ 11125, 11125.9, 11509. Public participants are also eligible to challenge the permit within the permissible period. Cal. Water Code §§ 13320(a), 13330. This public participation is a critical component of ensuring permit finality. Cal. Water Code § 13330(f). Allowing a permit holder to commandeer an enforcement action to challenge permit terms and, in effect, rewrite the permit, would thwart these public participation procedures.

If this Court were to allow determinations on the validity of permit terms to be adjudicated through citizen suit enforcement actions, on the theory that only the "enforceability" or "interpretation" of the provision, rather than the validity of the permit, is at issue, the Court would in effect be mandating that state and federal regulators become parties to all citizen suit enforcement actions in order to safeguard a permit and ensure the Court has all relevant information when interpreting the permit's terms. This cannot be what the Clean Water Act required when it sought to reduce the enforcement burden on regulators and obtain "the achievement of state water quality standards as one of the Act's central objectives." *Arkansas v. Oklahoma*, 503 U.S. 91, 105-06 (1992). The Supreme Court has explained that "the principal means of enforcing the pollution control and abatement provisions of the [Clean Water Act] is to enforce compliance with a permit" and has affirmed the importance of citizen suits in ensuring permit compliance. *EPA v. California ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 223-24 (1976).

Allowing the Cities, as permittees, to pursue an improper collateral attack on the permit during an enforcement action and improperly extend the scope of the Supreme Court's decision would have grave repercussions that would threaten the NPDES permitting system in California, undermine the critical role of public participation, and impede the Clean Water Act's goal of protecting the quality of the State's waters.

    **2.    The Cities' Misapplication of *CCSF v. U.S. EPA* Illustrates the Risks of Error If Collateral Attack of Permits Were Allowed in Enforcement Proceedings**

Allowing collateral attack of the NPDES permits during enforcement proceedings raises a grave potential for abuse should challenges to NPDES permits be allowed during an enforcement proceeding instead of as required by state and federal law. First, as noted above, the permitting agency's views are vital for a complete interpretation of the permit. Second, the parties litigating a citizen suit

enforcement action do not necessarily share the same interests as the permitting agency. Third, consideration of a permit challenge during an enforcement action, excises the vital role the public plays in reviewing and commenting on a proposed NPDES permit. As such there is significant risk for misapplication of the law.

For example, in this matter, the Cities identify two provisions that they claim are unlawful under *CCSF v. U.S. EPA*: "Receiving Water Limitation, B.2" and "Discharge Prohibition A.1." But this Court is not the proper venue for that inquiry and these provisions may be justified, including on a state law basis. Most notably, the Discharge Prohibition A.1 provision identified by the Cities is quite plainly not driven by conditions in the receiving water. Nonetheless, the Cities seek to have it swept up in their effort to invalidate those provisions upon which this enforcement effort is based. Contrary to the Cities' allegation, Discharge Prohibition A.1 is compliant with *CCSF v. U.S. EPA* because it identifies what the Cities must do to meet the limitation imposed on them. Namely, "[t]he Permittees shall, within their respective jurisdictions, effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses." The limitation addresses action that the Cities must take *before* non-stormwater even enters the Cities' stormwater system and therefore *well before* the Cities "discharge pollutants into covered bodies of water." *CCSF v. U.S. EPA*, 145 S. Ct. at 712. Therefore, this is a discharge prohibition that is not driven by conditions in the receiving water and, as a result, it is outside the purview of *CCSF v. U.S. EPA* because it is not an end-result requirement.

The Cities' motion makes no meaningful argument claiming that Discharge Prohibition A.1 is an end-result provision but, rather, hinges its entire argument on this point to a footnote invoking Webster's Dictionary. Motion at 6, n.3. Likewise, the Cities ignore clear Ninth Circuit precedent distinguishing the authority for Permit terms such as Receiving Water Limitation, B.2, with the permit terms examined in *CCSF v. U.S. EPA*. *Defenders of Wildlife v. Browner*, 191 F.3d at

11

1166-67 ("Congress did not require municipal storm-sewer discharges to comply strictly with 33 U.S.C. § 1311(b)(1)(C)" but allows such other provisions as the State "determines appropriate for the control of such pollutants.") Although SF Baykeeper did provide some argument on these topics (ECF No. 279 at 21-24), the Water Boards are not a party to this case, and there is no certainty that adequate rebuttal arguments will be raised in all NPDES challenges. The Clean Water Act nowhere places the "linchpin" of its regulatory scheme—and the fate of NPDES permits affecting hundreds of millions of people—in the hands of private parties.

## CONCLUSION

For the foregoing reasons, the Water Boards as *amici curiae* respectfully urge the Court to deny the Cities' Motion.

Dated:  April 28, 2025                                  Respectfully submitted,

                                                        ROB BONTA
                                                        Attorney General of California
                                                        RUSSELL B. HILDRETH
                                                        Supervising Deputy Attorney General

                                                        /s/ Bryant B. Cannon

                                                        BRYANT B. CANNON
                                                        Deputy Attorney General
                                                        *Attorneys for Amici Curiae*
                                                        *California State Water Resources*
                                                        *Control Board and California*
                                                        *Regional Water Quality Control*
                                                        *Board, San Francisco Bay Region*

OK2025400739