UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>Defendants. | Case No.  5:20-cv-00824-EJD<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: ECF No. 278 |

Two months ago, the Supreme Court issued its opinion in *City and County of San Francisco v. EPA* ("*CCSF*"), 145 S. Ct. 704 (2025). There, the Supreme Court held that discharge permits issued under the Clean Water Act, which regulate pollutant discharges into certain bodies of water, cannot contain "end-result" limitations. According to Defendants—the Cities of Sunnyvale and Mountain View—the permit limitations they are being accused of violating in this matter are precisely such unallowable end-result limitations. As such, the Cities now move for reconsideration of several of the Court's prior orders granting relief against the Cities.

After reviewing the submissions on this issue, the Court finds oral argument to be unnecessary under Civil Local Rule 7-1(b). Because the Cities may not collaterally attack the validity of the permit limitations here, the Court **DENIES** the Cities' motion for reconsideration.

**I.    BACKGROUND**

This lawsuit centers around allegations that the Cities' municipal separate storm sewer systems discharged excessive amounts of bacteria into certain waters when it rained. Based on these allegations, Plaintiff San Francisco Baykeeper filed citizen suits against the Cities claiming that these discharges violated the National Pollutant Discharge Elimination System (NPDES) permits covering the Cities.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION           1

At each stage in this litigation, the Court has held that Baykeeper could proceed with its claims. To start, over two rounds of Rule 12 motion practice, the Court rejected the Cities' jurisdictional arguments and found that Baykeeper had sufficiently stated its claims. ECF No. 57[1]; ECF No. 194. Then, on cross-motions for summary judgment, the Court denied the Cities' motion while granting partial summary judgment in favor of Baykeeper. The Court held: that Baykeeper had Article III standing to assert claims for NPDES permit violations in the South San Francisco Bay, Stevens Creek, and Calabazas Creek; that those three bodies of water were Waters of the United States (WOTUS) subject to the Clean Water Act; and that the Cities had violated their NPDES permits on certain days for which Baykeeper had collected water quality samples. ECF Nos. 139, 270. Finally, on an earlier motion for reconsideration, the Court concluded that the Supreme Court's intervening decision in *Sackett v. EPA*, 598 U.S. 651 (2023), did not affect the Court's earlier findings on WOTUS. ECF No. 199. Subsequently, the Court awarded interim attorney's fees to Baykeeper for prevailing in part at summary judgment. ECF Nos. 207, 227.

The net result of these orders was that the parties were on track for a trial on two of Baykeeper's claims. The first claim is based on violation of a permit limitation that the parties refer to as Discharge Prohibition A.1. In relevant part, Discharge Prohibition A.1 reads:

> The [Cities] shall, within their respective jurisdictions, effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses.

ECF No. 145, Ex. A (2022 Permit) at 6.[2] The second claim is based on violation of a permit limitation referred to as Receiving Water Limitation B.2. That provision reads:

> The discharge shall not cause or contribute to a violation of any applicable water quality standard for receiving waters. If applicable water quality objectives are adopted and approved by the State Water Board after the date of adoption of this [permit], the Water Board may revise and modify this [permit] as appropriate.

*Id.*

---

[1] Because Baykeeper originally filed separate lawsuits against Sunnyvale and Mountain View before the Court consolidated them into a single action, one of the Court's motion-to-dismiss orders is filed in Case No. 5:20-cv-00826 at ECF No. 46.

[2] There is also a relevant 2015 Permit, ECF No. 84-1, Ex. 16. The Court cites only to the 2022 Permit because the limitations at issue in this case are identical between the two Permits.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION        2

While the parties were preparing for trial, the Supreme Court issued its opinion in *CCSF*. In that opinion, the Supreme Court held that the Clean Water Act did not allow regulatory agencies to include end-result limitations in the NPDES permits that they issue, meaning that permits cannot contain provisions that "do not spell out what a permittee must do or refrain from doing" but rather "make a permittee responsible for the quality of water in the body of water into which the permittee discharges pollutants." *CCSF*, 145 S. Ct. at 710–11.

Prior to *CCSF*, the Ninth Circuit allowed NPDES permits to contain such end-result limitations. Because *CCSF* changed the law, the Court allowed the Cities to file a motion for reconsideration. ECF No. 276.

