MELISSA A. THORME, Bar No. 151278
Melissa.Thorme@stoel.com
EDWARD C. DUCKERS (SBN 242113)
ed.duckers@stoel.com
BAO M. VU, Bar No. 277970
bao.vu@stoel.com
ANDREW D. PEREZ, Bar No. 348645
andrew.perez@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

*Attorneys for Defendants CITY OF SUNNYVALE and MOUNTAIN VIEW*

REBECCA MOON, City Attorney, Bar No. 167981
rmoon@sunnyvale.ca.gov
CITY OF SUNNYVALE
456 West Olive Avenue
Sunnyvale, CA 94086
Telephone: 408.730.7464
*Attorneys for Defendant CITY OF SUNNYVALE*

JENNIFER LOGUE, City Attorney, Bar No. 241910
jennifer.logue@mountainview.gov
DAVID S. WILGUS, Sr. Ass't City Attorney, Bar No. 219181
david.wilgus@mountainview.gov
CITY OF MOUNTAIN VIEW
500 Castro Street
Mountain View, CA 94041
Telephone: 650.903.6303
*Attorneys for Defendant CITY OF MOUNTAIN VIEW*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE, a municipality,<br><br>Defendant. | Case No. 5:20-CV-00824-EJD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF LABORATORY EVIDENCE**<br><br>Hearing Date:<br>Time:<br>Dept.:        Courtroom 4<br>Judge:       Honorable Edward J. Davila<br><br>Filed:          February 4, 2020<br>Trial Date:  June 10, 2025 |

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

## I. INTRODUCTION

The arguments in San Francisco Baykeeper's ("Baykeeper" or "Plaintiff") Opposition ("Opp.") fail because Baykeeper cannot and does not deny that: 1) Alpha Analytical Laboratories, Inc. ("Alpha Analytical") destroyed the raw and QA/QC data underlying Baykeeper's Exhibits 14-22 (the "Laboratory Reports"), 2) Baykeeper failed to produce in discovery the documents that were subsequently destroyed, and 3) Baykeeper failed to issue a litigation hold for the underlying data for the Laboratory Reports. Baykeeper concedes both the relevancy of the raw data and QA/QC data (Opp. at 10: 23-28 ["tests have been at the core of this litigation since initiation"].) and the destruction of this data Declaration of Erica Maharg (ECF No. 370-1;"Mahard Decl.") ¶ 11 ["Alpha deleted its records between November 2022 and March 2024"].). While Baykeeper argues it had no "control" over Alpha Analytical, that argument misses the point. Baykeeper cannot deny that it at least had "access" to and indirect control over that data, as testified to by Baykeeper's expert Ian Wren's ("Mr. Wren"). (Trial Transcript ("TT") at 292:5-10.) Baykeeper had access to obtain the raw data and QA/QC data *if* he had requested it. The issue here, and the discovery abuse is that Baykeeper failed to request it. Baykeeper failed in its mandatory duty to preserve evidence, and it cannot shift the burden of its evidence preservation duties to the Cities. Baykeeper's choices and discovery abuses cannot be excused. Baykeeper relied on the Laboratory Reports to initiate this case; Baykeeper failed to take the important step to issue a litigation hold to Alpha Analytical; Baykeeper failed to obtain and produce the documents that were later destroyed; Baykeeper failed to disclose the laboratory witnesses in its Initial Disclosures; and Baykeeper failed to disclose data destruction prior to Alpha Analytical's President Robbie Phillips' ("Mr. Phillips") testimony.

Despite these clear failures, Baykeeper wrongly suggests that the Cities are barred from making a spoliation claim because the Cities did not compel Baykeeper to produce the raw data and QA/QC data before fact discovery closed. (Opp. at 5:14-15.) But this is not the Cities' burden under the law. Baykeeper had the duty to preserve evidence it concedes is "at the core" of *its* litigation. Indeed, the Cities did not know about the destruction of the raw data and QA/QC data until Mr. Phillips testified to it on June 10, 2025. The Cities had not affirmatively disclaimed interest in the evidence and were not provided any opportunity of access to the raw data and QA/QC

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-1-   5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

1  data. Baykeeper had all the access to the data and to Alpha Analytical, but failed to produce or
2  disclose this relevant evidence.

