UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>Defendants. | Case No.  5:20-cv-00824-EJD<br><br>**ORDER DENYING MOTION FOR SPOLIATION SANCTIONS**<br><br>Re: ECF No. 362 |

Midway through the bench trial in this matter, Defendants—the Cities of Sunnyvale and Mountain View—filed a motion for sanctions based on the alleged spoliation of raw water quality testing data and related quality assurance documentation by Alpha Analytical Laboratories, Inc. The Cities allege that Plaintiff San Francisco Baykeeper is responsible for Alpha Analytical's destruction of this evidence because Alpha Analytical had performed the relevant water quality tests at the request of Baykeeper and in anticipation of this lawsuit. Therefore, say the Cities, the Court should exclude the reports containing Alpha Analytical's final testing results—which were not destroyed and were produced in discovery—or draw a conclusive adverse inference assigning those results little to no weight. Because the requested remedies are not appropriate in these circumstances, the Court **DENIES** the Cities' motion.

I. **BACKGROUND**

In early 2020, Baykeeper brought this case against the Cities under the citizen suit provision of the Clean Water Act. Baykeeper alleged that the Cities had not properly managed their storm sewers, allowing contaminated stormwater to discharge into waterbodies. In turn, those discharges purportedly created elevated bacteria levels in those waterbodies in violation of water quality objectives.

1  To support its claims, Baykeeper collected various samples from the relevant waterbodies and sent them to labs for testing. Baykeeper employed the services of three different labs: Alpha Analytical; Source Molecular; and California Laboratory Services (CLS). *See* 6/2/25 Maharg Decl., Ex. 1, ECF No. 339. The final reports from each of these labs were produced in discovery. ECF No. 375 at 63:24–25. However, by the time fact discovery closed on May 28, 2021, the underlying raw data and related quality assurance documents had not been produced, and the Cities had not specifically asked for them. ECF No. 63. For four years, that was that.

But on May 30, 2025, issues surrounding Baykeeper's lab results resurfaced. That morning, Baykeeper asked the Cities to stipulate to the authenticity of the final lab reports. ECF No. 331-3. The Cities declined and, just hours later, filed formal objections seeking to prevent Baykeeper from calling witnesses from the three labs to authenticate those reports. ECF No. 331. The Court concluded that Baykeeper had failed to disclose those lab witnesses as required by Federal Rule of Civil Procedure 26, but it overruled the Cities' objections because that failure was harmless to the extent those lab witnesses would only provide authentication testimony. Final Pretrial Order at 21–23, ECF No. 349. Accordingly, the Court permitted Baykeeper to offer lab witnesses at trial but limited testimony to authentication. The Court did not limit the scope of the Cities' cross examination of those witnesses. *Id.*

Baykeeper eventually decided to call witnesses from just two labs after the Court denied its request to allow the lab witnesses to testify remotely. ECF No. 353. Those witnesses appeared on June 10, 2025, the first day of trial. One of those witnesses—Daniel Johnson from CLS—testified uneventfully. Trial Tr. (Vol. I) at 58–85, ECF No. 357. Mr. Johnson testified that he verified CLS's final reports against the raw data collected by the lab. *Id.* at 68:5–11. The second witness—Robbie Phillips from Alpha Analytical—sparked more activity. Unlike Mr. Johnson, Mr. Phillips testified he could not verify Alpha Analytical's results against the raw data. That was because Alpha Analytical has a five-year document retention policy, so Alpha Analytical had destroyed the raw data and quality assurance documents underlying the test results it supplied to Baykeeper by the time Mr. Phillips reviewed the final test results. *Id.* at 46:9–47:23. One week later, the Cities filed their spoliation motion. Mot., ECF No. 362.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. MOT. FOR SANCTIONS        2

## II. LEGAL STANDARD

When issuing sanctions, a court "must clearly delineate under which authority it acts to [ensure] that the attendant requirements are met." *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999). The sanctions motion here invokes only the Court's inherent authority.[1] In deciding whether to issue inherent authority sanctions, the Court proceeds in two steps.

First, it assesses whether spoliation occurred by applying a three-part test requiring "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1236 (N.D. Cal. 2022) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012)).

Second, if spoliation has occurred, the Court then "determine[s] whether and what type of sanctions to issue" by considering "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Id.* at 1237 (quoting *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008)).

## III. DISCUSSION

Baykeeper advances several arguments against sanctions, but it suffices to address just one in this Order. Even assuming (without deciding) that the Cities timely filed their sanctions motion and that Baykeeper engaged in sanctionable discovery conduct, the Cities' requested sanctions are disproportionate to Baykeeper's conduct.

---

[1] The Cities allude to the Court's sanctioning authority under Federal Rule of Procedure 37, but they never develop any arguments based on Rule 37. In reply, they also disclaim reliance on Rule 37. Reply at 2, ECF No. 374.

Separately, Baykeeper claims that Rule 37(e) applies, in which case the rule would preempt the Court's inherent authority. *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). The record does not support that claim. Rule 37(e) applies only to electronically stored information, and there is no indication that the underlying data destroyed by Alpha Analytical was maintained in an electronic format.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. MOT. FOR SANCTIONS         3

As a threshold matter, the Court observes that both of the Cities' requested sanctions are almost identical. The Cities' primary request is for the exclusion of Alpha Analytical's final reports. Their alternative request is for a conclusive adverse inference that those reports are to receive little to no evidentiary weight. Although the reports would remain in the trial record under the Cities' alternative sanction, there is little practical difference between excluding evidence and giving zero or close-to-zero weight to that evidence. Both requested sanctions are also exceptionally harsh because they would likely "deal[] a fatal blow" to Baykeeper's entire case. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012). As all acknowledge, water quality test results are key to the success or failure of a water quality case such as this one. The Alpha Analytical test results represent some of the most extensive testing done in this case. Without those results, it is difficult to see how Baykeeper has any possibility of prevailing.

