UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>Defendants. | Case No.  5:20-cv-00824-EJD<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: ECF No. 391 |

Following the conclusion of the bench trial in this Clean Water Act case, but before the Court issued its findings of fact and conclusions of law, the Cities of Sunnyvale and Mountain View asked the Court for leave to file a motion for reconsideration. The Court granted permission, and the Cities moved for reconsideration of the Court's prior summary judgment order on two issues. First, the Cities asked the Court to reconsider its holding that San Francisco Baykeeper had established violations of the Cities' water quality permit on three days in early 2019. Second, the Cities asked the Court to reconsider its holding that Stevens Creek and Calabazas Creek are waters of the United States (WOTUS) that fall within the Clean Water Act's purview. Because the Cities have not presented "new evidence" for the purposes of reconsideration, the Court **DENIES** the Cities' motion.

I.   BACKGROUND

By now, the parties and the Court are well-acquainted with the background of this case, so the Court recounts only that which is necessary to understand this Order.

In 2020, Baykeeper filed suit against the Cities of Sunnyvale and Mountain View, alleging that they violated the terms of their National Pollutant Discharge Elimination System (NPDES) permit. The Court subsequently granted partial summary judgment in favor of Baykeeper. In

1  relevant part, the Court held that Baykeeper had established the Cities violated Limitation B.2 of
2  the NPDES permit on three days: January 17, February 4, and February 13, 2019.  ECF No. 139 at
3  35.  The Court also held that Stevens Creek and Calabazas Creek were WOTUS.  *Id.* at 20–21.  A
4  few months later, the Supreme Court decided *Sackett v. EPA*, 598 U.S. 651 (2023), which clarified
5  the definition of WOTUS.  The Court allowed the Cities to file a motion for reconsideration of its
6  WOTUS ruling based on *Sackett*.  ECF No. 183.  Ultimately the Court held that *Sackett* did not
7  change its earlier conclusions.  ECF No. 199.

8  More recently, three categories of evidence surfaced at trial that the Cities say warrant
9  reconsideration.  First, there was additional testimony about a change in applicable water quality
10 standards that occurred in 2019.  The Cities claim that this change renders Baykeeper's water
11 quality testing insufficient to support violations of Limitation B.2.  Second, a witness testified at
12 trial that one of the labs Baykeeper had used for testing no longer had records of the underlying
13 raw data.  ECF No. 377 at 2.  According to the Cities, this called the reliability of that lab's tests
14 into question, thus calling the Court's finding of Limitation B.2 violations into question as well.
15 Finally, the Cities presented trial evidence of flow rates and precipitation in Stevens Creek and
16 Calabazas Creek.  ECF No. 391-3 at 11–13.  The Cities say that this is new evidence that casts
17 doubt on the Court's earlier WOTUS holding.  Based on this purportedly new evidence, the Cities
18 move for reconsideration.

19 **II.  LEGAL STANDARD**

20 A district court has the power to reconsider its prior orders "at any time prior to final
21 judgment." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (citation omitted).  This is
22 true even if trial has concluded so long as judgment has not yet been entered.  *Gray v. Hudson*, 28
23 F.4th 87, 102–03 (9th Cir. 2022).  That said, reconsideration should not be freely granted.  Rather,
24 reconsideration is an "extraordinary remedy" appropriate only in "highly unusual circumstances."
25 *Kona Enters. v. Est. of Bishop*, 229 F.3d 977, 890 (9th Cir. 2000) (citations omitted).  In the
26 "interests of finality and conservation of judicial resources," courts should grant reconsideration
27 "sparingly."  *Id.*  Reconsideration should not be granted unless there is newly discovered evidence,
28 clear error, or an intervening change in controlling law.  *Id.*

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION           2

1    Here, the Cities invoke the exception for newly discovered evidence. But not all new evidence qualifies. Evidence is not newly discovered for purposes of reconsideration simply because it was not known to a party earlier; the evidence must have been such that the party "could not with reasonable diligence have discovered and produced such evidence" earlier. *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (quoting *Engelhard Indus., Inc. v. Rsch. Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)).