## II.   LEGAL STANDARD

A district court has the power to reconsider and modify its interlocutory orders and rulings "at any time prior to final judgment." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (citation omitted); *see also City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). In the Northern District of California, reconsideration is governed by Civil Local Rule 7-9. This rule provides three grounds for reconsideration: (1) a material difference in fact or law that, in the exercise of reasonable diligence, the party seeking reconsideration was not aware of prior to the order for which reconsideration is sought; (2) the emergence of new facts or changes in law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that had previously been presented to the Court. Civil L.R. 7-9(b). At issue here is a change in law.

## III.   DISCUSSION

The Cities argue that both Prohibition A.1 and Limitation B.2 are invalid under *CCSF*, so Baykeeper cannot succeed on its claims. Before reaching that argument, though, the Court must first address a threshold question: can it consider the validity of those two permit limitations in the first place? The Court concludes that it cannot.

The Clean Water Act authorizes the EPA to issue NPDES permits, but it also allows the EPA "to delegate permitting responsibility to the States." *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831, 834 (9th Cir. 2021) (citing 33 U.S.C. § 1342(b)). If the

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION           3

EPA does so, "then state officials—not the federal EPA—have the primary responsibility for reviewing and approving . . . discharge permits." *Id.* (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 650 (2007)) (alteration in original). The EPA has delegated such responsibility to California, so the NPDES permits here are state-issued ones. *Id.*; 2022 Permit; 2015 Permit.

The fact that California issued the NPDES permits in this case resolves the Cities' reconsideration motion. "The Clean Water Act does not contemplate federal court review of state-issued permits." *Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 104 (9th Cir. 2024) (citation omitted). This means that federal courts "will not consider collateral attacks on the validity of permit conditions in the course of an enforcement action or citizen suit, whether those attacks arise offensively or defensively." *Id.* at 105. The Cities "cannot avoid liability by arguing that certain terms in [their] permit[s] are invalid." *Id. see also Save Our Bays & Beaches v. City & Cnty. of Honolulu*, 904 F. Supp. 1098, 1114 (D. Haw. 1994) (agreeing that "defendant cannot challenge, and this court cannot review, the [NPDES] Permits' validity").

In challenging the NPDES permit provisions at issue here, the Cities are bringing exactly the kind of collateral attack on the validity of a state-issued permit that *Puget Soundkeeper* bars. The core issue in this citizen suit is whether to enforce certain permit provisions; permit validity is a collateral issue. The Cities' reconsideration motion makes a classic collateral attack, seeking to "undermine" the permits here by raising "a defense in the proceeding[] that the [permits are] ineffective." *Collateral Attack*, Black's Law Dictionary (12th ed. 2024). Accordingly, the Court cannot consider the Cities' basis for reconsideration and must deny their motion.

The Cities lodge several objections to this conclusion, but none are persuasive.

*First*, the Cities assert that *CCSF* must be applied retroactively. However, retroactivity is a separate issue than the availability of collateral attack. The logical sequence of these two issues requires the Court to first decide whether collateral attack is available. Then second, and only if collateral attack is available, does the Court need to decide what law to apply when evaluating the Cities' collateral attack. As collateral attack is not available, the Court cannot reach the

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION            4

retroactivity question.[3]

*Second*, in an effort to work around the restriction on collateral attacks, the Cities frame their reconsideration motion as alternatively challenging the NPDES permits' enforceability in citizen suits. To begin, the Court doubts that enforceability issues are meaningfully different than collateral attack issues. In *Puget Soundkeeper*, the defendants argued that the permits there were "not enforceable in a citizen suit because they exceed[ed] the requirements of the federal regulations" and were therefore invalid. 104 F.4th at 103. Although the defendants couched their argument in terms of enforceability, the Ninth Circuit rejected their argument by applying the Clean Water Act's bar on the collateral attack of state-issued permits. *Id.* at 105–06.

Even assuming there is a distinction between enforceability and collateral attack, the Cities' argument still fails. The Cities depend on *Northwest Environmental Advocates v. City of Portland* ("*NWEA I*"), 11 F.3d 900 (9th Cir. 1993). In *NWEA I*, the Ninth Circuit held that "water quality standards are unenforceable by way of a citizen suit unless they have been translated into end-of-the-pipe effluent limitations." 11 F.3d at 911. In the language of *CCSF*, this means that end-result limitations are not enforceable in citizen suits. Were *NWEA I* good law, the Cities might well prevail. The problem is that the panel deciding that case withdrew *NWEA I* and replaced it with a new opinion reaching the opposite conclusion.[4] *Nw. Env't Advocs. v. City of Portland* ("*NWEA II*"), 56 F.3d 979 (9th Cir. 1995). Under *NWEA II*, plaintiffs *can* "enforce permit conditions stated in terms of water quality standards" (end-result limitations) through citizen suits. *Id.* at 990.