3        Baykeeper's argument that the Cities have not shown prejudice is also unavailing because
4  prejudice goes to the type of remedy available, not to the merits of a spoliation claim itself. Here,
5  all the elements of spoliation are met. Baykeeper fails to cite to a single case including both a
6  finding of spoliation and a lack of remedy. Additionally, as detailed *infra* section E, the Cities were
7  materially prejudiced. Absent appropriate sanctions, there is a powerful incentive for a party to
8  breach its duty to preserve important evidence. Baykeeper's argument that the Cities cannot show
9  prejudice because the documents they would rely on to do so were destroyed obviously deserves
10  no consideration.

## II.    ARGUMENT

### A.    The Court has Inherent Authority to Address Baykeeper's Discovery Abuses.

Baykeeper argues that the Cities cannot seek sanctions for spoliation because the Cities did not take steps to first seek the information and meet and confer under Rule 37. (Opp. at 9:17-24.) Baykeeper's reliance on and discussion of Rule 37 is misplaced. Without a prior discovery order (required for sanctions under parts of Rule 37 not applicable here), discovery misconduct can be punished under the court's "inherent powers" to manage its affairs. (*Unigard Security Ins. Co. v. Lakewood Eng.& Mfg. Corp.*, 982 F2d 363, 368 (9th Cir. 1992).) As the Cities' motion discussed at 11:8-15, a court has "authority to sanction litigants for discovery abuses both under the Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of the judicial process." (*Network Appliance, Inc. v. Bluearc Corp.*, 2005 WL 1513099, at *2 (N.D. Cal. June 27, 2005; *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986), *amended by* 803 F.2d 1085; *In re Napster, Inc. Copyright Litigation*, No. C MDL-00-1369 MHP, 2006 WL 3050864 at *3 (N.D. Cal. Oct. 25, 2006).)

### B.    The Cities Are Not Responsible For Baykeeper's Discovery Abuses.

Baykeeper argues that the Cities are somehow responsible for Baykeeper's discovery abuses. The case law is clear, however, that Baykeeper had the duty to preserve evidence. A party's obligation to preserve relevant evidence generally attaches "[a]s soon as a potential claim is

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-2-                            5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

1  identified, [whereby] a litigant is [then] under a duty to preserve evidence which it knows or
2  reasonably should know is relevant to the action." (*In re Napster, Inc. Copyright Litig.*, 462 F.
3  Supp. 2d at 1067.) Unlike a defendant waiting to be sued, plaintiffs, like Baykeeper most often
4  control the timing of litigation. (See *Innis Arden Golf Club v. Pitney Bowes, Inc.,* 257 F.R.D. 334,
5  340 (D. Conn. 2009).) At the latest, Baykeeper's duty attached when it filed suit in February 2020
6  – at least two years prior to when Alpha Analytical began to delete the underlying laboratory data.
7  (See Maharg Decl. ¶ 11.) Baykeeper does not (and cannot) deny that it failed to issue a litigation
8  hold to Alpha Analytical during that two-year period. On the contrary, the Declaration of Mr. Wren
9  (ECF No. 370-2; "Wren Decl.") seems to go out of its way to prove that Baykeeper did absolutely
10 nothing to alert Baykeeper to the need to preserve highly relevant evidence. (Wren Decl. at ¶ 7.)

11         Baykeeper tries to excuse its failure by arguing that the Cities did not deem the raw data
12 and QA/QC data as relevant during discovery, therefore it is not relevant during trial. (Opp. at 10:8-
13 12.) This argument is unavailing because, as detailed below, **the Cities did not have an**
14 **opportunity to learn of or address Baykeeper's discovery abuses before trial**. (See *Innis Arden*
15 *Golf Club*, 257 F.R.D. at 340 ["Innis Arden contends that its failure to preserve this evidence should
16 be excused because Pitney Bowes has not demonstrated that it intended to actually use or rely on
17 the evidence during litigation, and that Pitney Bowes's motion is motivated by litigation
18 opportunism. This, too, is unavailing."].) Because of Baykeeper's failure to disclose Alpha
19 Analytical or any of its employees as potential witnesses in its Rule 26 disclosures and because the
20 Cities presumed Baykeeper produced all relevant documents related to the Laboratory Reports in
21 response to their request for production, the Cities had no reason to file a pretrial discovery motion.