Given the harsh effect of the proposed sanctions, they can be justified only by some combination of a high degree of fault by Baykeeper or high degrees of prejudice to the Cities. *See Meta Platforms*, 605 F. Supp. 3d 1237. The record does not bear either out.

To start, even under the assumption that Baykeeper's conduct constitutes a technical spoliation violation, Baykeeper's actions were far from egregious. A party commits spoliation only if evidence in its "possession, custody, or control" is destroyed. *Eacret v. Crunch, LLC*, No. 18-cv-04374, 2022 WL 4466718, at *2 (N.D. Cal. Sept. 26, 2022) (collecting cases); *see also Scalia v. Cnty. of Kern*, 576 F. Supp. 3d 703, 717 (E.D. Cal. 2021); *Hammann v. 800 Ideas, Inc.*, No. 2:08-cv-00886, 2010 WL 4943991, at *7 (D. Nev. Nov. 22, 2010). Alpha Analytical's raw data were plainly not in Baykeeper's possession or custody. At most, Baykeeper "controlled" the raw data in the sense that Alpha Analytical would have produced the data to Baykeeper upon request. If it is factually true that Alpha Analytical would have produced the data,[2] and if this willingness to produce the data establishes Baykeeper's control over the data, such control is indirect at best.

---

[2] This seems a reasonable assumption to make, but the parties did not identify specific evidence from the record on this point.

Case No.: 5:20-cv-00824-EJD
ORDER DEN. MOT. FOR SANCTIONS    4

The Court is unaware of any case law suggesting that a party to litigation must issue a litigation hold to a third party over which it has indirect control. Nor is the Court aware of any case law requiring a litigating party to collect (or attempt to collect) all potentially relevant evidence from such third parties. To the contrary, the Cities' own authority holds that it is sufficient "to give the opposing party notice of access to the evidence [in the third party's possession] or of the possible destruction of the evidence." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001).

Baykeeper did not expressly inform the Cities about the existence of Alpha Analytical's raw data or quality assurance documents, and Baykeeper did not warn the Cities about Alpha Analytical's five-year document retention policy. In that sense, Baykeeper failed to meet its obligations. Water quality testing is essential to this case. Baykeeper—a sophisticated entity with significant experience in Clean Water Act litigation, and one represented by similarly sophisticated and experienced counsel—should have been more attentive.

However, Baykeeper did produce Alpha Analytical's final reports and results. The existence of those final reports necessarily implies that there was raw data underlying Alpha Analytical's results. And when Baykeeper produced those reports, discovery was set to end well before Alpha Analytical's document retention policy would have resulted in destruction of the raw data. ECF No. 63 (fact discovery closed on May 28, 2021); 6/23/25 Maharg Decl. ¶ 11, ECF No. 370-1 (destruction of data did not begin until November 2022). This, while not completely excusing Baykeeper's omissions, may explain why Baykeeper might not have thought it necessary to inform the Cities. Baykeeper may have concluded that, if the Cities wanted the raw data, they would be able to request it without issue during the period that discovery was open. Thus, Baykeeper bears responsibility, but its responsibility is not too great.

On the other side of the coin, the Cities likely suffered only minimal prejudice, if any. Despite the Cities' present assertion that the underlying data is of the utmost importance, they did not act as if that was the case for nearly the entire life of this litigation. It is true that Baykeeper never explicitly informed the Cities about the existence of the underlying data. But surely the Cities knew, or at least should have known, that the data existed. That much is common sense—

final water quality test results are, or should be, based on underlying testing data. And even if that was something that took specialized knowledge to conclude, the Cities had such knowledge in abundance between experienced counsel, their own water departments' employees, and retained experts. None of those individuals ever indicated that the underlying data might be helpful until just a few days ago in the middle of trial.

To be sure, water quality testing is central to this case. But not *every* aspect of the testing is of equal importance. The Cities' own actions with respect to the underlying data and quality assurance documentation from Alpha Analytical's testing illustrate that those documents are less important than the final test results. That the Cities are now moving for spoliation sanctions is therefore more a reflection of their efforts to zealously advocate for their interests than an indication that the missing evidence hamstrings their defense.

There is nothing wrong with such zealous advocacy, and the Cities raise fair arguments. Taking into account the relatively low levels of culpability and prejudice involved, though, the sanction of completely striking Alpha Analytical's test results is unnecessarily severe. A lesser sanction is adequate: The Cities may vigorously cross-examine a witness from Alpha Analytical to cast doubt on the reliability of the lab's test results, including by arguing that the inability to verify those test results due to the loss of underlying data and quality assurance documents contributes to the tests' unreliability. The Cities have already done so without objection, and the Court will consider that testimony along with all other evidence in the record, aided by the parties' arguments, when making its final decision.

## IV. CONCLUSION

The Court **DENIES** the Cities' motion.

**IT IS SO ORDERED.**

Dated: July 1, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-00824-EJD
ORDER DEN. MOT. FOR SANCTIONS        6