## III. DISCUSSION

### A. Violations of Limitation B.2

#### 1. Changed Water Quality Standards

The Cities first argue that testimony at trial shows that new water quality standards—the Bacteria Provisions—took effect in the middle of Baykeeper's program of water quality testing. Baykeeper conducted tests on January 17, January 23, February 1, February 4, February 13, and February 19, 2019. Wren Decl. ¶ 37, ECF No. 82. The Cities argue that the Bacteria Provisions took effect on February 4, 2019, meaning that three tests were conducted under the old water quality standards while the other three were conducted under the newer Bacteria Provisions. Since, say the Cities, three tests are not enough to establish a violation of water quality standards under either regime, the Court must reconsider its finding of a violation.

This argument rests on the premise that the Bacteria Provisions became effective on February 4, 2019. That is a faulty premise. February 4, 2019 is the date on which California's Office of Administrative Law approved the Bacteria Provisions. Ex. 1149 at 2, ECF No. 391-18. However, the Bacteria Provisions did not become effective until they also received EPA approval. 40 C.F.R. § 131.21(c) (a state-approved water quality standard does not become the applicable standard under the Clean Water Act until the EPA approves it); 33 U.S.C. § 1313(c)(3) ("If the [EPA] Administrator . . . determines that such [State-approved] standard meets the requirements of this chapter, such standard shall thereafter be the water quality standard for the applicable waters of that State."); Ex. 1036 at 18, ECF No. 391-13 ("[T]he Bacteria Provisions become effective upon adoption by the State Water Board and approval by the state Office of Administrative Law *and* U.S. EPA . . . .") (emphasis added). The EPA's approval did not come until March 22, 2019,

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION          3

1    so the Bacteria Provisions did not become effective until then. Ex. 1149 at 1. As such, the Cities'
2    argument fails.

### 2.    Reliability of Testing Results

Next, the Cities argue that testimony about the lack of raw data underlying some of Baykeeper's water quality testing results creates factual disputes about the reliability of those results. From the Cities' perspective, these disputes require the Court to vacate its earlier summary judgment. Ultimately, this argument fails because the lack of underlying data is not "new evidence" for purposes of reconsideration. It is true that the Cities did not have this evidence until trial, but they could have discovered the same information at summary judgment with reasonable diligence. *See Frederick S. Wyle.*, 764 F.2d at 609.

The Cities received the testing that they now challenge at least by the time Baykeeper filed its motion for partial summary judgment on August 26, 2021. Wren Decl., Ex. 2, ECF No. 82-1. At that point, the Cities easily could have asked for the underlying raw data if they had any concerns about the accuracy of the tests. And if the Cities had asked for the underlying data at that time, they likely would have received it. The lab's document retention policy provided that such data would be held for five years. Trial Tr. (Vol. I) at 46:9–47:23. Since the tests were conducted in 2019, Wren Decl. ¶ 37, that underlying data would have been available at the summary judgment stage in late 2021. But the Cities did not ask for that data. Because the Cities could have surfaced (and avoided) this issue at summary judgment, it is not grounds for reconsideration.

That said, the lack of underlying data presents a live trial issue. In denying the Cities' earlier motion for spoliation sanctions, the Court expressly allowed the Cities to argue that lack of underlying data undermines the reliability of the tests that Baykeeper is using. ECF No. 377 at 6. This leads to an unusual situation because Baykeeper uses the same water quality tests to argue its case at trial that it used at summary judgment. As such, it is possible that the Court could find the tests to be unreliable when issuing its findings of fact, which would contradict the summary judgment holding for which the Court is denying reconsideration. An inconsistent ruling like this would be problematic, but it has not happened yet. If the Court were to find the tests reliable at trial, there would be no conflict. So, for now, the Court does not disturb its earlier summary

Case No.: 5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION             4

judgment order.  Should the Court's trial decision[1] conflict with its summary judgment decision, the Cities can move for relief then.  Questions about testing reliability are therefore not grounds for reconsideration at the moment.