Nonetheless, the Cities urge the Court to follow *NWEA I* instead because *NWEA II* is

---

[3] The Court observes that even if it could reach the retroactivity question, the answer is not nearly as clear as the Cities imply. Generally, changes in law are retroactive in "cases still open on *direct review*." *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993) (emphasis added). It is far from clear that a similar assumption in favor of retroactivity applies on *collateral review*. For example, in the habeas context, it does not. There, "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." *Hughes v. United States*, 770 F.3d 814, 817 (9th Cir. 2014) (quoting *Tyler v. Cain*, 533 U.S. 656, 663 (2001)) (cleaned up).

[4] The Cities also rely on *Save Our Bays*, 904 F. Supp. at 1108–14, a district court case analyzing *NWEA I*. Since *NWEA II* post-dates *Save Our Bays*, the district court's analysis of *NWEA I* is of no help to the Cities.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION     5

incompatible with the Supreme Court's decision in *CCSF*. That is, the Cities urge the Court to conclude that *CCSF* abrogated *NWEA II*. The Court declines to do so.

To be sure, there is tension between *CCSF* and *NWEA II*. But tension between intervening higher authority and prior circuit precedent is not reason enough to cast aside that prior precedent. *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). "[A]s long as [courts] can apply [] prior circuit precedent without running afoul of intervening authority, [courts] must do so." *Id.* (internal citations and quotations omitted). The Court cannot ignore *NWEA II* unless *CCSF* is "clearly inconsistent" with *NWEA II*. *Id.* The two are not clearly inconsistent because they deal with different issues—*CCSF* is about permit validity while *NWEA II* is about enforceability in citizen suits. *CCSF* prohibits the issuance of any new NPDES permits containing end-result provisions and provides a basis for regulated entities to petition relevant agencies to remove any end-result provisions in their current NPDES permits. By contrast, *NWEA II* permits citizen plaintiffs to enforce those end-result provisions in the interim, unless and until agencies formally remove those provisions from the NPDES permits at issue. Although the Cities may be right that *CCSF* should prompt a re-examination of *NWEA II*, it is the Ninth Circuit's prerogative, not this Court's, to do so. As such, *NWEA II* still controls these proceedings and forecloses the Cities' argument.

*Third*, the Cities attempt to give their arguments a jurisdictional gloss, asserting that the Court lacks jurisdiction because there is no valid permit provision to enforce. The Cities' exact jurisdictional argument is hard to pin down as they variously refer to subject matter jurisdiction and Article III standing. Regardless, the Cities' argument appears to rely on the premise that the Supreme Court rendered every end-result provision in every NPDES permit across the country null and void immediately upon issuing its opinion in *CCSF*. As a result, say the Cities, Baykeeper lacks any claim or injury. The Court does not read *CCSF* so expansively. Rather, as the Court explained above, any end-result provision remains in force unless and until an issuing agency rescinds such provision. The Court therefore rejects the Cities' jurisdictional argument.[5]

---

[5] The Cities also challenge a jurisdictional holding from an earlier order unrelated to *CCSF*. Mot. at 18–20, ECF No. 278. Since the Court did not authorize a motion for reconsideration on that issue, the Court declines to consider it.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION           6

*Fourth*, the Cities try to cast their arguments as a matter of interpretation rather than invalidation. They ask the Court to interpret Prohibition A.1 and Limitation B.2 as aspirational goals instead of enforceable permit provisions. This argument is no different than the Cities' enforceability argument and fails for the same reasons. In any case, this interpretive argument fails on its own terms as well. Courts interpreting an NPDES permit must "give effect to the natural and plain meaning of [the permit's] words." *Puget Soundkeeper*, 104 F.4th at 101 (citation omitted) (alteration in original). The permits here state that the Cities "shall" adhere to Prohibition A.1 and Limitation B.2. There is no way to interpret "shall" as setting forth an aspirational goal rather than an enforceable limitation.

*Finally*, the Cities raise a bevy of policy arguments. Whatever the merits of those arguments, the Ninth Circuit's binding precedent in *Puget Soundkeeper* and *NWEA II* clearly precludes the Cities from succeeding on reconsideration.

## IV.  CONCLUSION

The Court **DENIES** the Cities' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: May 12, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION            7