22         A month before trial, on May 8, 2025, Baykeeper first disclosed its intent to call Mr.
23 Phillips, Jordan Schmitt, and Daniel Johnson (the "Lab Witnesses") when it provided its first draft
24 of the Joint Witness List. The Cities objected to the Lab Witnesses being called during conference
25 calls with Baykeeper, and first put its objection in writing in the Joint Witness List filed May 15,
26 205 (ECF No. 305) ["Defendants object to the designation and testimony (either live or by
27 declaration) of the [Lab Witnesses] as these people were never disclosed, Defendants never had an
28 opportunity to know the identities of or depose these people, and their participation at trial would

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-3-                    5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

1  unduly prejudice Defendants by allowing these witnesses at this late date to testify about data
2  collected in 2017-2019 that could have easily been disclosed by Plaintiff in initial disclosures."].)

3        On May 30, 2025, the Cities filed their Objections to Undisclosed Witnesses and Related
4  Documents. (ECF No. 331.) On the same day, Baykeeper provided Declarations from the Lab
5  Witnesses to the Cities. (ECF No. 338, at Maharg Decl., ¶ 4, Ex. 1.) On June 2, 2025, Baykeeper
6  filed its Response to Objection to Laboratory Witnesses. According to counsel for Baykeeper, in
7  May 2025 (on an undisclosed date) after they became aware that "the Cities indicated they would
8  not stipulate to the authenticity or admissibility of the Testing Results as exhibits at trial,
9  Baykeeper's counsel contacted the labs who performed the testing to … **confirm that the labs**
10 **were accredited and had procedures in place to ensure the reliability of their results**." (ECF
11 No. 338 at 2:20-25, emphasis added.)

12       On June 3, 2025, the Court issued its Tentative Pretrial Order overruling the Cities
13 Objections. (ECF No. 340.) On June 10, 2025, Mr. Phillips testified at trial. At no point during this
14 direct examination did counsel for Baykeeper inquire about, or did Mr. Phillips testify about, any
15 deletion of testing data. It was not until the cross examination of Mr. Phillips that same day that
16 Mr. Phillips admitted that no litigation hold was in place, and that all documents Alpha once had
17 related to the testing had been destroyed, including the documents for which he purported to lay a
18 business records foundation (Exhibits 14 – 22). (TT at 46:24-47:23.)

19       Prior to June 10, 2025, the Cities were unaware of Alpha Analytical's deletion of raw data
20 and QA/QC data and did not even have knowledge of Mr. Phillips until May 2025. Baykeeper did
21 not seek confirmation of Alpha Analytical's accreditation and procedures ensuring the reliability
22 of Alpha Analytical's test results until May 2025. Baykeeper's preservation and disclosure
23 obligations are not the Cities' burden to carry and Baykeeper's failure to meet these critical and
24 mandatory obligations should not be excused.

25     **C.**    <u>**Baykeeper Hired Alpha Analytical and Concedes It Had Access to the Laboratory Evidence.**</u>
26
27       Baykeeper argues that Alpha Analytical's actions cannot be imputed to it because
28 Baykeeper did not have a contract with Alpha Analytical and Baykeeper was just a "customer or

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-4-                                                    5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

user." (Opp. at 12:3-24.) Baykeeper's argument is misplaced and wrong. First, it is misplaced because Baykeeper had the duty to preserve the raw data and QA/QC data and could have obtained and maintained copies of the data, just as it did with the Laboratory Reports it supplied to Alpha Analytical (which Mr. Phillips testified Alpha Analytical did not preserve).

Second, Baykeeper's argument is belied by the control it demonstrated over Alpha Analytical leading up to trial. In May 2025, Baykeeper's counsel contacted the labs who performed the testing to (a) notify them their testimony may be needed at trial, and (b) obtain declarations, signed under penalty of perjury, to authenticate the records, and confirm that the labs were accredited and had procedures in place to ensure the reliability of their results. (ECF No. 338, at Maharg Decl., ¶ 4, Ex. 1.) On June 6, 2025, the Court issued its Final Pretrial Order, allowing the Lab Witnesses to testify, but also finding that the Cities could "pursue lines of questioning on cross-examination that exceed the scope of Baykeeper's direct-examination." On June 9, 2025 at 5:20 p.m., the day before trial was to start, counsel for Baykeeper advised the Cities via email that its first witness to testify on June 10, 2025 would be Mr. Phillips. It is undisputed that Baykeeper partook in the benefits of Alpha Analytical's testimony and Laboratory Reports, and cannot now disavow Alpha Analytical's spoliation. (See *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591–92 (4th Cir. 2001)["As the district court correctly pointed out, to allow Silvestri to partake in the benefits provided by Moench—the testimony and expert reports of Carlsson and Godfrey—and at the same time disavow the acts of Moench in failing to preserve the evidence or notify General Motors would be 'particularly unjust.'"].)