### B.     WOTUS

Finally, the Cities argue that new evidence warrants reconsideration of the Court's WOTUS findings for Stevens Creek and Calabazas Creek.

At the threshold, Baykeeper opposes reconsideration on the ground that the Court did not authorize a motion for reconsideration on WOTUS.  The Court did not understand the Cities to be seeking reconsideration on WOTUS and did not intend to authorize a motion on that issue.  Trial Tr. (Vol. 10) at 1568:15–1570:15.  The Court recognizes, though, that its order authorizing a motion for reconsideration could have fairly been construed as allowing the Cities to make their WOTUS arguments.  *See* ECF No. 383.  Therefore, the Court proceeds to consider the merits of the Cities' request for reconsideration.

On the merits, the Court finds that the Cities have not presented new evidence justifying reconsideration.  The purportedly new evidence that the Cities rely on are graphs depicting the flow and precipitation data for Stevens Creek and Calabazas Creek in Water Years 2019, 2022, and 2023.[2]  Ex. 11 at 10–13, ECF No. 391-3; Ex. 1139 at 14–15, ECF No. 391-17.  The Water Year 2019 data was available to the Cities at the time of summary judgment.  An agency, Valley Water, publicly maintains flow and precipitation data.  *Valley Water Surface Water Data Portal*, https://alertdata.valleywater.org/download.html.  The Cities can access that data, having generated graphs of flow and precipitation using data from that portal. Ex. 11 at 10–13 nn.3–4.  And it is where Baykeeper's expert collected data from *at the time of summary judgment*.  Wren Decl. ¶ 22.  Knowing that issues regarding flow and precipitation in Stevens and Calabazas Creeks were

---

[1] With respect to the reliability and interpretation of water quality testing results, the Court will assess those issues de novo in its findings of fact and conclusions of law.  The parties should not argue that the Court's findings on reliability or interpretations of those tests at summary judgment are binding because the record has developed in significant ways since then.

[2] A Water Year runs from October of the previous year to September of the current year.  For example, Water Year 2019 refers to the period from October 2018 to September 2019.

Case No.:   5:20-cv-00824-EJD
ORDER DEN. RECONSIDERATION                5

important to the WOTUS analysis, the Cities could have and should have accessed this data back at summary judgment. Of course, the data for Water Years 2022 and 2023 was not yet available then. But the Cities do not explain how the data from those Water Years shows anything different than the data from Water Year 2019.

Perhaps the situation might be different if the issue of WOTUS implicated the Court's subject matter jurisdiction, which can never be waived or forfeited. Fed. R. Civ. P. 12(h)(3). If that were the case, the restrictions on "new evidence" might be relaxed on the issue of WOTUS. However, that is not the case. Even though WOTUS is sometimes described with the word "jurisdiction," it is better thought of as an element of a Clean Water Act claim, not a jurisdictional prerequisite. *S.F. Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 709 n.9 (9th Cir. 2007); *see also Inland Empire Waterkeeper v. Corona Clay Co.*, No. 8:18-cv-00333, 2023 WL 8125772, at *2–3 (C.D. Cal. Oct. 26, 2023); *Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc.*, 768 F. Supp. 3d 187, 191–92 (D. Mass. 2025). For these reasons, the Court finds that the Cities' failure to identify new evidence requires denial of reconsideration.[3]

## IV. CONCLUSION

The Court **DENIES** the Cities' motion for reconsideration.

**IT IS SO ORDERED.**

Dated: July 22, 2025

EDWARD J. DAVILA
United States District Judge

[3] In a footnote, the Cities take issue with the Court's use of the since-abrogated "significant nexus" test when analyzing WOTUS. In an earlier reconsideration order, the Court expressly held that its WOTUS findings did not depend on the significant nexus test and therefore survived the test's abrogation. ECF No. 199.