Third, "courts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to or indirect control over such evidence." (*World Courier v. Barone*, No. 063072, 2007 WL 1119196, *1 (N.D. Cal. Apr. 16, 2007) [sanctioning spoliation caused by nonparty].) Baykeeper cites to *Scalia v Cnty of Kern* for the proposition that sanctions are only available against a party who had possession or control of evidence. But, this case does not help Baykeeper avoid its preservation obligation and, indeed, supports that Baykeeper had at least access and indirect control over Alpha Analytical. In *Scalia*, the court denied spoliation sanctions because it found: "there is no evidence

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-5-   5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

that [party] had access to the servers for inspection, or even that such access could be granted if requested from the County." (*Scalia v. Cnty. of Kern*, 576 F. Supp. 3d 703, 720 (E.D. Cal. 2021). Here, Mr. Wren testified that he assumed if he had requested access to the data, Alpha Analytical would provide it. (TT at 292:5-10.)

Access and control are not solely defined by the relationship between a party and non-party as Baykeeper suggests. Regardless of "customer" or "user" status, Baykeeper had access to the raw data and QA/QC data. In *Scalia*, the court cited to *World Courier* (which Baykeeper tries to distinguish as attributable to a husband-and-wife relationship), but, in *World Courier*, as the *Scalia* court noted, "the Northern District of California determined. . .that a defendant had sufficient access to evidence where it was in the possession of her husband." (*Scalia v. Cnty. of Kern*, 576 F. Supp. 3d at 718 (E.D. Cal. 2021). The decision in *World Courier* did not turn on the husband-and-wife relationship, but on the finding that the defendant "at least had access to or maintained indirect control over [a] hard drive." (*World Courier*, 2007 WL 1119196, at *1, 2007 U.S. Dist. LEXIS 31714, at *2.) Here, Baykeeper cannot deny it at least had access to the now destroyed documents.

Finally, Baykeeper tries to distinguish itself from the sanctioned party in *Silvestri* by arguing that Baykeeper did not access, use, or rely upon the raw data or QA/QC data. (Opp. at 14:1-7.) However, Baykeeper had an obligation to give the Cities notice of the raw data and QA/QC data or of its possible destruction if they anticipated litigation involving that evidence. "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." (*Silvestri v. Gen. Motors Corp.*, 271 F.3d at 591 (4th Cir. 2001).) One of Baykeeper's cited cases (*Scalia*) is also in accord: "A relationship with a third-party entity provides, at a minimum, an obligation to make reasonable inquiry of the third party entity for the data at issue." Thus, the plaintiff could not "abandon[ ] its documents to a third-party and claim[ ] lack of control." The court concluded, "Plaintiff had sufficient, albeit indirect, control to preserve evidence." (*Scalia*, 576 F. Supp. 3d at 719. Here, the Cities were not given notice of or access to this underlying data and did not find out about the destruction of the raw data and QA/QC data until trial, in Mr. Phillips testimony on June 10, 2025.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-6-    5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

**D.    The Cities' Request for Evidentiary Sanctions is Timely.**

Baykeeper argues that the Cities did not request the raw data or QA/QC data during discovery, thus, they cannot now raise a claim for spoliation. First, this is wrong. The Cities did request these documents in RFP No 7. Second, as discussed above, it is Baykeeper's burden to preserve evidence. Third, there is no rule governing the timeliness of filing a motion seeking spoliation sanctions. Here, the Cities' motion is timely because Baykeeper represented that it "produced all data in its possession, custody, and control" (Opp. at 6:3-8) and the Cities relied on that representation. Baykeeper did not disclose Laboratory Witnesses in its Rule 26(f) disclosures. The deletion of the raw data and QA/QC data was not disclosed to or known by the Cities until Mr. Phillips testified on June 10, 2025. Baykeeper claims it "provided the Cities with a copy of a declaration signed by Alpha employee Robbie Phillips describing the deletion of the records" (Opp. at 6:3-8) on May 30, 2025, but, this is simply not true. The Declaration did not admit to the deletion of records and merely stated that Alpha Analytical has a five-year retention policy. (ECF No. 338, at Maharg Decl., ¶ 4, Ex. 1.) Baykeeper cites to *Wakefield v. ViSalus, Inc.*, Case No. 3:15-cv-1857-SI, 219 U.S. Dist. LEXIS 52557 (D. Or. March 27, 2019), but in that case, the spoliation motion was brought over *two years after* a party affirmatively learned that call logs were not preserved. Baykeeper also cites to A*llstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007), but, in that case, the defendants affirmatively disclaimed any interest in the evidence and did so after being provided a full opportunity to inspect the items. Here, the Cities did not affirmatively learn of deletion until June 10, 2025, and did not even know about the laboratory witnesses until May 15, 2025. The Cities have not affirmatively disclaimed interest in the evidence and were not provided any opportunity of access to the raw data and QA/QC data.

**E.    The Requested Sanctions Are Appropriate.**

Baykeeper argues that even if spoliation were to be found, the Cities are not entitled to the evidentiary sanctions it seeks. The Cities ask the Court to impose a sanction designed to: (1) penalize conduct warranting such a sanction; (2) deter future sanctioned conduct; (3) place the risk of an erroneous judgment on Baykeeper who wrongfully created the risk; and (4) restore the Cities to the same position they would have been in absent the wrongful destruction of evidence by

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-7-    5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

Baykeeper. (*Advantacare Health Partners v. Access IV*, No. C 03-04496 JF, 2004 WL 1837997, at *4 (N.D. Cal. Aug. 17, 2004) (*citing Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).)

Baykeeper argues that third-party retention policies are insufficient to establish intent or negligence. This argument is misplaced. Courts in this circuit have found that an adverse inference instruction may be warranted "where the destruction was either willful or grossly negligent." (*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 at 1066 [a party's destruction of evidence need not be in bad faith to warrant a court's imposition of sanctions].) Willful spoliation occurs if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." (*United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (citation and quotation omitted).)The Cities were prejudiced by being denied the right to analyze and question Mr. Phillips about the destroyed underlying QA/QC data to confirm, for example, that all laboratory equipment was properly calibrated and measuring accurately and reliably; no deviations occurred from the testing methodology; the dilution of the sample; and whether the raw data matches what is summarized in the Laboratory Reports.[1] (*Contra*, *e.g.*, CLS's Daniel Johnson Testimony, TT at 68:5-11, 72:15-19, 75:7-17, 78:13-79:1.)

### III.     CONCLUSION

In sum, Baykeeper's arguments fail. Baykeeper concedes that the raw data and QA/QC data was destroyed by Alpha Analytical and that Baykeeper at least had access to the data and to Alpha Analytical. The Cities have not disclaimed an interest in the raw data and QA/QC data and did not learn of the laboratory evidence destruction until June 10, 2025. It is not the Cities' burden to carry Baykeeper's preservation obligations. Evidentiary and monetary sanctions should issue against Baykeeper.

---

[1] The Cities were effectively precluded from subpoenaing the lab witnesses since Baykeeper stated June 5, 2025 that the lab witnesses would not be testifying in person, but then were able to command their appearance at trial without any subpoena. (ECF No. 348.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-8-     5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001

1  Respectfully submitted,

2  DATED: June 26, 2025                                STOEL RIVES LLP

4                                                By: _____
5                                                    MELISSA A. THORME
                                                     EDWARD C. DUCKERS
6                                                    BAO M. VU
                                                     ANDREW D. PEREZ
7                                                    Attorneys for Defendants,

8                                                    CITY OF SUNNYVALE and
                                                     CITY OF MOUNTAIN VIEW

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

-9-                              5:20-CV-00824-EJD
DEFENDANTS' REPLY ISO MOTION FOR SANCTIONS OF SPOLIATION OF LABORATORY EVIDENCE
129379948.3 0083876-00001